## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL ESTRADA, individually and on behalf of others similarly situated,** | |
| **PLAINTIFF,** | **CIVIL ACTION NO. 12-604** |
| **v.** | **JURY TRIAL DEMANDED** |
| **MAGUIRE INSURANCE AGENCY, INC.,** | |
| **DEFENDANT.** | |

---

### PLAINTIFF'S SECOND MOTION FOR CONDITIONAL CLASS CERTIFICATION AND JUDICIAL NOTICE AND BRIEF IN SUPPORT

---

Robert J. Wiley
Texas Bar No. 24013750
*Board Certified in Labor and Employment Law*
*by the Texas Board of Legal Specialization*
Jessica Cohen
Texas Bar No. 24082838

ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone: (214) 528-6500
Facsimile:  (214) 528-6511
jcohen@robwiley.com
ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

Page

Table of Contents ........................................................................... i

Table of Authorities ....................................................................... iii

I.      Summary................................................................................ 1

II      Evidence Submitted ............................................................. 2

III.    Statement of Facts ............................................................... 2

        A.      There is a position of Fast Track Auto Claims Examiner
                that is delineated by the company and easily identifiable......... 3

        B.      The proposed class is narrowly tailored and would likely
                consist of at most sixty (60) class members................................ 5

        C.      The proposed class all performed the same job duties................. 6

                1.      No one in the proposed class had a minimum
                        educational requirement..................................................... 7

                2.      The proposed class all handled the most basic claims,
                        Fast Track Auto Claims...................................................... 7

                3.      The proposed class all performed data entry with the
                        same computer software....................................................... 8

                4.      The proposed class all performed "coverage reviews"
                        the same way....................................................................... 8

                5.      The proposed class did not make independent
                        determinations regarding liability…………………............. 8

                6.      The proposed class all relied entirely on appraisers for
                        damage valuations……………………….............................. 9

                7.       The proposed class all performed their jobs with
                        significant oversight and established procedures............ 10

D.    The proposed class members all regularly worked overtime........    10

E.    The proposed class members all were paid in the same
       manner. ...................................................................................    11

III.    Argument .........................................................................................    11

A.    This Court should conditionally certify this action following
       the two-step approach………………………….............................    13

B.    Plaintiffs  and proposed Class Members are "Similarly
       Situated" for purposes of conditional certification .....................    15

C.    Plaintiffs' case is appropriate for judicial notice ........................    15

1.    Notice will promote judicial economies .............................    16

2.    Notice will ensure that only those similarly situated
       join………….......................................................................    17

D.    Plaintiffs' notice is accurate and informative .............................    17

IV.    Conclusion ...............................................................................    18

# TABLE OF AUTHORITIES

**CASES**                                                                                 **PAGE**

*Bankston v. Illinois,*
60 F.3d 1249 (7th Cir. 1995) ............................................................................ 17

*De Asenscio v. Tyson Foods, Inc.,*
130 F.Supp.2d 660 (E.D. Pa. 2001)..................................................................... 13

*Fowler v. Land Mgmt. Groupe,*
978 F.2d 158 (4th Cir. 1992) ............................................................................. 17

*Garner v. G.D. Searle Pharm.,*
802 F.Supp. 418 (M.D. Ala. 1991) ..................................................................... 11

*Hipp v. Liberty Nat'l Life Ins. Co.,*
252 F.3d 1208 (11th Cir. 2001) ......................................................................... 11

*Hoffman-La Roche, Inc. v. Sperling,*
493 U.S. 165 (1989) ........................................................................... 12, 15-17

*McLaughlin v. Richland Shoe Co.,*
486 U.S. 128 (1988) ......................................................................................... 17

*Mooney v. Aramco Services Co.,*
54 F.3d 1207 (5th Cir. 1995) ............................................................................ 13

*Moss v. Crawford & Co.,*
201 F.R.D. 398 (W.D. Pa. 2000)........................................................................ 13

*Mueller v. CBS, Inc.,*
201 F.R.D. 425, 429 (W.D. Pa. 2001)................................................................. 14

*Parker v. Nutrisystem, Inc.,*
No. 08-1508, 2008 WL 4399023 (E.D. Pa. Sept 26, 2008)........................... 13

