IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ESTRADA, individually and on behalf of others similarly situated,<br><br>    PLAINTIFF,<br><br>    v.<br><br>MAGUIRE INSURANCE AGENCY, INC.,<br><br>    DEFENDANT. | CIVIL ACTION NO. 12-604<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RULE 37 MOTION TO COMPEL**

> Robert J. Wiley
> Texas Bar No. 24013750
> *Board Certified in Labor and Employment Law*
> *by the Texas Board of Legal Specialization*
> Jessica Cohen
> Texas Bar No. 24082838
>
> ROB WILEY, P.C.
> 1825 Market Center Blvd., Suite 385
> Dallas, Texas 75207
> Telephone: (214) 528-6500
> Facsimile:  (214) 528-6511
> jcohen@robwiley.com
> ATTORNEYS FOR PLAINTIFFS

> Plaintiff respectfully
> requests oral argument

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ESTRADA, individually and on behalf of others similarly situated, | |
| PLAINTIFF, | CIVIL ACTION NO. 12-604 |
| v. | JURY TRIAL DEMANDED |
| MAGUIRE INSURANCE AGENCY, INC., | |
| DEFENDANT. | |

**PLAINTIFF'S RULE 37 MOTION TO COMPEL AND BRIEF IN SUPPORT**

Plaintiff, Michael Estrada, individually and on behalf of all others similarly situated ("Plaintiff Class" or "Class"), files this Rule 37 Motion to Compel. This motion is filed in conjunction with Plaintiff's Second Motion for Conditional Class Certification because it relates to discovery that was sought in connection to conditional class certification. Defendant wrongfully denied Plaintiff important and relevant information regarding whether the other putative class members are similarly situated, which prejudiced Plaintiff in seeking conditional class certification and judicial notice. If, however, Plaintiff's Motion for Conditional Class Certification and Judicial Notice is granted despite this prejudice suffered by Plaintiff Class, this motion will be moot.

I.
SUMMARY

After the first class certification motion, the Court entered an order for initial discovery on the issue of whether the Plaintiff was similarly situated to the

putative class.  Plaintiff and his counsel flew to Philadelphia to take the Rule 30(b) deposition of the corporate representative – the only deposition noticed by Plaintiff.  However, the corporate representative was unprepared to address the issue of "similarly situated" claims adjustors.  Even when read the notice of deposition itself, he stated that he had no knowledge of the very issues he was designated to testify about.  Plaintiff moves for typical remedies under Rule 37 compelling the Defendant to provide the opportunity for Plaintiff to redepose the corporate representative at Defendant's cost.  Alternatively, Plaintiff Class requests the Court conditionally certify the class as an appropriate remedy.

## II.
## EVIDENCE SUBMITTED

In support of these motions, Plaintiffs submit the following evidence as exhibits:

1. Deposition Notice of Defendant's Corporate Representative and Subpoena Duces Tecum ("Dep. Notice")

2. Deposition and Exhibits of William Benecke ("Benecke Dep.")

3. Defendant's Responses and Objections to Plaintiff's First Requests for Production ("Def.'s Resp. and Obj. to Pl.'s Req. for Prod.")

4. Plaintiff's December 20, 2012 letter to Defendant ("December 20, 2012 Letter")

5. Defendant's December 28, 2012 letter to Plaintiff ("December 28, 2012 Letter")

## III.
## STATEMENT OF FACTS

A. **This Court entered a tailored discovery order directing the Parties to engage in specific discovery concerning whether the Named Plaintiff is "similarly situated" to the putative class.**

This Court entered an order on August 17, 2012 effectuating a discovery schedule regarding conditional class certification and Plaintiff's claim. [Doc. No. 28.] The order states that: "Discovery on the appropriateness of conditionally certifying this case as a collective action under the Fair Labor Standards Act (FLSA) shall also be completed by December 21, 2012" and provided for discovery concerning "Defendant's employment policies and practices related to 'Fast Track Claims Examiners'. . ." and "The job duties of Examiners, including their settlement authorization; the categories of claims handled; the computer software used; and standards set forth by Defendant regarding how Examiners perform their duties." [Doc. No. 28, ¶¶2, 3(a)-(b).]

The purpose of the order was to expedite the resolution of the issue of conditional class certification, which in an FLSA case is an inquiry into whether the Named Plaintiff is "similarly situated" to the putative class members.

