**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL ESTRADA, individually and on behalf of others similarly situated, | ) ) ) ) | CIVIL ACTION NO. 12-604 |
| Plaintiff, | ) ) | FILED ELECTRONICALLY |
| v. | ) ) | |
| MAGUIRE INSURANCE AGENCY, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OF LAW  IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT AND SUMMARY OF RELEVANT FACTS ........................... 1

SUMMARY JUDGMENT STANDARD ............................................................................. 3

ARGUMENT ................................................................................................................. 3

I.  PLAINTIFF'S CLAIM FOR OVERTIME FAILS AS A MATTER OF LAW
    BECAUSE HE WAS PROPERLY CLASSIFIED AS EXEMPT UNDER THE
    FLSA'S ADMINISTRATIVE EXEMPTION .......................................................... 3

    A.  Administrative Exemption Standard .................................................................. 4

    B.  The DOL And Courts Of Appeals Have Consistently Held That Claims
        Examiners Are Exempt Employees And Not Entitled to Overtime Under the
        FLSA .............................................................................................................. 5

        1.  The DOL Considers Claims Examiners To Be Presumptively Exempt ....................... 5

        2.  The Courts Of Appeals Have Uniformly Held That Claims Examiners Are
            Exempt ....................................................................................................... 6

            a.  The Fifth Circuit ..................................................................................... 7

            b.  The Seventh Circuit ................................................................................ 9

            c.  The Eighth Circuit ............................................................................... 10

            d.  The Ninth Circuit ................................................................................. 11

            e.  The D.C. Circuit ................................................................................... 12

    C.  Plaintiff Satisfies The FLSA Three-Part Test For The Administrative Exemption ........... 13

        1.  Plaintiff Meets The Salary Basis Requirement ............................................... 13

        2.  Plaintiff's Primary Job Duty Was The Performance Of Office/Non-Manual
            Work Directly Related to Maguire's Management Or General Business
            Operations ................................................................................................ 14

        3.  Plaintiff's Primary Job Duties Included the Exercise Of Discretion And
            Independent Judgment With Respect To Matters Of Significance ....................... 15

a.   Plaintiff's Testimony Establishes That He Exercised Discretion and Independent Judgment ....................................................................................15

b.   The Testimony of William Benecke, Maguire's Executive Vice President of Claims, Establishes That Plaintiff Exercised Discretion and Independent Judgment ...........................................................................17

c.   Plaintiff's Claims Notes Establish That He Exercised Discretion And Independent Judgment ....................................................................................17

d.   Maguire's Job Descriptions And Claim Handling Guidelines Establish That Plaintiff Exercised Discretion and Independent Judgment....................18

e.   Plaintiff's Performance Evaluations Establish that He Exercised Discretion and Independent Judgment............................................................19

f.   Plaintiff's Current Resume Establishes That He Exercised Discretion And Independent Judgment ..........................................................................20

II.  PLAINTIFF'S OVERTIME CLAIM ALSO FAILS BECAUSE HE CANNOT DEMONSTRATE THAT HE WORKED IN EXCESS OF 40 HOURS PER WEEK...........22

CONCLUSION........................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Altemus v. Fed. Realty Inv. Trust*,
   No. 11-2213, 2012 U.S. App. LEXIS 15917 (4th Cir. 2012) ................................................19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..........................................................................................................3

*Auer v. Robbins*,
   519 U.S. 452 (1997)..........................................................................................................6

*Barry v. Town of Elma*,
   No. 02-cv-344, 2005 U.S. Dist. LEXIS 5548 (W.D.N.Y. March 28, 2005)..........................23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..........................................................................................................3

*Cheatham v. Allstate Ins. Co.*,
   465 F.3d 578 (5th Cir. 2006) ................................................................................... 5, 7-8

*Hein v. PNC Fin. Servs. Group, Inc.*,
   511 F. Supp. 2d 563 (E.D. Pa. 2007) ...............................................................................4

*Hines v. Longwood Events, Inc.*,
   No. 1:08-CV-11653, 2010 U.S. Dist. LEXIS 62259 (D. Mass. June 23, 2010)....................21

*Jiminez v. All Am. Rathskeller, Inc.*,
   503 F.3d 247 (3rd Cir. 2007) ..........................................................................................3

*Kolesnikow v. McNamara*,
   622 F. Supp. 2d 98 (S.D.N.Y. 2009)................................................................................23

*Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*,
   Nos. 10-1095 and 09-379, 2011 U.S. Dist. LEXIS 11275 (W.D. Pa. Feb. 4, 2011) ..............23

*McAllister v. Transamerica Occidental Life Ins. Co.*,
   325 F.3d 997 (8th Cir. 2003) ..............................................................................5, 10, 11

*Miller v. Farmers Ins. Exch. (In re Farmers Ins. Exch.)*,
   466 F.3d 853 (9th Cir. 2006), *as amended*, 481 F.3d 1119 (9th Cir. 2007) .................6, 11, 22

*Robinson v. Gov't Emps. Ins. Co.*,
   323 F. Supp 2d 12, *reversed* ..........................................................................................11

*Robinson-Smith v. Gov't Emples. Ins. Co.*,
   590 F.3d 886, 389 U.S. App. D.C. 46 (D.C. Cir. 2010) ............................................ 11-13, 15

*Roe-Midgett v. CC Servs Inc.*,
   512 F.3d 865 (7th Cir. 2008) ................................................................ 5, 9-10

*Smith v. Johnson & Johnson*,
   593 F.3d 280 (3d Cir. 2010)................................................................................4

*Talbert v. Am. Risk Ins. Co.*,
   405 F. App'x 848 (5th Cir. 2010) ...................................................... 7-9

*Zalewski v. PNC Fin. Servs. Group, Inc.*,
   No. 06-1231, 2008 U.S. Dist. LEXIS 70026 (W.D. Pa. Feb. 4, 2008)............................ 21-22

STATUTES

29 U.S.C. § 207(a)(1).......................................................................................23

29 U.S.C. § 213(a)(1).........................................................................................4

OTHER AUTHORITIES

29 C.F.R. § 541.0(a).........................................................................................4

29 C.F.R. §§ 541.200.......................................................................................14

29 C.F.R. § 541.200(a).......................................................................................4

29 C.F.R. § 541.201(a).......................................................................................4

29 C.F.R. § 541.202(a).......................................................................................5

29 C.F.R. § 541.202(c).......................................................................................5

29 C.F.R. § 541.203(a).......................................................................................5

29 C.F.R. § 541.205(c)(5) ............................................................................... 5-6

69 Fed. Reg. 22145 .........................................................................................5

U.S. Dep't of Labor Wage & Hour Div., Op. Letter FLSA 2002-11 (Nov. 19, 2002),
   *available at*
   http://www.dol.gov/whd/opinion/FLSA/2002/2002_11_19_11_FLSA.htm.............................6

