PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

The following are the material undisputed facts, which demonstrate that Plaintiff is entitled to summary judgment:

**A.    Plaintiff regularly worked at least forty (40) hours per week.**

1. Plaintiff was employed as a Fast Track Auto Claims examiner from approximately June 9, 2008 until approximately December 2011. (Estrada Dep., 18:2-5, 28:24-29:4).

2. Plaintiff and other Fast Track Auto Claims Examiners were responsible for processing claims using the Fast Track Auto process. (Estrada Dep., 29:5-12).

3. During 2009, Plaintiff worked approximately three to four hours of over time per week. (Estrada Dep., 102:10-17).

4. During 2010, Plaintiff worked approximately five to six hours of overtime per week. (Estrada Dep., 102:21-23).

5. Furthermore, Plaintiff worked approximately seven to ten hours of overtime per week in 2011. (Estrada Dep., 103:3-7).

**B.    Plaintiff was never paid overtime for any of the hours he worked beyond the forty (40) hour workweek.**

6. All Fast Track Auto Claims Examiners were salaried employees. (Benecke Dep., 101:7-8).

7. Regardless of the number of hours Plaintiff worked in a week, he was never compensated for any overtime hours he worked. (Benecke Dep., 101:2-6).

**C.    Plaintiff performed duties that were a part of the main line of production of Defendant's business operations.**

8. Defendant is an insurance marketing company licensed in all fifty states. (Website).

9. Defendant's corporate representative identified the primary products and/or services that Defendant brings to the marketplace. (Benecke Dep., 87:11-20).

10. One such service that the corporate representative identified was "putting

the customer back in the position where they were before [a] loss." (Benecke Dep., 89:13-17).

11. Defendant's corporate representative identified claims examiners as the employees who fulfill this service. (Benecke Dep., 89:18-21).

12. Plaintiff is a Fast Track Auto Claims Examiner performing the exact duties, which Defendant has identified as its primary product and/or service. (*See* Estrada Dep., 29:8-12).

**D.  Plaintiff only handled very basic and simple claims.**

13. Plaintiff was employed as a claim examiner working exclusively on "Fast Track Auto Claims." (Estrada Dep., 29:8-12).

14. Fast Track claims were "Simple claims. Easy claims that, you know, insured backed into a parked vehicle. Nothing that – that involved a lot of investigation. Who ran a red light. Anything like that." (Estrada Dep., 36:3-8).

15. Fast Track Auto claims were especially noncomplex because they solely pertained to property damage and did not include bodily injury claims. (Benecke Dep., 146:3-11).

16. In fact, if a claim assigned to Plaintiff contained a bodily injury claim, that claim would be reassigned to a different claims examiner group. (Estrada Dep., 54:5-11; 55:7-15).

17. Fast Track Auto Claims only included particularly low value claims, totaling at most only a few thousand dollars. (Estrada Dep., 59:6-1, 60:3-5).

**E.  Plaintiff performed basic and formulaic "coverage review" of claims.**

18. When Plaintiff received a new claim, he would perform a "coverage review." (Decl. ¶4(c)).

19. The purpose of the review was to check if the damaged vehicle was covered by the policy. (Decl. ¶4(c)).

20. Plaintiff would open the program "Apps" and search the policy for the VIN number of the damaged vehicle. (Decl. ¶4(c)).

21. If the VIN was in the policy, there is coverage. (Decl. ¶4(c)).

22. If the VIN was not in the policy, Plaintiff would contact the insured, the insured's agent or the driver to inquire who owned the vehicle. (Decl. ¶4(c)).

23. If the coverage issue became any further complicated, Plaintiff would seek direction from his supervisor. (Decl. ¶4(c)).

**F. Plaintiff performed routine work and followed specific rules regarding liability.**

24. Plaintiff did not make liability determinations. (*See* Estrada Dep., 61:4-65:5).

25. Plaintiff followed an established procedure with regard to liability. (*See* Estrada Dep., 61:4-65:5).

26. In most circumstances, Plaintiff would contact the insured and the insured would admit fault. (Estrada Dep., 61:4-11).

27. Occasionally, the insured denied liability, in which case Plaintiff would assume the liability determination made in the police report. (Estrada Dep., 61:12-25; 63:20-64:5).

28. Because Plaintiff exclusively handled commercial automobile insurance claims, there was almost always a police report filed. (Estrada Dep., 61:19-25).

29. In the rare instance the police report did not resolve liability, then Plaintiff would contact any independent witnesses. (Estrada Dep., 64:13-65:11).

30. Plaintiff would accept whichever version of the facts, either the insured's or the claimant's, that the witness corroborated. (Estrada Dep., 64:13-65:4).

31. In the event that there was not a police report or any witnesses, Plaintiff would side with the insured. (Estrada Dep., 62:6-21).

32. If for any reason, the liability determination could not be made based on the above process, Plaintiff would bring the claim to his supervisor to direct him how to proceed. (Estrada Dep., 58:14-19).

33. Further, if the claim were more complicated because both sides were at fault, Plaintiff would bring the matter to his supervisor and receive direction as to how to proceed. (Estrada Dep., 67:19-68:6).

**G.   Plaintiff had no authority or discretion in valuing the damages in his claims.**

34.   Plaintiff never valued the damages in his claims.  (Estrada Dep., 60:6-16).

35.   Plaintiff always used an appraiser to value the property damage.  *Id*.

36.   Plaintiff always followed the appraiser's estimate and never replaced the estimate with his own valuation of damages.  (Estrada Dep., 71:11-19).

37.   Plaintiff did not negotiate the price of repairs or the valuation of damages.  (Estrada Dep., 110:17-25; 111:9-18; 115:13-23.).

38.   In fact, the appraiser was the only person who had actually personally examined the vehicles.  (*see* Benecke Dep., 103:24-104:7).

39.   Plaintiff and other Fast Track Auto Claims Examiners never physically visited the accident scene or examined the vehicles in the claims.  (Benecke Dep., 104:8-11).

40.   In some cases, betterment was applicable to an insured's claim.  (Estrada Dep., 69:25-70:13).

41.   However, it was always the appraiser and not Plaintiff, who made determinations as to whether or not betterment was appropriate. (Estrada Dep., 69:25-70:21).

42.   Similarly, the appraiser and not Plaintiff, made determinations as to whether a car was totaled. (Estrada Dep., 77:13-78:14; 78:15-79:16).

43.   Plaintiff merely followed the appraiser's determination as to whether the car was totaled.  (Estrada Dep., 77:13-78:14).

44.   Defendant could not point to single instance where Plaintiff or any other Fast Track Auto Claims Examiner examiners did not follow an appraiser's estimation of whether a car was totaled. (Benecke Dep., 106:15-24).

**H.   Plaintiff regularly needed authorization from his supervisor perform his job duties.**

45.   Plaintiff was limited to a $10,000 independent settlement authority. (Estrada Dep., 42:10-17).

46.   If any of his claims required a settlement amount more than $10,000,

        Plaintiff would have to bring the claim to his supervisor to approve the settlement.  (See Estrada Dep., 90:25-91:6).

47.    If there was ever an occasion in which there was a dispute between the insured and the appraiser's estimate, Plaintiff did not reconcile the dispute.  (Estrada Dep., 73:9-74:2).

48.    Instead, Plaintiff would bring the dispute to his supervisor and receive instruction from her.  (Estrada Dep., 115:24-116:3).