*Pontius v. Delta Financial Corp.,*
No. 04-1737, 2005 WL 6013189 (W.D. Pa. Jun 24, 2005)........................... 13

*Scott v. Bimbo Bakeries, USA, Inc.,*
No. 10-3154, 2012 WL 645905, (E.D. Pa Feb 29, 2012) (Goldberg, J.) ......... 11, 13-15

*Smith v. Sovereign Bancorp, Inc.*
No. 3-2420, 2003 WL 22701017 (E.D. Pa. Nov 13, 2003)……………………   13

*Symczyk v. Genesis HealthCare Corp.,*
656 F.3d 189 (3rd Cir. 2011) *cert. granted on other grounds,* 80 U.S.L.W.
3512 (U.S. June 25, 2012) (No. 11-1059)………………………………………..   12, 13

**STATUTES**                                                                     **PAGE**

29 U.S.C. § 216(b) ………………………………………………………………   11-12, 15

29 U.S.C. § 255(a) ………………………………………………………………   17

F.R.C.P. 23 ………………………………………………………………………   11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL ESTRADA, individually and on behalf of others similarly situated,** | |
| **PLAINTIFF,** | **CIVIL ACTION NO. 12-604** |
| **v.** | **JURY TRIAL DEMANDED** |
| **MAGUIRE INSURANCE AGENCY, INC.,** | |
| **DEFENDANT.** | |

### PLAINTIFF'S SECOND MOTION FOR CONDITIONAL CLASS CERTIFICATION AND JUDICIAL NOTICE AND BRIEF IN SUPPORT

Plaintiff, Michael Estrada, individually and on behalf of all others similarly situated ("Plaintiff Class" or "Class"), files this, Plaintiff's Second Motion for Conditional Class Certification and Judicial Notice.  In conjunction with this Motion, Plaintiff has separately filed a Motion to Compel regarding the unresponsiveness of Defendant's corporate representative at the R. 30(b)(6) deposition, which has prejudiced Plaintiff in seeking conditional class certification. Granting Plaintiff's Motion for Conditional Class Certification and Judicial Notice would moot the Motion to Compel.

### I.
### SUMMARY

Plaintiff moves for conditional class certification because the Named Plaintiff is similarly situated to other Fast Track Auto Claims Examiners ("Examiners").

There appear to be more than twenty-one, but probably less than sixty, similarly situated individuals.  As these Fast Track Auto Claims Examiners are clearly identified as such on Defendant's "claim metrics report," the class can be easily defined and noticed.  Fast Track Auto Claims Examiners represent a small minority of Defendant's total claims adjustors.  Unlike other claims adjustors employed by Defendant, Fast Track Auto Claims Examiners mechanically processed low damage vehicle claims with no bodily injury and did not engage in inspection or appraisal. Because Plaintiff and other Fast Track Auto Claims Examiners were all doing the same job, paid a salary, and required to work overtime without additional compensation as required by the Fair Labor Standards Act ("FLSA"), class certification is appropriate and should be granted.

II.

EVIDENCE SUBMITTED

In support of this, Plaintiff submits the following evidence as exhibits:

1.  Excerpts of Deposition and Exhibits of William Benecke, corporate representative ("Benecke Dep.");

2.  Excerpts of Deposition of Michael Estrada ("Estrada Dep.");

3.  Declaration of Michael Estrada ("Decl.");

4.  Proposed Notice.

III.

STATEMENT OF FACTS

Plaintiff filed its first motion for conditional class certification on April 27, 2012.  That motion was denied without prejudice and this Court entered a discovery

order detailing the discovery schedule on the conditional class certification issue. Since the parties have had the opportunity to engage in discovery related to class certification, Plaintiff has obtained information demonstrating that the Fast Track Auto Claims Examiners are easily identifiable as a putative class, are reasonable in number, performed nearly identical job duties, and all regularly worked overtime. Conditional class certification is therefore proper.