B. **Plaintiff properly noticed the deposition of the corporate representative.**

Plaintiff noticed the Rule 30(b)(6) deposition of the corporate representative on October 29, 2012 by serving Defendant with "Plaintiff's Notice of Deposition and Subpoena Duces Tecum." (Dep. Notice). The notice outlined in detail the particular

topics about which the corporate representative was to be prepared to testify. (Dep. Notice).

C. **At the deposition, the corporate representative was unable and/or unwilling to address the matters listed in the deposition notice.**

Throughout the deposition, the corporate representative failed to provide substantive answers to Plaintiff's questions. Even when specifically asked about the topics detailed in Plaintiff's deposition notice, the corporate representative could not or would not provide answers beyond speculation and generalities. The chart below demonstrates the corporate representative's failure to address several issues specifically identified by the deposition notice by comparing the exact language of the deposition notice with Plaintiff's questions and Defendant's responses.

| Deposition Notice Language | Deposition Excerpts |
|---|---|
| a. Plaintiff's exercise of discretion and individual judgment with regard to matters of significance. This includes but is not limited to instances where: 1) property damage totaled greater than $2000 and (a) Plaintiff did not use an appraiser | 20  Q  All right.  We had asked that you be ready<br>21  to testify concerning instances where property<br>22  damage totalled greater than $2,000 and Michael<br>23  Estrada did not use an appraiser.<br>24  Are you aware of any instance in<br>25  which property damage totalled greater than $2,000<br>00163<br>1       W. BENECKE<br>2  and Michael Estrada did not use an appraiser?<br>3       A   As I'm sitting here today, I don't have a<br>4  specific claim number, insured name, or date of loss<br>5  where I'm aware of an appraiser not having been<br>6  involved in the process.<br><br>(Benecke Dep., 162:20-163:6). |
| a. Plaintiff's exercise of discretion and individual judgment with regard to | 7       Q   Okay.  Are you aware of any instances |

| | |
|---|---|
| matters of significance. This includes but is not limited to instances where: 1) property damage totaled greater than $2000 and . . . (b) there were two or more appraisals obtained, | 8   where property damage totalled [sic] more than $2,000 and<br>9   there were two or more appraisals that were<br>10  provided?<br>11     A   I don't have a specific claim number,<br>12  insured name, and date of loss where that would have<br>13  occurred that I could say today, but I would believe<br>14  that that is something that he would have been<br>15  exposed to in his responsibilities in his job.<br><br>***<br><br>11     Q   Do you have any personal knowledge of an<br>12  instance in which there were two or more appraisals<br>13  provided and there was a property claim over $2,000<br>14  and it was Mr. Estrada handling it?<br>15     A   I don't have a specific insured claim<br>16  number and date of loss where that has occurred, but<br>17  I do believe that it was something that he was<br>18  exposed to in his responsibilities with the company.<br><br>(Benecke Dep., 163:7-15, 164:11-18). |
| a. Plaintiff's exercise of discretion and individual judgment with regard to matters of significance. This includes but is not limited to instances where: ... 2) Plaintiff negotiated a settlement | 19     Q   Okay. Can you identify any specific<br>20  claims in which Michael Estrada negotiated a<br>21  settlement?<br>22     A   Almost every one of his claims he was<br>23  responsible for negotiating a settlement, but to be<br>24  here and give you a claim number and insured name<br>25  and date of loss, as I'm sitting here today, I would<br>00165<br>1      W. BENECKE<br>2  not be able to do that.<br><br>(Benecke Dep., 164:19-165:2). |