## PRELIMINARY STATEMENT AND SUMMARY OF RELEVANT FACTS[1]

Plaintiff Michael Estrada ("Plaintiff") has brought suit under the Fair Labor Standards Act ("FLSA") alleging that he was misclassified as an exempt employee and entitled to overtime for weeks in which he allegedly worked more than forty hours.  This is Plaintiff's only cause of action.[2]  Defendant Maguire Insurance Agency, Inc. ("Maguire" or "Defendant") is entitled to summary judgment because it properly classified Plaintiff, an insurance claims examiner, as exempt from overtime under the FLSA's administrative exemption.  The undisputed evidence establishes that Plaintiff performed office work directly related to Maguire's insurance claims operations and exercised discretion and independent judgment in carrying out his job.  Plaintiff's exempt classification is consistent with the FLSA's governing regulations, the Department of Labor's ("DOL") long-standing position, and the decisions of each of the five Courts of Appeals to address the issue.  Thus, dismissal of Plaintiff's claims as a matter of law is appropriate.

In June 2008, Maguire hired Plaintiff to work as an insurance claims examiner at its Addison, Texas location.  Facts ¶ 3.  Plaintiff worked at the Addison, Texas office until his resignation effective in December 2011.  Facts ¶ 5.  Plaintiff was responsible for investigating, analyzing, and ultimately resolving "fast track" automobile insurance claims.  Facts ¶ 6.  "Fast track" insurance claims typically consist of "automobile accidents with lesser damage which may or may not involve bodily injury" (but typically do not) that are "fast tracked" to a small group of claims examiners, like Plaintiff, to resolve.  Facts ¶ 9.

---

[1] For a detailed description of the facts, Maguire incorporates herein its Statement of Undisputed Materials Facts, which is filed along with its Motion for Summary Judgment and cited herein as "Facts ¶ __."

[2] Plaintiff has filed this case as a putative collective action seeking to represent other allegedly similarly situated fast track claims examiners.  Plaintiff's first motion for "conditional certification" was denied with leave to re-file following discovery, and to date, there have been no opt-ins.  The parties have now completed all discovery.

Plaintiff's deposition testimony, performance evaluations, resume, job description, and detailed "claims notes" he drafted each day describing his work, as well as the testimony of William Benecke, Maguire's Executive Vice President of Claims, all demonstrate that Plaintiff exercised discretion and independent judgment in investigating and resolving automobile insurance claims.[3]  Specifically, Plaintiff exercised discretion and independent judgment by, *inter alia*: (a) determining whether a claimant qualified for coverage; (b) investigating claims and determining the course of investigations; (c) speaking with parties and witnesses as part of the investigation and making credibility determinations; (d) determining whether to hire outside vendors (e.g., appraisers); (e) deciding and apportioning liability based on the facts; (f) analyzing and applying applicable state laws, and applying comparative negligence principles when applicable; (g) setting reserve amounts for each claim; (h) rendering total loss determinations; and (i) interacting with attorneys.  *See*, *generally*, Facts ¶¶ 20-60.  Plaintiff also had the authority to and did independently negotiate and settle claims for amounts up to $10,000 without any supervision – which comprised the vast majority of all claims that he handled – and recommended settlements above $10,000 to his supervisor.  Facts ¶¶ 48-50.

These duties are the very hallmarks of discretion and independent judgment necessary to qualify for the administrative exemption, and it is well-established that the processing of insurance claims is administrative work directly related to an insurance company's business operations.  Therefore, Plaintiff's claim for overtime fails as a matter of law.

Even if Plaintiff could somehow demonstrate that he was misclassified as exempt from overtime – which he cannot do – his claim for overtime still fails as a matter of law because he

---

[3] As part of discovery, which closed December 21, 2012, the Parties exchanged written interrogatories and document requests and Plaintiff and Mr. Benecke were deposed.  Defendant produced over 1600 pages of documents and also produced a large excel spreadsheet of Plaintiff's claims notes (approximately 5,000 pages if printed).

has not provided any credible evidence that he ever worked more than 40 hours in a single week.

In fact, all of the existing and undisputed evidence establishes that Plaintiff rarely, if ever,

worked beyond his regularly scheduled 37.5 hour work week.

For these reasons, and as explained below, Maguire's Motion for Summary Judgment

should be granted and Plaintiff's Complaint should be dismissed in its entirety with prejudice.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,*, 477 U.S. 317, 325

(1986) (citing old Fed. R. Civ. P. 56(c)).  The moving party's burden is "discharged by

'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at

325.  Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, or the "mere existence of a scintilla of

evidence in support of the plaintiff's position," is not sufficient to overcome summary judgment.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986); *Jiminez v. All Am.*

*Rathskeller, Inc.*, 503 F.3d 247, 253 (3rd Cir. 2007).  Rather, the plaintiff must adduce "evidence

on which the jury could reasonably find for the plaintiff." *Id*.

## ARGUMENT

### I.    PLAINTIFF'S CLAIM FOR OVERTIME FAILS AS A MATTER OF LAW BECAUSE HE WAS PROPERLY CLASSIFIED AS EXEMPT UNDER THE FLSA'S ADMINISTRATIVE EXEMPTION

The applicable law and undisputed facts adduced during discovery demonstrate that

Maguire properly classified Plaintiff as an administratively exempt employee under the FLSA.

**A.      Administrative Exemption Standard**

Under the FLSA, "employees who work more than 40 hours per week are entitled to overtime pay unless they fall within one of the FLSA's exemptions."  *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (*citing* 29 U.S.C. §§ 207 and 213).  Employees that are employed in a "bona fide" administrative capacity fall within one of the FLSA's exemptions to overtime.  29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.0(a).  Whether a plaintiff "falls within an exemption is a mixed question of law and fact to be resolved by the Court."  *Hein v. PNC Fin. Servs. Group, Inc.*, 511 F. Supp. 2d 563, 570 (E.D. Pa. 2007).  As demonstrated below, courts routinely grant motions for summary judgment on this issue.

The DOL has issued governing regulations that set forth a three-part test to determine whether an employee is "employed in a bona fide administrative capacity."  29 C.F.R. § 541.200(a).  Under the three-part test, the administrative exemption applies where:

> (1) An employee is compensated on a salary or fee basis at a rate of not less than $455 per week;
> (2) An employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) An employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

"The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee."  29 C.F.R. § 541.201(a).  An employee meets this requirement where the work performed is "directly related to assisting with the running or servicing of the business, as distinguished, for example, from work on a manufacturing production line or selling a product in a retail or service establishment."  *Id.*

The exercise of "discretion and independent judgment" is defined as "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various

possibilities have been considered."   29 C.F.R. § 541.202(a).  An employee may still exercise

discretion even where the employee's decisions are subject to review and approval by a superior,

where the employee makes recommendations for action, or where the employee consults with or

follows manuals or guidelines.  *See* 29 C.F.R. § 541.202(c); *Roe-Midgett v. CC Servs Inc.*, 512

F.3d 865, 875 (7th Cir. 2008); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006);

*McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1001 (8th Cir. 2003).