A.      **There is a position of Fast Track Auto Claims Examiner that is delineated by the company and easily identifiable.**

Defendant undeniably maintains a Fast Track Auto Claims Examiner position.  In the claims metrics report, which was designed by management and is created daily, Defendant's Claims Examiners are categorized into Examiner Groups.  (Benecke Dep., Ex. 1).   In the report, one such examiner group is identified as "Fast Track Auto." (Benecke Dep., Ex. 1).  Furthermore, Defendant has admitted it has a Fast Track Auto Claims Examiner group through its corporate representative's testimony:

```
 2      Q    All right.  So where I see Fast Track Auto
 3  under "Examiner Group," your attorneys have redacted
 4  a number of information on what is already I think
 5  you aptly described an unclear copy, but it looks
 6  like there would be names underneath the field
 7  called "examiner."
 8                Is that your understanding of how
 9  this works?
10      A    Yes.
11      Q    And that second column says "examiner."
12  Is that correct?
13      A    Yes.
14      Q    And if we had an un-redacted copy, we
15  would see all the names besides just Estrada, comma,
16  M; is that correct?
17      A    Yes.
```

(Benecke Dep., 21:2-17).

This classification of the Fast Track Auto Claims Examiner group is not a new designation.  Rather, the Fast Track Auto Claims Examiner group has been in place for at least the past four years.[1]  Specifically, Defendant has used the classification since approximately 2005. (Benecke Dep., 101:13-19).

Furthermore, the claims metrics reports with the classification of Fast Track Auto Claims Examiner continue to be used in the same manner to this day:

```
21      Q    Do you still use these claims metrics
22  reports to this day?
23      A    Yes.
```

(Benecke Dep., 37:21-23).

In fact, Defendant specifically still uses the classification of Fast Track Auto Claims Examiner:

```
24      Q    Do you still have a examiner group field
25  called "Fast Track Auto"?
(00038)
1                         W. BENECKE
2       A    Yes.
```

(Benecke Dep., 37:24-38:2).

Significantly, the claims metrics report not only designates categories of claims examiners, but furthermore lists every member of the group.  Therefore, it is easy to identify the putative class, because they are all clearly denoted on the

---

[1]
```
3      Q    Do you know when about it was that this
4  field was first used?  Would it have been more than
5  four years ago?
6      A    I'd be guessing, but I would say probably
7  yes.
```
(Benecke Dep., 38:3-7.)

claims metrics reports.   These reports have been generated and maintained by

Defendant:

```
 7      Q     Do you all maintain these claims metrics
 8   reports?
 9      A     I'm not sure I know what you mean by the
10   word "maintain."
11      Q     If we got into -- further into this case
12   and we needed to get the names of those Fast Track
13   Auto -- the examiners listed under your Fast Track
14   Auto Examiner Group, could we go back for the past
15   three years and find these kinds of claims metrics
16   reports showing this information?
17      A     Yes.
18      Q     And that would not be difficult or
19   expensive for the company to do, would it?
20      A     No.
```

(Benecke Dep., 37:7-20).

Therefore, Defendant has clearly classified a group of claims examiners as

Fast Track Auto Claims Examiners.   Further, Defendant has a daily record of who

was a part of that examiner group and could easily and without great burden

generate a list and identify the members of the putative class.

**B.    The proposed class is narrowly tailored and would likely consist of
       at most sixty (60) class members.**

Based on the discovery obtained thus far, Plaintiff has narrowly tailored the

putative class to a limited number of similarly situated individuals.   Defendant

maintains three offices where Fast Track Auto Claims Examiners are stationed:

Bala Cynwyd, PA, Addison, TX, and Altamonte Springs, FL.   (Benecke Dep., 38:8-

16).   There were approximately twenty-one (21) Fast Track Auto Claims Examiners

between approximately July/August 2010 and January 30, 2011.   (Benecke Dep.,

31:2-23).   Today, there are approximately fifteen (15) Fast Track Auto Claims Examiners.  (Benecke Dep., 40:15-21).

Without the opportunity to analyze Defendant's unredacted claims metrics reports for the relevant time period, Plaintiff cannot with certainty determine the number of putative class members.   However, taking into consideration approximated employee turnover, Plaintiff estimates that over the course of the relevant time period, there would have been at maximum approximately sixty (60) Fast Track Auto Claims Examiners across the three offices.  A class limited to this size ensures that Defendant would not be burdened by proceeding in this manner.