| | |
|---|---|
| a. Plaintiff's exercise of discretion and individual judgment with regard to matters of significance. This includes but is not limited to instances where: ... <br> 5) Plaintiff determined percentages of fault. | 10   Q   Can you provide me with any example of <br> 11   when Mr. Estrada actually had to make a comparative <br> 12   negligence determination? <br> 13   A   If you're asking for me, as I'm sitting <br> 14   here today in Philadelphia, do I have a physical <br> 15   matter that I can give you a name of an insured, a <br> 16   claim number, and a date of the loss, no, I do not <br> 17   have that physically with me today. <br><br> (Benecke Dep., 151:10-17). |
| e. The differences and similarities between the job duties and responsibilities of Plaintiff and other Claims Examiners handling "Fast Track" claims. | The corporate representative continuously refused to provide any examples of actual Fast Track Claims Auto Examiners performing tasks different from the Named Plaintiff, for example: <br><br> 22   Q   Can you give me a nickname or code name or <br> 23   someway we can start discussing those individuals to <br> 24   see how they might not be similar to Mr. Estrada? <br> 25   A   You know, I would be talking about <br> 00172 <br> 1       W. BENECKE <br> 2   generally knowing that it's happening within the <br> 3   department, but not knowing exactly what examiners <br> 4   are doing it, not being their immediate supervisors <br> 5   and not knowing their skill-set and what the <br> 6   supervisors has determined to be their capabilities. <br> 7   I would be speculating on individuals and names. <br><br> (Benecke Dep., 171:22-172:7). |
| g. The process by which Defendant makes determinations related to the FLSA classification of Claims Examiners. | 10   Q   What process did Maguire go through to <br> 11   determine that claims examiners, Fast Track claims <br> 12   examiners would be exempt and paid a salary, or do |

PLAINTIFF'S RULE 37 MOTION TO COMPEL AND BRIEF IN SUPPORT– Page 7

|  | 13  you know?<br>14     A   I'm not entirely certain of the process<br>15  that -- that caused the position to be -- determined<br>16  to be exempt.<br>17  It was a exempt position when I --<br>18  for as long as I can recall. It is a -- it is a<br>19  process that, I think as an employer, and certainly<br>20  somebody in my responsibility -- you know, I keep<br>21  track of, you know, what is happening in the<br>22  insurance community and get notice from our lawyers<br>23  that we work with in changes in law and if anything<br>24  that had developed, um, I would have very likely<br>25  been provided notification from our lawyers that<br>00175<br>1           W. BENECKE<br>2  would have caused us to go to our Human Resources<br>3   department and/or our Legal department and discuss<br>4    classification.<br><br>(Benecke Dep., 174:10-175:4). |

D.  **Indeed, the corporate representative's testimony is fairly characterized as being evasive and incomplete.**

Defendant had more than adequate time to prepare its corporate representative regarding the topics detailed by both this Court's Discovery Order and the Deposition Notice served on Defendant. However, despite this ample opportunity to produce a witness able respond to the relevant questions, the corporate representative consistently evaded answering the questions asked and provided intentionally incomplete and vague responses to even basic questions.

1.  *The corporate representative denied having any Fast Track Auto Claims Examiners*

During discovery, Defendant has claimed not to even have employees who are Fast Track Auto Claims Examiners.  For instance, this objection was repeatedly lodged: "Additionally, Defendant objects to this request because it makes improper inferences in that it assumes that Defendant maintains a 'fast track claims examiner' position." (Def.'s Resp. and Obj. to Pl.'s Req. for Prod. ¶¶ 2, 6, and 9).  However, prior to the deposition, Plaintiff obtained company documents clearly identifying a "Fast Track Auto Examiner Group" with a sub-listing of the employees in that group.  (Benecke Dep., Ex. 1).  Regardless, the corporate representative still claimed not to have a fast track claims department or group nor to have fast track claims examiners:

```
 7        Q    In terms of handling these Fast Track
 8   automobile claims, are there certain adjusters
 9   whose -- I guess certain claims examiners whose
10   claims are limited to Fast Track claims?
11        A    Not to my understanding, no.
12        Q    Do you have a department that handles
13   specifically Fast Track claims?
14        A    No.
15        Q    Have you in the past three years or --
16   yeah.
17             Have you in the past four years had a
18   department that handled primarily Fast Track claims?
19        A    First of all, I guess I need probably a
20   clarification on what you mean by "department."
21             I'm not sure what you mean by
22   "department."
23        Q    Well, have you used the word "department"
24   in the course of conversation?
25        A    Yes.

00011
 1                     W. BENECKE
 2        Q    And when you say "department," what is it
 3   that you intend it to mean?
 4        A    I intend it to mean my claims department.
 5        Q    Okay.
```

```
 6      A    So, I would not -- my answer to you would
 7   be, I do not have a Fast Track claims department.
 8               There's no such thing as a Fast Track
 9   claims department in my understanding in my general
10   use of the term.
11      Q    Okay.  Is there a Fast Track claims group,
12   division, or other sort of sub-organization within
13   Maguire?
14      A    In my use of the word "Fast Track," the
15   answer to your question is no.
```

(Benecke Dep., 10:7-11:15).