**B.     The DOL And Courts Of Appeals Have Consistently Held That Claims Examiners Are Exempt Employees And Not Entitled To Overtime Under The FLSA**

For at least the past fifty years, the DOL has acknowledged that insurance claims

examiners are presumptively exempt employees under the administrative exemption.  Further,

*every* Court of Appeals that has addressed the issue has held that claims examiners – many of

whom had fewer responsibilities and exercised less discretion than Plaintiff in this case – are

exempt employees as a matter of law and have granted summary judgment in employers' favor.

1.     <u>The DOL Considers Claims Examiners To Be Presumptively Exempt</u>

The DOL has long acknowledged a presumption that claims examiners are exempt from

overtime under the FLSA's administrative exemption.  29 C.F.R. § 541.203(a), one of the

governing regulations issued by the DOL in 2004, explicitly provides that "[i]nsurance claims

adjustors generally meet the duties requirements for the administrative exemption . . . if their

duties include activities such as interviewing insureds, witnesses and physicians; inspecting

property damage; reviewing factual information to prepare damage estimates; evaluating and

making recommendations regarding coverage of claims; determining liability and total value of a

claim; negotiating settlements; and making recommendations regarding litigation."

Prior to 2004, the governing regulation, 29 C.F.R. § 541.205(c)(5), also provided that

"claim agents and adjusters" generally met the administrative exemption.  *See also* 69 Fed. Reg.

22145 (Preamble to 2004 regulations noting that § 541.203 is consistent with § 541.205(c)(5)). Section 541.205(c)(5)'s reference to claim agents and adjusters originated in a 1940 DOL Report that created the administrative exemption.  This was made clear in a 2002 DOL Opinion Letter, which made explicit reference to the 1940 Report and concluded that the "Wage and Hour [division] has long recognized that claims adjusters typically perform work that is administrative in nature."  *See* U.S. Dep't of Labor Wage & Hour Div., Op. Letter FLSA 2002-11 (Nov. 19, 2002), *available at* http://www.dol.gov/whd/opinion/FLSA/2002/2002_11_19_11_FLSA.htm).

The DOL's 2002 Opinion Letter further concluded that insurance claims adjusters were properly classified as administratively exempt employees where they interviewed insureds, witnesses, and physicians, evaluated coverage, applied state laws to claims issues, inspected property damage, set reserves, potentially participated in litigation matters, and negotiated settlements (even where the settlement authority was as low as $3,000).  *Id.*  The DOL issued similar opinion letters in 1985 and 1963.  U.S. Dep't of Labor Wage & Hour Div., Op. Letter, at 2 (Oct. 29, 1985); U.S. Dep't of Labor Wage & Hour Div., Op. Letter, at 1-2 (Feb. 18, 1963).

It is well-established that courts must give due deference to the DOL's own regulations of the FLSA and its reasonable interpretation of those regulations.  *See, e.g., Miller v. Farmers Ins. Exch. (In re Farmers Ins. Exch.)*, 466 F.3d 853, 859-861 (9th Cir. 2006), *as amended*, 481 F.3d 1119 (9th Cir. 2007) (analyzing history of DOL's regulations and guidance on insurance claims adjusters, and concluding that the DOL's long-standing position that claims adjusters are exempt must be given deference); *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

　　　2.　　The Courts Of Appeals Have Uniformly Held That Claims Examiners Are Exempt

Consistent with the DOL's regulations, every Court of Appeals to address this issue, including the Fifth Circuit where Plaintiff worked, have uniformly held that claims examiners are

not entitled to overtime compensation under the FLSA because they fall within the administrative exemption.[4]

    a.    The Fifth Circuit

In two separate decisions, the Fifth Circuit affirmed district court decisions granting summary judgment and held that insurance claims examiners, like Plaintiff, were properly classified as administratively exempt employees under the FLSA. *See Cheatham,* 465 F.3d at 584; *Talbert v. Am. Risk Ins. Co.*, 405 F. App'x 848, 854-55 (5th Cir. 2010).

In *Cheatham*, the claims adjustors at issue alleged that they were "nothing more than data input clerks." They claimed they were limited in their ability to determine liability because they had to adhere to a "liability matrix," they were limited in their ability to negotiate by having to adhere to computer software and manuals, they could not set reserves without consulting a computer program, and they had to seek approval before settling a claim. *See* 465 F.3d at 585.

The district court nevertheless granted summary judgment to the employer and the Fifth Circuit affirmed. Contrary to the claims adjustors' description, the evidence established that their duties included (a) determining and making decisions regarding coverage, (b) determining the steps necessary to complete a coverage inquiry, (c) conducting investigations, (d) determining liability and assigning percentages of fault to parties, (e) negotiating settlements, and (f) setting and adjusting reserves. *Id.* at 586.

The Fifth Circuit affirmed that these duties were part of Allstate's administrative operations, and directly related to general business operations. *Id.* at 585. The Court concluded that "[a]n insurance company's product is its policies, and [the claims examiners'] duties did not

---

[4] Despite the fact that Plaintiff lives and worked in Texas, and Plaintiff's counsel is located in Texas, this action was originally filed in the Southern District of New York. Plaintiff withdrew that action and filed a new action in this Court. It is not a coincidence that Plaintiff has tried to avoid the Fifth Circuit and its clear and controlling case law.

include writing and selling insurance.  Indeed, as insurance company adjustors, [they] advised the management, represented [the company], and negotiated on [the company's] behalf; these duties are administrative in nature").  *Id.*  Further, the Court held that adjusters' duties included discretion and independent judgment because they "considered and evaluated alternative courses of conduct and took action or made a decision after considering the various possibilities."  *Id*  The fact that the adjusters consulted with manuals or guidelines, had to adhere to computer software, or made recommendations and had to seek approval, did not preclude them from exercising discretion and independent judgment.  *Id.* at 585-86.

More recently, in *Talbert*, an assistant claims adjuster earning just $32,000 per year filed a collective action on behalf of all others similarly situated, challenging their classification as exempt.  405 F. Appx. at 852.  The plaintiff handled primarily home property damage claims and alleged that coverage was typically a foregone conclusion, he rarely interviewed the insured when processing a claim (and only reviewed statements and pictures taken by appraisers), had no independent authority to settle claims, was prohibited from speaking to any attorney retained by policyholders, and spent little time interacting with policyholders.  *Id.* at 854-55.  The Defendant, relying on a manager's affidavit, argued that the plaintiff was exempt because he conducted interviews, reviewed factual information to prepare damage estimates, made recommendations concerning coverage and settlement, and modified reserves subject to review.  *Id*.