C.    **The proposed class members all performed the same job duties.**

The proposed class consists entirely of Fast Track Auto Claims Examiners employed by Defendant performing nearly identical job duties.  All Fast Track Auto Claims Examiners had the same job description detailing the duties of the position. (Benecke Dep., 112:23-113:7).   Furthermore, Defendant grouped Fast Track Auto Claims Examiners together because their similarities:

```
11      Q    If it's really just a metrics report of a
12 whole bunch of individuals, then why group them into
13 examiner groups?
14      A    Because there are some similarities in
15 some of the groups.
16      Q    And so people within American Specialty
17 might have certain similarities to each other, and
18 people in Commercial Auto might have certain
19 similarities to each other; is that correct?
20      A    Yes.
21      Q    And people in Fast Track Auto might have
22 certain similarities to each other; is that correct?
23      A    Yes.
```

(Benecke Dep., 26:11-23).

1.    *No one in the proposed class had a minimum educational requirement.*

There is no educational requirement to be a Fast Track Auto Claims Examiner  (Benecke Dep., 43:5-16).  Indeed, someone with a General Educational Development ("GED") Degree could work for Defendant as a Fast Track Auto Claims Examiner.  (Benecke Dep., 44:9-13).

2.    *The proposed class all handled the most basic claims, Fast Track auto claims.*

The Fast Track Auto Claims Examiner Group processed what Defendant defined as Fast Track auto claims. These claims were by definition simple claims that could be quickly and easily resolved:

```
3     Q:   When you say "Fast Track," what does that
4     mean?
5     A:   Simple claim. Easy claims that, you
6     know, insured backed into a parked vehicle.  Nothing
7     that — that involves a lot of investigation.  Who
8     ran a red light.  Anything like that."
```

(Estrada Dep., 36:3-8).

This consistently included claims that did not involve bodily injury:

```
7      Q    And by definition, Fast Track claims
8     generally do not involve bodily injury; is that
9     correct?
10     A    The Fast Track process is not a process
11    that is expected to have bodily injury claims in it.
```

(Benecke Dep., 146:7-11).

Further, the claims generally were the lowest valued claims as compared to all other claims examiner groups.[2]

---

[2] 
```
   13     Q    If you looked at the average dollar value
   14   of claims, would Fast Track Auto claims be the
   15   lowest of the different groups?
   16     A    I don't know.
```

3.  *The proposed class all performed data entry with the same computer software.*

Plaintiff and other Fast Track Auto Claims Examiners all used the same computer software to perform their jobs.  (*see generally* Decl. ¶4)  These programs contain all of the claim files and mail, assign new claim files, and upload all scanned images for each claim file.  (Decl. ¶4b.)  These programs reduce the claims examining to clerical data entry.  *Id.*

4.  *The proposed class all performed "coverage reviews" in the same mechanical way.*

Upon receiving a new claim, Plaintiff would perform a "coverage review" to see if the damaged vehicle is covered under the insurance policy.  (Estrada Dep., 60:22-24, 92:6-10; Decl. ¶4c.)  Plaintiff used computer programs that told him what to do.  (Decl. ¶4c.)  All of the Fast Track Auto Claims Examiners similarly conduct coverage review with programs that tell them what to do.  *Id.* This review is done with programs, simple telephone calls, or documents.  *Id.*  If the coverage review requires anything outside of the established process, Fast Track Auto Claims Examiners contact their supervisor.  (*Id.*; Estrada Dep., 67:19-68:6.)

5.  *The proposed class did not make independent determinations regarding liability.*

Fast Track Auto Claims Examiners do not make independent determinations regarding liability. (*See* Estrada Dep., 61:17-25, 63:20-64:5).  Rather, Fast Track

---

```
17      Q    Do you have any evidence that it wouldn't
18   be the lowest of the groups?
19      A    No.
```
(Benecke Dep., 36:13-19).

Auto Claims Examiners will accept the fault designated in the police report. *Id.*  If there is a conflict between the parties involved in the accident and neither has any independent witness corroborating the facts, Fast Track Auto Claims Examiners accept the insured's version of the facts.  (Estrada Dep., 62:2-15, 63:13-19).   On some occasions, there may be an "independent witness" of the accident, in which case, Fast Track Auto Claims Examiners accept the version supported by the independent witness.  (Estrada Dep., 64:17-65:9).  If the facts surrounding the incident are any more complicated, the supervisor would makes a determination on liability.  (Estrada Dep., 58:11-19, 67:19-68:6; Decl. ¶4e).