> 2. *The corporate representative denied the position existed until provided contrary evidence.*

Only after Plaintiff provided the corporate representative with Defendant's own claims metrics report did the corporate representative acknowledge any position relating to Fast Track Auto Claims Examiners:

```
15               This document was produced to us by
16   the attorneys representing the defendant, so I would
17   ask you to use your best efforts to try and read it.
18   And usually I don't like witnesses to consult with
19   counsel, but if you need your counsel's assistance
20   in reading the document, I'm certainly not going to
21   object.
22               Do you want to take a few moments and
23   confer with your counsel and then maybe you can tell
24   me what this document is?
25      A    Sure.

     ***

17      Q    All right.  Thank you for taking the time
18   to go through that document with your attorney.
19               I think your attorney pointed out to
20   you that in the top left-hand corner it says,
21   "Examiner Group."
22               Do you see that?
23      A    Yes.
24      Q    And we were just talking about groups and
25   sub-groups of different claims examiners, weren't

00014
 1                    W. BENECKE
 2   we?
 3      A    I don't recall that.  You asked me the
 4   questions about the term "department."  That's what
 5   I recall.  I don't recall something beyond that.
```

```
 6      Q    Okay.  Well, I'm going to ask you about
 7 groups now.  If you look in that column that says,
 8 "Examiner Group," I believe you'll see it says,
 9 "American Specialty, Commercial Auto, Fast Track
10 Auto, General Liability, Professional Liability,
11 Property, Subro, and Unknown."
12               Those are all categories under
13 "Examiner Groups."
14               Is it say [sic] to say that the
15 Philadelphia Insurance Companies have these
16 different groups of claims examiners that are listed
17 here on Exhibit 1?
18      A    No.
19      Q    Why not?
20      A    This is a report that's utilized by
21 management to track the number of certain metric
22 items, as indicated by the title of this document,
23 "Claim Metric Report."  And as a result of its
24 purpose, it serves exclusively for us to track these
25 metrics.  And is in no way indicative of, you know,

00015
 1                    W. BENECKE
 2 a classification of anything other than the metrics
 3 and the grouping of items within that metric.
 4      Q    Are you in management, sir?
 5      A    I am.
 6      Q    And you're sitting here today as a
 7 representative of the company; is that correct?
 8      A    I am.
 9      Q    So can you tell me, since this was done by
10 management, who it was that came up with these
11 different examiner group labels?
12      A    I did.
13      Q    You did.  So, what were you thinking when
14 you came up with the Fast Track Auto Group field?
15 What was that supposed to mean?
16      A    That was to represent a grouping of
17 employees that received a Fast Track claim processed
18 claim.
```

(Benecke Dep., 12:15-15:18) (emphasis added).

Clearly, having created of the claims metrics report and having participated in the creation of the grouping of the examiners into the "Fast Track Auto" category, the corporate representative had full awareness of the meaning and significance of the term Fast Track Auto Claims Examiner. Despite this, the corporate representative intentionally avoided revealing this information for as long as

possible. Furthermore, the corporate representative created as many obstacles to ascertaining the requested information as he could.

> 3. *The corporate representative still would not discuss basic information about the class even after establishing a group of Fast Track Auto Claims Examiners did exist.*

Significantly, even after establishing that Fast Track Claims Examiners did exist, the corporate representative persisted in evading discussing the number of Fast Track Claims Examiners employed:

```
 2      Q    Would you characterize it as a large
 3   insurance company?
 4      A    I don't know what you would mean by the
 5   word "large," so I'm not sure I could answer your
 6   question.
 7      Q    About how many claims overall does Maguire
 8   handle a year?
 9      A    In 2011, we processed, approximately,
10   85,000 claims.
11      Q    And about how many of those claims were
12   Fast Track claims?
13      A    Again, I wouldn't know on a percentage
14   basis how many of those claims would be Fast Track
15   claims.
16      Q    Is it fair to say that it was a relatively
17   small percentage?
18      A    No.  I'm not sure I would agree with that.
19      Q    Okay.  What would you need to do to be
20   able to tell me the percentage of claims that were
21   Fast Track claims?
22      A    I would probably have to run a report or
23   look at statistics from a computer.
24      Q    Would that be a fairly easy report to run?
25      A    Yes.

00010
 1                      W. BENECKE
 2      Q    Would you be surprised if less than
 3   10 percent of Maguire's claims were Fast Track
 4   claims?
 5      A    I -- I'm not sure whether I would be
 6   surprised or not, no.
```

(Benecke Dep., 9:2-10:6) (emphasis added).