Based on these facts and allegations, the lower court granted summary judgment to the employer and found as a matter of law that the plaintiff was exempt.  On appeal, the Fifth Circuit affirmed.  In reaching this conclusion, the Court held that it was undisputed that the plaintiff met the first two prongs of the administrative exemption because he earned $32,000 per year and all of his work was in the office and directly related to the company's general business operations.

8

Focusing primarily on the third prong, the Fifth Circuit agreed with the district court that the plaintiff exercised the requisite discretion and independent judgment because it was part of his job to, and in some instances did on occasion, interview policyholders, make coverage recommendations, seek approval from supervisors to settle claims, and assist in litigation. *Id*. The Court held that these duties, by themselves, were sufficient to qualify the plaintiff, as a matter of law, for the FLSA's administrative exemption.

> b.      *The Seventh Circuit*

In *Roe-Midgett*, 512 F.3d at 875 – filed as a collective and class action on behalf of four classes of claims adjustors – the Seventh Circuit affirmed summary judgment by the district court and held that "material damage appraisers" (as well as all other classes of claims adjustors) who provided claims adjustment services for company clients exercised sufficient discretion and independent judgment to qualify for the administrative exemption as a matter of law.

Notably, although the appraisers at issue did <u>not</u> render coverage or liability determinations, and could not settle or negotiate claims if the insured did not agree, they were responsible for investigating claims (including on-site investigations of accident damage and inspecting vehicles), interviewing claimants, witnesses, and law enforcement personnel, making repair and replacement estimates (including determining if a vehicle was a "total loss"), and settling claims up to a $12,000 limit if approved by the insured.  512 F.3d at 867-69.

With respect to the second prong of the administrative exemption, the Seventh Circuit relied in part on the DOL's regulations and guidance, and easily concluded that processing insurance claims brought by policyholders and other claimants was "administrative" in nature and of "substantial importance" to the company's business operations.  The Court held that

claims adjusters are service providers, "and the service they provide is the administration of insurance claims.  This is the main business of [the company's] Claims Division."  *Id.* at 871-73.

The Seventh Circuit also held that these duties were sufficient, as a matter of law, to qualify for the discretion and independent judgment prong of the exemption, despite the fact that the appraisers did not make coverage or liability determinations or litigation recommendations, and relied upon strict guidelines and computer software to assist them.  *Id*. at 874-75.  The Court focused on the fact that the appraisers had to make judgment calls when inspecting and assessing vehicles for damage – which would then have a bearing on the ultimate coverage determination – and spent much of their time "investigating, estimating and settling auto damage claims."  These responsibilities took them beyond mere "appraisers" and made them more like exempt "adjusters." *Id.*  The Court also held that two classes of "Field Claims Representatives" and a class of "Property Specialists" – who did make final coverage and liability determinations – were clearly exempt as a matter of law, despite also relying on manuals and estimating software that limited the degree of discretion and judgment they exercised.  *Id.* at 876.

c.    *The Eighth Circuit*

In *McAllister v. Transamerica Occidental Life Ins. Co.,* 325 F.3d 997, 998 (8th Cir. 2003), the Eight Circuit affirmed the district court's grant of summary judgment and held that a death and disability claims examiner qualified for the FLSA's administrative exemption as a matter of law.  The plaintiff argued that she did not exercise the necessary discretion and independent judgment because she simply followed practices set forth in her claims manuals and had no discretion to disregard applicable state law.  *Id*. at 1001.

The Eighth Circuit disagreed and stated that "[j]ust because [plaintiff] was required to follow detailed manuals does not mean she did not exercise discretion and independent

10

judgment." *Id*.  Rather, the evidence demonstrated that she did exercise the threshold discretion

as a matter of law because she conducted claims investigations, settled claims, interpreted

applicable insurance statutes and contract law, and evaluated different courses of action with

respect to claims.  *Id*.  Indeed, the claims manuals themselves stated that they could not guide

most claims work and employees had to use "good common sense judgment." *Id.*  Finally, the

Court also found significant that the position's job description and the plaintiff's own resume,

which she confirmed were accurate, stated that she was responsible for handling "complex"

claims and acting independently.  *Id.* at 998.

d.    *The Ninth Circuit*

In *In re Farmers Insurance Exchange*, the Ninth Circuit issued a comprehensive and

seminal decision overturning one of the only district court decisions to ever find insurance claims

examiners to be non-exempt.[5]  481 F.3d 1119.  After certifying a nationwide FLSA collective

action and seven state law classes, and following a three-week bench trial, the district court

concluded that various subclasses of claims adjusters – including automobile damage adjusters –

were non-exempt as a matter of law, and awarded $52.5 million in damages.  *Id.* at 1126-27.

The Ninth Circuit overturned the decision and held that all claims adjusters were exempt

as a matter of law under the FLSA's administrative exemption, regardless of the size or type of

claims they handled (auto v. property v. personal injury).  This was true because all claims

adjusters: (a) determined whether a particular policy covered the loss; (b) recommended a

reserve; (c) interviewed the insured and assessed credibility; (d) advised the company of fraud,

---

[5] The only other district court decision we are aware of that found claims examiners to be non-exempt was also reversed on appeal (discussed *infra*).  *See Robinson v. Gov't Emps. Ins. Co.*, 323 F. Supp 2d 12, *reversed and remanded* by *Robinson-Smith v. Gov't Emples. Ins. Co.*, 590 F.3d 886, 389 U.S. App. D.C. 46 (D.C. Cir. 2010).

11

or the potential for subrogation; (e) negotiated settlements; (f) sought additional authority from supervisors where appropriate; and (g) communicated with legal counsel.  *Id*. at 1129.

The Ninth Circuit detailed the DOL's regulations and interpretations of those regulations – going back more than fifty years – and found that the duties performed by the claims adjusters closely tracked the duties outlined in the DOL's regulations and guidance, were administrative in nature, and clearly involved the exercise of discretion and independent judgment.  As the Court succinctly put it, "as far as we are concerned, that says it all." *Id* at 1129-32.[6]

e. *The D.C. Circuit*

In 2010, the D.C. Circuit joined the Fifth, Seventh, Eighth, and Ninth Circuits in ruling that insurance claims examiners like Plaintiff – in this case, "auto damage adjusters" – are administratively exempt employees as a matter of law.  *See Robinson-Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 888 (D.C. Cir. 2010).  The district court had granted summary judgment for the adjusters, who spent a majority of time appraising damaged vehicles and estimating repair costs, and only occasionally negotiated and settled claims with both repair shops and insureds, including "total loss" claims.  Moreover, they did not make liability or coverage determinations.[7]

On appeal, the D.C. Circuit reversed, and held that the auto damage adjusters were exempt as a matter of law.[8]  The adjusters met the discretion and independent judgment requirement because they assessed, negotiated, and settled automobile damage claims – actions that financially bound the employer.  *Id*. at 893, 895.  The Court held that the notion that auto

---

[6] The Ninth Circuit further held that a claims examiner need not perform "each and every" administrative duty illustrated in the FLSA regulations to be properly classified as exempt.  Thus, the fact that they did not make recommendations regarding litigation was irrelevant to their exemption.  *Id.* at 1129.