> 6.    *The proposed class all relied entirely on appraisers for damage valuations.*

Once Plaintiff and Fast Track Auto Claims Examiners determine coverage and assign liability according to the procedures, an independent appraiser is assigned.  (Estrada Dep., 60:9-21).  The independent appraiser evaluates damages and repairs.  (Estrada Dep., 71:11-19).  In fact, Fast Track Auto Claims Examiners only investigate claims from their desks and never by physically inspecting the vehicles:

```
4      Q    In terms of the investigation, does the
5   claims examiner conduct the entire course of the
6   investigation essentially from their cubicle?
7      A    Yes.
8      Q    The claims examiner does not physically
9   inspect the vehicle; is that correct?
10     A    Typically, that is correct.
```

(Benecke Dep., 59:4-10).

The Fast Track Auto Claims Examiners therefore simply input the appraiser's estimates. *Id*.

7.      *The proposed class all performed their jobs with significant oversight and established procedures.*

All of the claims that Plaintiff and other Fast Track Auto Claims Examiners handle are completely monitored by their supervisors. (Decl. ¶¶8-9). Plaintiff and other Examiners have no authority to handle disputes independently and must receive direction and authority from their supervisors to resolve any disputes. (Estrada Dep., 115:24-116:3, 116:17-117:4; Decl. ¶10). The work is formulaic and routine because of the standardized process and the computer system. (Decl. ¶6). Plaintiff and other Examiners have no independent authority to commit the Defendant to claims worth more than $10,000. (Decl. ¶10). If the amount is over $10,000, Plaintiff and other Examiners must receive instruction from their supervisors. *Id*. Plaintiff and other Examiners have no role in litigation related to their claims. (Estrada Dep., 115:7-12; Decl. ¶11). In fact, the claims are rarely, if ever, even litigated. (Benecke Dep., 54:25-55:8).

D.      **The proposed class members all regularly worked overtime.**

During the relevant time period, the putative class received a substantially high volume of claims. (Estrada Dep., 148:25-149:2). As a result, the Fast Track Auto Claims Examiners were regularly required to work overtime. (Estrada Dep., 102:10-103:5, 148:18-149:5). This included having to work over the weekend as well as having to work long hours into the evening during the workweek. (Estrada Dep.,

148:9-21).  The fact that Fast Track Auto Claims Examiners so frequently had to work such a substantial number of overtime hours was often complained about by and discussed with other Fast Track Auto Claims Examiners (Estrada Dep., 148:18-149:2).

E.    **The proposed class members all were paid in the same manner.**

All Fast Track Auto Claims Examiners were paid by salary and none were compensated for overtime hours worked:

```
2       Q    Was there any individual claims examiners
3   or group or sub-group of claims examiners that were
4   paid hourly with overtime during the time you've
5   been there?
6       A    No.
7       Q    So they've always been paid salary?
8       A    Yes.
```

(Benecke Dep., 101:2-8.)

The putative class members worked in excess of forty hours per week, but were not paid overtime for such excess hours.  (Estrada 30:10-15; 148:18-149:5).

III.
ARGUMENT

This Court recently considered the applicable standard for FLSA class certification in *Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-3154, 2012 WL 645905, *6 (E.D. Pa. Feb. 29, 2012) (Goldberg, J.).  This Court correctly held that plaintiffs must make a "modest factual showing" that the proposed class members are similarly situated. *Id.* There is simply no reason why class certification should not be granted without delay in the case at hand.

The Class seeks conditional class certification and judicial notice in this collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all Fast Track Auto Claims Examiners.[3]  Section 216(b) provides for "similarly situated" employees to proceed collectively in pursuit of wages unlawfully withheld.  In such cases, the District Court has discretionary power to authorize judicial notice to proposed class members to inform them of the action and give them an opportunity to participate by opting in.  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989).[4]

In *Hoffman-La Roche*, the Supreme Court identified the main benefits of a collective action under section 216(b):  "A collective action allows . . . Plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."  *Id.* at 170.  Ultimately the purpose of judicial notice is to give employees accurate and timely notice concerning the pendency of the collective action so they can make an informed decision about whether to participate.  *Id.*

---

[3] Section 216(b) collective actions differ from Rule 23 of the Federal Rules of Civil Procedure class actions in that, under section 216(b), a person who wishes to join the collective action must affirmatively "opt-in" by filing written consent with the court. Under Rule 23, however, a person must affirmatively "opt-out" if he or she wishes to abstain from the lawsuit. 29 U.S.C. § 216(b); *See also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001); *Garner v. G.D. Searle Pharm.*, 802 F.Supp. 418, 421 (M.D. Ala. 1991).