4.  *The corporate representative would not or could not testify in any way, shape, or form about any individual Fast Track Auto Claims Examiner other than the Named Plaintiff.*

Once Plaintiff established Defendant created and maintained a Fast Track Auto Claims Examiner group, Plaintiff attempted to ascertain information pertaining to how similarly situated the putative class is. However, the corporate representative would not testify about anyone in the class other than the Named Plaintiff:

```
 7         Q   Okay.  Can you identify any individual in
 8   this Fast Track Auto Group that handled a claim
 9   during the past three years that was not a Fast
10   Track Auto claim?
11            MR. ALLOY:  Objection.  Are you asking the
12       identity, or whether or not he can identify the
13       individual?
14            MR. WILEY:  I would like him to tell me
15       who.  If he's going to sit here and say that
16       this Fast Track Auto label doesn't really mean
17       people that were just doing Fast Track claims,
18       because he is apparently disputing that this
19       even exists, until we showed him this document,
20       then I think he needs to tell me who was not,
21       in fact, just doing Fast Track claims.
22            MR. ALLOY:  First of all, I think that
23       mischaracterizes the witness's testimony.
24            And second of all, the identity of
25       individuals beyond the plaintiff is outside the
00017
 1                      W. BENECKE
 2       scope of the court's discovery order in this
 3       case.
```

(Benecke Dep., 16:7-17:3).

5.  *The corporate representative refused to provide any kind of substantive response even when given the opportunity to discuss the class without revealing their identities or addresses.*

Even when given the opportunity to discuss specific claims examiners without revealing their actual identity, the corporate representative still would not or could not provide substantive responses to Plaintiff's questions:

```
22      Q    Can you give me a nickname or code name or
23  someway we can start discussing those individuals to
24  see how they might not be similar to Mr. Estrada?
25      A    You know, I would be talking about
00172
 1       W. BENECKE
 2  generally knowing that it's happening within the
 3  department, but not knowing exactly what examiners
 4  are doing it, not being their immediate supervisors
 5  and not knowing their skill-set and what the
 6  supervisors has determined to be their capabilities.
 7  I would be speculating on individuals and names.
```

(Benecke Dep., 171:22-172:7).

      6.    *The corporate representative was generally evasive and unresponsive.*

On multiple occasions, the corporate representative would inexplicably avoid providing meaningful answers regarding even simple, undisputed issues:

```
20      Q    All right.  Having said that, are you
21  familiar with Michael Estrada?
22      A    I'm not sure I would know what you mean by
23  the word "familiar."
```

(Benecke Dep., 6:20-23).

Indeed, the corporate representative felt he could not answer whether or not he had "used" the metrics reports that he both received every day and was personally involved in designing:

```
12      Q    Okay.  Now, you've used these claims
13  metrics reports before; is that correct?
14      A    I'm not sure I would know what you mean by
15  the word "use."
16      Q    Have you seen the claims metrics report
17  before?
18      A    Yes.
19      Q    Did you create the claims metrics report?
20      A    I didn't personally create it with the
21  computer system, but I helped design it.
22      Q    Okay.  So you have a -- more than a
23  passing familiarity with the claims metric report
24  given that you helped design it; is that correct?
25      A    Yes.
```

(Benecke Dep., 20:12-25).

```
7      Q    Were these claims metrics reports
8   generated monthly, quarterly, daily; do you know?
9      A    I receive this report daily.
```

(Benecke Dep., 27:7-9).

The result is that after an entire day deposing the corporate representative, Plaintiff is left with only a small fraction of the information that Plaintiff properly notified Defendant would be the subject of the deposition and that Plaintiff is entitled to have obtained during the conditional class certification discovery period.

D. **Plaintiffs have been prejudiced by Defendant's failure to produce a prepared corporate representative.**

The Named Plaintiff is located in the Dallas area of Texas. Unsurprisingly, the Named Plaintiff's attorneys are also located in Dallas, Texas. The depositions in this matter took place in Philadelphia, Pennsylvania. Consequently, considerable expense was incurred during both the preparation for and attendance of the corporate representative deposition.