[7] GEICO also employed non-exempt entry-level "auto damage appraisers" who only appraised damages, and higher-level exempt "liability adjustors" who determined coverage and liability, set reserves, and evaluated claims for comparative negligence.  Plaintiffs did not challenge this classification.

[8] The D.C. Circuit confirmed that processing insurance claims was administrative in nature and directly related to the employer's business operations, relying on the FLSA regulations.  *Id.* at 893, fn. 7.

12

damage adjusters exercised discretion only "some" of the time was sufficient to support an administrative exemption finding, even if they spent more of their time performing appraisal work (which plaintiffs argued was non-exempt work). *Id*. at 894. The Court also rejected the notion that the adjuster's "primary" duty could only consist of one specific task (i.e., appraisal work), and held that their primary duty was "adjusting auto damage claims" which in turn consists of a number of administrative tasks, any one of which might involve sufficient discretion and independent judgment. *Id.* at 895-96. Finally, despite the fact that supervisors reviewed and approved most claims, the court found that auto damage adjusters had the power to make independent choices "free from immediate direction or supervision" because they had the authority to settle claims up to their limits within the employer's guidelines. *Id*. at 895.

**C.     Plaintiff Satisfies The FLSA Three-Part Test For The Administrative Exemption**

Based on the DOL regulations, guidance, and well-established federal case law, as well as the undisputed facts of this case, Maguire properly classified Plaintiff as exempt from overtime under the FLSA's administrative exemption. The undisputed evidence overwhelmingly demonstrates that Plaintiff performed the same or similar duties involving discretion and independent judgment that have been repeatedly held to qualify for the administrative exemption. In fact, in many respects, Plaintiff's duties and responsibilities were considerably more substantial than other claims examiners found to be exempt by the federal courts as well as the duties outlined in the controlling DOL regulation.

1.     <u>Plaintiff Meets The Salary Basis Requirement</u>

It is undisputed that Maguire paid Plaintiff in excess of $455 per week at all times during his employment. From June 2008 (when hired) to about or around June 2009, Plaintiff's annual salary was approximately $41,500 (or approximately $800 per week). Facts ¶ 11. From about or

around June 2009 to about or around July 2010, Plaintiff's annual salary was approximately

$43,575 (or approximately $838 per week).  Facts ¶ 12.  From about or around July 2010 to

about or around November 2011, Plaintiff's annual salary was approximately $44,665 (or

approximately $859 per week).  Facts ¶ 13.  From about or around November 2011 to about or

around December 2011 (when he resigned), Plaintiff's annual salary was approximately $46,094

(or approximately $886 per week).  Facts ¶ 14.  Therefore, Maguire satisfies the first requirement

of the administrative exemption test.

      2.    <u>Plaintiff's Primary Job Duty Was The Performance Of Office/Non-Manual Work
Directly Related To Maguire's Management Or General Business Operations</u>

Plaintiff also meets the second prong of the administrative exemption because his

primary duties included "the performance of office or non-manual work directly related to

[Maguire's] management or general business operations."  29 C.F.R. §§ 541.200; 541.203.

Plaintiff's primary job duties included: (a) making determinations of coverage (affirming

or denying initial coverage); (b) investigating claims, including speaking to and conducting

interviews of the insured and other witnesses, and verifying other facts related to the claim; (c)

determining the course the investigation should take; (d) determining whether to hire outside

vendors, such as appraisers; (e) determining ultimate liability and fault based on the facts, as well

as the credibility of the parties and witnesses; (f) applying applicable state laws to determine

exposure; (g) deciding percentages of fault and applying comparative negligence principles,

where appropriate; (h) establishing and/or amending a reserve amount for each claim; and (i)

negotiating settlements.  *See* pg. 2, *infra*; *see*, *generally*, Facts ¶¶ 20-60.

First, it is undisputed that Plaintiff performed only non-manual work, carried out almost

exclusively in Maguire's Addison, Texas office.  Facts ¶ 3.  Second, it cannot be disputed that

Plaintiff's primary duties were directly related to Maguire's business operations – in particular,

14

to the investigating and processing of auto insurance claims.  The processing and resolution of insurance claims by claims examiners like Plaintiff is integral to Maguire's business; indeed, it is a significant part of the business of Maguire's Claims Department, and does not involve the "production" (i.e., writing) and/or sales of insurance policies which are carried out by different departments and different employees.  *See* Facts ¶ 1.

   3.   <u>Plaintiff's Primary Job Duties Included The Exercise Of Discretion And Independent Judgment With Respect To Matters Of Significance</u>

Plaintiff's job duties also satisfy the third requirement of the administrative exemption because his primary duties, including investigating and resolving auto insurance claims, verifying coverage, making liability determinations, interviewing witnesses and making credibility determinations, applying state laws, and negotiating and settling claims, all involved the exercise of discretion and independent judgment with respect to matters of significance.[9]

Indeed, Plaintiff performed most of the exact same job duties listed in the DOL regulations and found in the controlling case law, and in many instances, exercised significantly *more* discretion and independent judgment than the claims examiners in those cases.  This is apparent from the expansive evidence summarized below, including from Plaintiff's own testimony, the testimony of Mr. Benecke, Plaintiff's job description and Maguire's Claims Handling Guidelines, Plaintiff's performance evaluations, Plaintiff's resume, and Plaintiff's own claims notes detailing all of his day to day actions with respect to each claim that he handled.

   a.   *Plaintiff's Testimony Establishes That He Exercised Discretion and Independent Judgment*

During his deposition, Plaintiff acknowledged that he performed various duties demonstrating that he exercised discretion and independent judgment with respect to matters of

---

[9] As the D.C. Circuit made clear in *Robinson-Smith*, "[a]n administrative employee's 'primary duty' does not consist of one specific task but rather of his 'administrative duties' generally." 590 F.3d at 895-96.

significance.  For example, Plaintiff admitted that he was responsible for and/or performed the

following during his employment:

(a)  determining whether there was coverage for a claim, by applying the facts of a particular case to the applicable insurance policy (Facts ¶ 28);