[4] The Plaintiff in *Hoffman-La Roche* brought an age discrimination case under the Age Discrimination in Employment Act that incorporates the enforcement provisions of the Fair Labor Standards Act.  *Id.* at 67.

A.   **This Court should conditionally certify this action following the two-step approach.**

This Court should follow the two-step approach to determining whether a case should be certified, outlined in *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3rd Cir. 2011), *cert. granted on other grounds*[5], 80 U.S.L.W. 3512 (U.S. June 25, 2012) (No. 11-1059):

> In deciding whether a suit brought under §216(b) may move forward as a collective action, courts typically employ a two-tiered analysis. During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery…After discovery, and with the benefit of "a much thicker record than it had at the notice stage," a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff.

*Symczyk*, 656 F.3d at 193.

Thus the issue before the Court is whether this case should be conditionally certified in the first stage of this process.  In making this determination, a "modest factual showing" standard is applied.  *Id.*; *See also Scott* 2012 WL 645905 at *6. "The modest factual showing test, although not automatic, is nevertheless 'an extremely lenient standard.'" *Parker v. Nutrisystem, Inc.*, No. 08-1508, 2008 WL 4399023, at *2 (E.D. Pa. Sept. 26, 2008) (citing *Smith v. Sovereign Bancorp, Inc.*, No. 3-2420, 2003 WL 22701017, at *1 (E.D. Pa. Nov. 13, 2003).

---

[5] The U.S. Supreme Court granted certiori on the limited issue of whether a case becomes moot when a lone plaintiff receives an offer to satisfy all of plaintiff's claims.  This issue is unrelated to the conditional certification issue presently before this Court.

Importantly, this determination is made using a considerably lenient standard and typically results in conditional certification of a representative class. *Pontius v. Delta Financial Corp.*, No. 04-1737, 2005 WL 6013189, *3 (W.D. Pa. June 24, 2005) (citing *Moss v. Crawford & Co.*, 201 F.R.D. 398 (W.D. Pa. 2000); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)).   A grant of conditional certification at this stage means that proposed class members are given notice of the lawsuit and only become part of the suit should they choose to opt-in.   *De Asenscio v. Tyson Foods, Inc.*, 130 F.Supp.2d 660, 662 (E.D. Pa. 2001) (citing *Mooney* at 1214).

The focus is on whether the plaintiffs can make a "'modest factual showing' by 'produc[ing] some evidence 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees."  *Scott*, 2012 WL 645905 at *6.

The fact that some discovery has taken place in this matter does not affect the relevant standard. *Mueller v. CBS, Inc.*, 201 F.R.D. 425, 429 (W.D. Pa. 2001) ("CBS also argues that because we are now at the 'post-discovery stage,' the Court should apply the more stringent 'similarly situated' standard and require Plaintiffs to provide proof that common issues predominate and that the defendant can receive a procedurally fair trial . . . I decline to make such a prognostication"). Plaintiff has made the modest factual showing necessary to have the class conditionally certified at the notice stage.

B.   **Plaintiff and proposed class members are "similarly situated" for purposes of conditional certification.**

In this case, Plaintiff has presented evidence that Fast Track Auto Claims Examiners are similarly situated to each other for purposes of collective discovery and judicial notice. (*See generally* Estrada Decl., Benecke Dep., and Estrada Dep.). Plaintiff has accomplished this by filing the attached Declaration, which has been bolstered by the depositions of the Named Plaintiff and Defendant's corporate representative.   The discovery undertaken thus far confirms that all Fast Track Auto Claims Examiners performed the same tasks.   *Id*.   These common tasks consisted of: asking standardized questions, entering data into a computer, and approving claims for $10,000 or less according to the established procedures.   *Id*.   In addition, Defendant improperly withheld overtime pay from all Fast Track Auto Claims Examiners.   *Id*.   As such, Plaintiff has provided through his detailed declaration, the discovery obtained to this point, and the deposition excerpts included, a more than sufficient basis for this Court to conclude that Examiners were similarly situated with respect to their job duties and pay.   Consistent with this Court's prior ruling in *Scott*, and the Third Circuit's case law, this Court should grant Plaintiff's Motion.