The failure of the Defendant to produce a corporate representative properly prepared to and willing to provide meaningful and substantive answers to Plaintiff's questions prejudiced Plaintiff's ability to ascertain invaluable information in determining the appropriate putative class. Therefore, Plaintiff is entitled to a motion to compel under Rule 37.

IV.
ARGUMENT

A. **Plaintiff attempted to reach a resolution without avail.**

Plaintiff has attempted to resolve this issue with Defendant, but has not been successful. In a letter dated December 20, 2012, Plaintiff informed Defendant of its concerns regarding the unresponsiveness Defendant's representative to the topics detailed in Plaintiff's deposition notice. (December 20, 2012 Letter). Defendant provided a written response on December 28, 2012, disagreeing with Plaintiff's concerns. (December 28, 2012 Letter). Defendant alleges that the only information which the corporate representative failed to provide was the identities of the other claims examiners. *Id*. This is patently untrue. Despite many attempts by Plaintiff to solicit specific information even with initials or fictional code names, the corporate representative would not or could not provide information beyond pure generalities regarding other Fast Track Auto Claims Examiners. (Benecke Dep., 171:22-172:7).

B. **Plaintiff files this Motion and seeks an order to compel a second deposition of Defendant's corporate representative at Defendant's expense.**

Under Rule 37 of the Federal Rules of Civil Procedure, a party may "move for an order compelling disclosure of discovery" if a "deponent fails to answer a question asked under Rule 30 or 31." Fed. R. Civ. P. 37(a)(1), (3)(B)(i). Further, Rule 37 provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. R.37(4)(a). As Plaintiff has demonstrated through significant examples, the corporate

representative intentionally avoided answering questions, provided incomplete disclosures and provided mere generalities and unsubstantiated beliefs about the facts rather than actual specific examples or actual occurrences. Under such circumstances, Rule 37 permits a party to seek "an order compelling an answer, designation, production or inspection". Fed. R. Civ. P. R. 37(a)(3)(B).

Much of the information withheld by Defendant's representative would be crucial in demonstrating Plaintiff's entitlement to conditional class certification. Consequently, because of Defendant's failure to produce a corporate representative prepared to disclose the requested, discoverable information, Plaintiff moves for an order to compel under Rule 37.

Specifically, Plaintiff seeks that Defendant be compelled to provide Plaintiff with the opportunity to re-depose the corporate representative at Defendant's expense. However, as the discovery at issue specifically relates to the conditional class certification motion and the evidence regarding whether or not the class is similarly situated, Plaintiff alternatively seeks that this Court conditionally certify the class as a reasonable remedy for Defendant's actions in obstructing discovery on that issue.

## V.
## CONCLUSION

Because of Defendant's willful behavior in producing a corporate representative wholly unable or willing to provide substantive responses relating to the conditional class certification discovery, The Class respectfully requests that this Court grant their Rule 37 Motion to Compel. Alternatively the Class

respectfully requests that this Court conditionally certify the class as the proper remedy for Defendant's behavior. Plaintiff Class respectfully requests oral argument to present Plaintiff Class's arguments in favor of the relief it seeks.

Respectfully submitted,

/s/ Jessica Cohen
Robert J. Wiley
Texas Bar No. 24013750
*Board Certified in Labor and Employment Law*
*by the Texas Board of Legal Specialization*
Jessica Cohen
Texas Bar No. 24082838

ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone: (214) 528-6500
Facsimile: (214) 528-6511
jcohen@robwiley.com
ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF CONFERENCE

Counsel to this matter have complied with the Court's requirement of Local Rule 26.1(f), and despite reasonable efforts, the parties are unable to resolve the dispute. December 20, 2012, counsel for Movant Jessica Cohen submitted by letter Movant's dispute regarding the corporate representative's deposition. Counsel for Respondents replied by letter that they disagreed with Movant's position. Counsel for Movant and Counsel for Respondent additionally conferred by telephone on January 3, 2012, at which the parties acknowledged that a good faith disagreement exists over whether the materials at issue are discoverable and, as a result, the parties were unable to resolve this issue. As a result this matter is presented to the Court for determination.

/s/ Jessica Cohen

CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2013, I served a copy of this Motion to Compel and Brief in Support on counsel for Defendants via the Court's CM/ECF system.


/s/ Jessica Cohen