(b)  investigating claims (Facts ¶¶  21 and 30-37);

(c)  talking with the parties and witnesses involved, and reviewing relevant documentary evidence, including police reports (Facts ¶¶  21 and 30-37);

(d)  determining and/or making recommendations concerning liability and fault for an accident based on credibility of the parties and witnesses and the particular facts (Facts ¶¶  21 and 30-37);

(e)  determining the value of a claim (Facts ¶¶  21 and 30-37);

(f)  assigning and hiring outside vendors, including appraisers, when necessary (Facts ¶¶ 21 and 41-42);

(g)  determining which states' laws applied to an accident and applying those laws to the specific scenario (Facts ¶ 44);

(h)  determining percentages of comparative negligence when applicable and apportioning damages (Facts ¶¶ 21 and 45-46);

(i)  independently establishing and/or changing a reserve amount for each claim he handled based on the particular facts and circumstances of the claim (Facts ¶¶ 54-55); and

(j)  interacting with attorneys (Facts ¶ 60).

Plaintiff also conceded that he had the authority to and did independently settle claims for

amounts up to $10,000 without any supervision and that he handled "very few" claims over

$10,000.  Facts ¶ 48-49.  Further, Plaintiff also stated that he was responsible for determining

whether the evidence supported the damages claimed and that he would only issue payment for

damages supported by the evidence.  Facts ¶ 34.

Plaintiff also acknowledged that he would provide recommendations to his supervisor in

certain situations.  For instance, if Plaintiff determined that multiple parties were at fault, he

would make a recommendation to his supervisor regarding what he thought happened, who was

at fault, the amount that each party was at fault, etc.  Facts ¶ 36.  Additionally, in cases where he

did not assign an appraiser and instead received an estimate from the insured, Plaintiff would

make a recommendation to his supervisor to pay a lesser amount if applicable.  Facts ¶ 41.

   b.   *The Testimony of William Benecke, Maguire's Executive Vice President of Claims, Establishes That Plaintiff Exercised Discretion and Independent Judgment*

Mr. Benecke also provided testimony and submitted a Declaration establishing that the

all claims examiners, including Plaintiff, used discretion and independent judgment in

performing the following job duties:

(a) verifying coverage by applying the facts of a particular situation to determine whether coverage is warranted (Facts ¶¶ 20 and 29);

(b) investigating the claim to verify the facts of an accident (Facts ¶¶ 20 and 38; Benecke Decl. ¶ 5);

(c) determining the course that the investigation should take based on the individual circumstances; Facts ¶ 20.

(d) interviewing claimants, witnesses, and law enforcement personnel (Facts ¶¶ 20 and 33);

(e) determining whether to hire outside vendors (e.g., appraisers) (Facts ¶¶ 20 and 39-40; Benecke Decl. ¶ 5);

(f) evaluating the claim to determine liability based on the facts (Facts ¶ 20; Benecke Decl. ¶ 5);

(g) applying applicable laws to determine exposure (Facts ¶¶ 20 and 44; Benecke Decl. ¶ 5);

(h) determining percentages of fault (Facts ¶ 20; Benecke Decl. ¶ 5);

(i) applying comparative negligence principles (Facts ¶¶ 20 and 45-46; Benecke Decl. ¶ 5);

(j) negotiating settlements with the insured or their attorneys and body shops (Facts ¶¶ 20, 51-53, and 60; Benecke Decl. ¶ 5);

(k) setting and adjusting reserves (Facts ¶¶ 20 and 54); and

(l) estimating loss, making total loss determinations, and apportioning blame for loss. (Facts ¶¶ 20 and 56).

   c.   *Plaintiff's Claims Notes Establish that He Exercised Discretion and Independent Judgment*[10]

Perhaps most illustrative of the fact that Plaintiff exercised discretion and independent

judgment are Plaintiff's claims notes.  The claims notes are Plaintiff's contemporaneous

accounts of the tasks and duties he performed on a day to day basis for each of the claims he was

---

[10] Defendant produced all of Plaintiff's claims notes in this case and, if printed, would total approximately 5,000 pages.  Facts ¶ 79 n. 3.  Annexed as Exhibits E-1 through E-9 to the Alloy Decl. are examples of claim notes demonstrating the different ways summarized below that Plaintiff exercised discretion and independent judgment.

handling.  Facts ¶ 25-26.  Plaintiff's claims notes show that, *inter alia*, he performed the

following tasks indicating the exercise of the requisite discretion and independent judgment:

> (a) determined whether a claimant qualified for coverage (Facts ¶ 29);
> (b) determined whether to assign an appraiser (Facts ¶ 43);
> (c) determined liability (Facts ¶ 38);
> (d) determined percentages of fault (Facts ¶ 38);
> (e) rendered comparative negligence assessments (Facts ¶ 46);
> (f) applied applicable state laws to claims (Facts ¶ 44);
> (g) set reserves (Facts ¶ 55);
> (h) made total loss determinations (Facts ¶ 57);
> (i) negotiated and settled claims (Facts ¶ 53); and
> (j.) interacted with attorneys (Facts ¶ 60).

> ### d.  *Maguire's Job Descriptions And Claim Handling Guidelines Establish That Plaintiff Exercised Discretion And Independent Judgment*

Maguire's job descriptions for the claims examiner position are yet another source

demonstrating that the position calls for discretion and independent judgment with respect to

matters of significance.  For example, *inter alia*, the relevant job descriptions provide that a

claims examiner's duties include: (a) analyzing and investigating claims to assess exposure; (b)

determining coverage (either affirming or denying coverage); (c) contacting insureds, insured's

agents, underwriting department employees, claims managerial personnel, lawyers and/or others

to resolve coverage questions; (d) corresponding with insureds, claimants, witnesses, insurance

agents, and others to obtain loss related information, correct errors, or omissions on claim forms;

(e) determining whether to engage third-party vendors; (f) applying applicable law; (g)

negotiating claims settlements; and (h) setting reserves.  Facts ¶¶ 16(a)(i), 16(b)(i-v), 16(b)(vii-

ix), and 17.

These core duties were confirmed by Mr. Benecke.  Facts ¶¶ 20, 29, 33, 38-40, 44-46, 51-

54, 56, and 60; Benecke Decl. ¶ 5.  Moreover, Plaintiff understood at the time he accepted the

job offer from Maguire, that he would be responsible for investigating claims, talking to the

insured, making a determination regarding liability, retaining an appraiser if he determined one was needed, and determining percentages of comparative negligence.  Facts ¶ 21.