C.   **The case is appropriate for judicial notice.**

The United States Supreme Court gave district courts the authority to manage the process of joining multiple parties, including authority to consider a motion for collective action certification.   *See Hoffman-La Roche Inc. v. Sperling*,

493 U.S. 165 (1989).  The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *Hoffman-La Roche*, 493 U.S. at 170.  In a case brought under § 216(b), a district court has both the duty and the broad authority to exercise control over a collective action and to enter appropriate orders governing the conduct of counsel and the parties because of the potential for abuse of the collective action mechanism. *Id.* at 171.  District courts "have discretion to intervene by approval and facilitation of the notice process . . . to alleviate the potential misuse of [notice] by misleading communications" and are encouraged to begin their involvement early in the litigation. *Id.* at 171-72.

Short of providing a definitive standard, the Court in *Hoffman-La Roche* established that a court-approved notice to proposed plaintiffs in FLSA collective actions is proper in "appropriate cases."  *Id.* at 169-70.  The Court ruled that determining what is an "appropriate case" lies within the discretion of the district court.  *Id.*  This case is an "appropriate case" for the Court to approve the sending of a notice for multiple reasons.

1.    *Notice will promote judicial economies.*

Judicial notice providing the Examiners an opportunity to pursue their claims in one forum will create the significant judicial economies recognized in *Hoffman-La Roche*.  Indeed, by including all the individuals who wish to pursue their claims in one action, the judicial system will benefit by resolution of this case

as a collective action at least through the discovery phase, since identical issues of law and fact exist among all Examiners who were not compensated properly for their overtime hours worked. *See Hoffman-La Roche,* 493 U.S. at 170. Such collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring Plaintiffs and opt-ins to file separate cases in multiple Federal district courts would not be an economical use of resources under the circumstances.

      2.   *Notice will ensure that only those similarly situated join.*

The carefully drafted Notice proposed by Plaintiff will be sent to those on the list provided by Defendant, and specifically explains that only those Examiners who were denied overtime pay will join. This will ensure that only those similarly situated will join.

D.   **The class' notice is accurate and informative.**

The Class' proposed Notice should be approved by the Court. As required, it is "timely, accurate, and informative." *See Hoffman-LaRoche*, 493 U.S. at 172. It is also carefully drafted to mirror notice forms approved in previous cases. In addition, it makes clear that only those who were denied overtime pay during the three-year statute of limitations[6] are eligible for the case. As such, the proposed

---

[6] In FLSA cases, plaintiffs collect damages within a two-year statute of limitations, but may collect damages incurred within a third year if the jury determines that Defendants' violation of the overtime laws were "willful." 29 U.S.C. § 255(a); *Fowler v. Land Mgmt. Groupe*, 978 F.2d 158, 163 (4th Cir. 1992); *Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995). A violation of the FLSA is "willful" when the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Plaintiffs allege in their Complaint that Defendants' actions were "willful."

notice achieves the ultimate goal of providing employees with an accurate and timely notice concerning the pendency and scope of the collective action.

## IV.
## CONCLUSION

At this notice stage, the evidence far exceeds the requirements of the lenient standard in showing that the proposed putative class members are "similarly situated" for purposes of collective discovery and judicial notice. Fast Track Auto Claims Examiners, a class with members that are easily identifiable and reasonable in number, all had nearly identical job duties, all frequently worked overtime and all were paid by salary without overtime compensation. As such, Plaintiff respectfully requests that this Court grant its motion for conditional class certification and judicial notice.

Respectfully submitted,

*/s/ Jessica Cohen*
Robert J. Wiley
Texas Bar No. 24013750
*Board Certified in Labor and Employment Law*
*by the Texas Board of Legal Specialization*
Jessica Cohen
Texas Bar No. 24082838

ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone: (214) 528-6500
Facsimile:  (214) 528-6511
jcohen@robwiley.com
ATTORNEYS FOR PLAINTIFFS

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2013, I served a copy of this Motion for Conditional Class Certification and Judicial Notice and Brief in Support on counsel for Defendants via the Court's CM/ECF system.

*<u>/s/ Jessica Cohen</u>*