Maguire's "Claims Handling Guidelines" – provided to each claims examiner, further underscores the discretion and judgment necessary to perform the job.  These guidelines specifically state that claims examiners must be familiar with and resolve issues concerning coverage, fact investigations, subrogation, lawsuits, and negotiating settlements.  Facts ¶ 19. They also specifically reiterate that "[c]laims adjusting by its very nature is an inexact art, not a science.  Each claim is different, so it may require different investigation and documentation." Facts ¶ 18.

> e.   *Plaintiff's Performance Evaluations Establish That He Exercised Discretion And Independent Judgment*

Plaintiff's performance evaluations also confirm that he exercised a significant amount of discretion and independent judgment.  Plaintiff testified that the evaluations accurately reflected his performance.  Facts ¶¶ 61 and 63; s*ee Altemus v. Fed. Realty Inv. Trust*, No. 11-2213, 2012 U.S. App. LEXIS 15917, *15 (4th Cir. 2012) (affirming the district court's holding that plaintiff was an exempt employee based, in part, on the finding that plaintiff's performance evaluations "reflect[ed] the high level of independence and discretion [plaintiff] enjoyed").

For example, among other items, Plaintiff's 2009 and 2010 performance evaluations stated that he performed his duties with a "minimal amount of supervision"; "[h]is analysis usually incorporates his intuition and experience"; he "has proven he can coordinate complex projects"; that he "confidently makes ["accurate and sound"] decisions in all areas of his job"; he "manages to smoothly synthesize highly complex and diverse information"; "[h]is analysis integrates his intuition and experience to complement the hard data"; he "takes independent actions and appropriate, calculated risks"; he "develops several alternative solutions to

problems;" and that he "demonstrate[es] that he can…complete a full and thorough

investigation…[and]…is able to make a proper determination where coverage is involved and

resolving the liability decisions on his claims."  Facts ¶ 62(b)(i-ii), 62(b)(iv), 62(b)(vi), 64(a)(ii),

64(a)(iv), 64(a)(vii-ix), and 64(b)(i).

      Moreover, his performance reviews explicitly state that he "contributes highly ingenuous

and valuable suggestions for improving work.  He has produced innovative approaches and ideas

that are far above the expectations for this position.  He often displays creativity and original

thinking beyond the expectations for this position.  When faced with unexpected challenges,

Michael is very resourceful."  Facts ¶ 62(b)(v).  For example, Plaintiff, on his own, "designed

and implemented" a helpful tool for handling total loss claims, that has subsequently been

incorporated and used by other claims examiners.  Facts ¶ 64(a)(v).

       *f.*    *Plaintiff's Current Resume Establishes That He Exercised Discretion And*
                  *Independent Judgment*

      Plaintiff acknowledged that his resume, which he submitted to multiple potential

employers, accurately reflects his work experience at Maguire.  Facts ¶ 66.  In his resume, *inter*

*alia*, Plaintiff provides the following personal assessment of his work duties while at Maguire:

(a) "primary functions include…<u>the investigation, evaluation and negotiation of complex claims</u>

<u>employing discretion and independent judgment</u>"; (b) "[h]andle complex claims matters

involving various commercial lines of automobile insurance" within various states; (c)

"[c]orrespond with insured's, claimants, witnesses, insurance agents and others to obtain loss

related information…and investigate questionable information or entries to determine the

necessity for, and the engagement of, third party vendors such as appraisers, engineer experts,

lawyers and doctors to assist with obtaining loss details"; and (d) "[c]reated a standardized total

loss evaluation form that has saved the company thousands of dollars in total loss negotiations."
Facts ¶ 65(a-d) (emphasis added).

Plaintiff's own description of his job on his resume, drafted prior to this litigation, confirms that he exercised a high degree of discretion and independent judgment, and performed precisely the types of duties outlined in Maguire's job descriptions, and testified to by William Benecke.  This resume provides further, independent support, that Plaintiff was properly classified as exempt.  *See*, *e.g.*, *Zalewski v. PNC Fin. Servs. Group, Inc*., No. 06-1231, 2008 U.S. Dist. LEXIS 70026, at *4 (W.D. Pa. Feb. 4, 2008) (placing weight on the job responsibilities cited on plaintiff's resume to hold that plaintiff was an administratively exempt employee); *Hines v. Longwood Events, Inc*., No. 1:08-CV-11653, 2010 U.S. Dist. LEXIS 62259, *24 (D. Mass. June 23, 2010) (relying on job duties representations made in plaintiffs' current resumes in holding that plaintiffs qualified as exempt employees under the FLSA).

*       *       *

Taken in totality, all of the testimony and evidence in this case establish that Plaintiff exercised the requisite discretion and independent judgment with respect to matters of significance by, *inter alia*: (a) interviewing insureds and witnesses; (b) reviewing factual information to prepare damages estimates; (c) evaluating and making recommendations regarding coverage of claims; (d) determining liability and total value of a claim; and (e) negotiating settlements.  These job duties closely track the duties outlined in the DOL regulations and performed by similar employees uniformly found to be exempt by the Fifth, Seventh, Eighth, Ninth and D.C. Circuits.

Moreover, in many instances, Plaintiff's job duties were more expansive and involved a greater degree of discretion and independent judgment than those found in the caselaw and

regulations.  Unlike other claims examiners held to be exempt, Plaintiff did not follow a

"liability matrix" or use complicated software programs to make his decisions.  Plaintiff had

independent settlement authority (up to $10,000), made coverage and liability determinations,

negotiated directly with claimants, hired outside vendors, determined percentages of fault and

applied comparative negligence principles, made total loss determinations, set and adjusted

reserves, and interacted directly with attorneys.  In addition, Plaintiff was able to create, on his

own initiative, highly useful tools and worksheets that were later implemented and used by other

claims examiners to assist them in their jobs.

As the Ninth Circuit concluded in *In re Farmers Insurance*, when confronted with claims

examiners who performed most of the same duties outlined in the DOL regulations, "as far as we

are concerned, that says it all."  481 F.3d 1129.  The same is true here.  All of the evidence

demonstrates that Plaintiff's job duties as a claims examiner fall squarely within the

administrative exemption and are entirely consistent with the DOL regulations and federal case

law.  Accordingly, this Court should dismiss Plaintiff's Complaint with prejudice.  *See*, *e.g.*,

*Zalewski*, 2008 U.S. Dist. LEXIS 70026 at *4 (granting summary judgment and dismissing

FLSA overtime claim because the employee's "performance evaluations . . . , her

contemporaneous reporting of her job responsibilities, [her] resume, and her deposition

testimony" demonstrated that she was an administratively exempt employee).

## II.    PLAINTIFF'S OVERTIME CLAIM ALSO FAILS BECAUSE HE CANNOT DEMONSTRATE THAT HE WORKED IN EXCESS OF 40 HOURS PER WEEK

The fact that Plaintiff has failed to demonstrate that he worked in excess of 40 hours per

week serves as an independent basis to dismiss his Complaint.[11]  Even assuming *arguendo* that

---

11 Plaintiff's scheduled work hours were from 8:30 a.m. to 5:00 p.m. Monday-Friday, with a one-hour unpaid lunch break each day.  Facts ¶ 67.  As a result, Plaintiff was scheduled to work 37.5 hours per week.  Facts ¶ 67.

Plaintiff was misclassified as exempt from overtime, which he was not, under the FLSA, non-exempt employees are only entitled to overtime pay for a "workweek longer than forty hours." 29 U.S.C. § 207(a)(1).  Thus, to establish a viable claim for overtime under the FLSA and survive a motion for summary judgment, a plaintiff must set forth a sufficient basis to establish that he or she worked more than 40 hours in a week.  See, e.g., *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, Nos. 10-1095 and 09-379, 2011 U.S. Dist. LEXIS 11275, *14-15 (W.D. Pa. Feb. 4, 2011) (granting motion for partial summary judgment based on "no genuine issue of material fact that said Plaintiffs did not work sufficient hours to establish a claim for overtime compensation"); *Barry v. Town of Elma*, No. 02-cv-344, 2005 U.S. Dist. LEXIS 5548, at *8-9 (W.D.N.Y. March 28,2005) (granting summary judgment where plaintiff's regular schedule was 35 hours per week and plaintiff presented no evidence showing how much overtime he purportedly worked in a given week).

        Here, Plaintiff cannot meet his burden.  First, Plaintiff's Complaint, filed in February 2012, contains only a single, conclusory allegation that he "worked hours in excess of forty per week."  Complaint  ¶ 8.  Second, in his deposition on November 27, 2012, Plaintiff conceded that any estimates of overtime he allegedly worked were "[j]ust guesses" and based on admittedly incorrect assumptions about his work hours.  Facts ¶ 70.  Plaintiff also readily admitted that he had absolutely no evidence beyond his self-serving testimony to support his allegations.  Facts ¶ 69.  This is insufficient to establish a claim for unpaid overtime under the FLSA.  *See, e.g., Kolesnikow v. McNamara*, 622 F. Supp. 2d 98, 119 (S.D.N.Y. 2009) (holding that, "in the absence of evidence showing the amount of extra time (beyond half an hour) that she worked each week, [plaintiff's] testimony does not provide a sufficient basis to infer that she worked more than 40 hours in any given week").

Third, and most significantly, all of the extensive existing records – including Plaintiff's entire e-mail history, his computer log-in and activity reports, and his daily claims notes – establish that Plaintiff rarely, if ever, worked outside of his regular work hours, and certainly not for more than a *de minimis* number of minutes at a time.  This existing documentary evidence is consistent and contemporaneous with Plaintiff's actual work, and is overwhelming.

Plaintiff testified that the first thing he would do every morning when arriving for work was to log-on to his computer programs (primarily, APPS and Image Right) and that he would log-off his computer programs when he left work.  Facts ¶¶ 72-74.  In addition, throughout each day, Plaintiff was required to, and did, enter "claims notes" detailing all of his interactions and activities with respect to each of the claims he was handling, on a contemporaneous basis.  Facts ¶ 25.  These claims notes were entered in the APPS system.  Facts ¶ 25.

Maguire maintained and produced time records – to the minute and second – of every time that Plaintiff (a) logged in to and used the APPS system; (b) logged into and used the Image Right system; and (c) entered a claims note.  Facts ¶ 76.  In addition, Maguire maintained each and every e-mail ever sent or received by Plaintiff, and produced every e-mail sent by Plaintiff before or after his regular work hours, or on weekends.  Facts ¶¶ 81-82.  These records all establish, convincingly, that Plaintiff rarely, if ever, worked more than the bare minimum, and dispel any "scintilla" of evidence that Plaintiff's conflicting testimony otherwise provides.

From February 3, 2009 until his employment ended in December 2011, Plaintiff's records show that he entered claims notes prior to 8:15 a.m. on only 5 total days and after 5:00 p.m. on only 11 total days.  Facts ¶ 79.  Additionally, Plaintiff's APPS records show that he used the APPS system prior to 8:15 a.m. on only 20 days and logged off the system after 5:00 p.m. only 2 days during the relevant time period.  Facts ¶ 77.  Moreover, Plaintiff's Image Right records

24

show that he logged activity in the Image Right system prior to 8:15 a.m. on only 3 days, and

logged activity after 5:00 p.m. on only 10 days during this same time period.  Facts ¶ 78.  While

Plaintiff occasionally used the APPS or Image Right systems, or entered claims notes, between

8:15 and 8:30am, these entries were the exception, rather than the rule, and typically lasted no

more than a few seconds or minutes.  Facts ¶ 80.  And, even if Plaintiff worked an extra 10 or 15

minutes each day, he still would not have worked more than 40 hours in any week.

Plaintiff's e-mail history reinforces his lack of overtime.  With the exception of

automated out-of-office replies, Plaintiff sent only 37 e-mails outside of scheduled working

hours between February 3, 2009 and when his employment ended in December 2011.  Facts ¶

83.

Together, these records establish that (a) Plaintiff sent approximately one e-mail per

month outside of scheduled working hours; (b) Plaintiff used the APPS or Image Right systems

or entered claims notes more than 15 minutes before his scheduled work hours less than once per

month, and virtually never after his scheduled end time; and (c) Plaintiff occasionally began

working an extra 5 or 10 minutes before his 8:30 a.m. scheduled start time.

In light of this clear and convincing documentary evidence, and without any

countervailing evidence of his own to support his overtime allegations, no reasonable jury could

conclude that Plaintiff worked more than 40 hours per week.  As a result, for this additional

reason, this Court should dismiss Plaintiff's Complaint.

## **CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that the Court grant its

Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: January 7, 2013                    Respectfully submitted,

MAGUIRE INSURANCE AGENCY, INC.

/s/ Joshua F. Alloy

Elise M. Bloom, admitted *pro hac vice*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
ebloom@proskauer.com

Josh F. Alloy, admitted *pro hac vice*
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004
Tel: (202) 416-6800
Fax: (202) 416-6899
jalloy@proskauer.com

Amanda D. Haverstick
Attorney ID 85069
PROSKAUER ROSE LLP
One Newark Center
Newark, NJ 07102
Tel: (973) 274-3200
Fax: (973) 274-3299
ahaverstick@proskauer.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I have caused a true and correct copy of the foregoing Defendant Maguire Insurance Agency, Inc.'s Motion for Summary Judgment, Brief in Support of its Motion for Summary Judgment, Statement of Undisputed Facts, and Proposed Order to be served on all counsel of record this 7th day of January, 2013, by operation of the Court's CM/ECF electronic filing system.

                     By:     /s/ Joshua F. Alloy