DECLARATION OF MICHAEL ESTRADA

1. My name is MICHAEL ESTRADA. I am over 18 years of age, am of sound mind, have never been convicted of a felony or crime involving moral turpitude, and I am otherwise fully competent to make this declaration. The facts contained in this declaration are true and correct, and are within my personal knowledge.

2. From approximately June 9, 2008 to December 23, 2011, I worked as a "claims examiner" for Maguire Insurance Agency, Inc. ("Maguire"). My job duties solely involved "fast track" claims. Based on my experiences and/or observations, the job duties of all fast track claims examiners were nearly identical.

3. During my employment with Maguire as a fast track claims examiner, I typically worked an average of 50 hours per week and was not paid for my overtime hours worked.

4. While working for Maguire as a fast track claims examiner, I processed low level automobile claims. My job duties were as follows:

a. I processed the intake of automobile claims involving minor collisions, parking lot accidents, vandalism, and comprehensive damage from bad weather. Fast track claims examiners similarly process these types of minor, quickly resolvable claims. I did not handle any personal injury claims, my claims were limited to property damage. Fast track claims examiners are similarly limited to noncomplex claims. I handled "first party claims" which

involve only the insured. These claims include acts of vandalism to the insured's vehicle, theft, and damage from bad weather. I also handled "third party claims" which involve minor collisions with another vehicle and driver or the property of another individual. Fast track claims examiners similarly handle these sort of straightforward claims.

b. I used a computer program called "Image Right." This program contains all of our claim files and mail, assigns new claim files, and uploads all scanned images for each claim file. I received new claims from the home office through Image Right. Fast track claims examiners similarly use computer software including Image Right that simplifies claims examining and reduces it to clerical data entry.

c. Upon receiving a new claim, I performed a "coverage review" to see if the damaged vehicle is covered under the insurance policy. I opened up another computer program called "Apps" and clicked the appropriate policy number and search for the vehicle's identification number ("VIN"). I looked through all the scanned images of the insurance policy. If the VIN is there then the vehicle is covered and I checked for deductibles. If the VIN cannot be found in Apps, then I contacted the insured, the insured's insurance agent's office, and/or the driver of the vehicle, to find out who owns the vehicle. If I still could not determine coverage then I approached my supervisor who directed me on how to proceed. Fast track claims examiners similarly conduct coverage review with the use of a computer program that directs them as to

what to do. Fast track claims examiners similarly conduct the coverage review by simply making phone calls and looking at documents. If coverage review becomes complex, fast tack claims examiners contact their supervisors.

d. Once I determined coverage, I assigned an independent appraiser. The independent appraiser will then go out to the vehicle of the insured and perform an evaluation of the damages. The independent appraiser will take pictures, measurements, and perform an estimate of the damage costs and repairs. Fast track claims examiners similarly contact and rely on independent appraisers to evaluate the damages and repairs. Fast track claims examiners do not evaluate damages and repairs and simply input whatever estimates the independent appraiser determines.

e. I processed third party claims as follows: I first contact the insured driver and the other driver or property owner ("third party") to get their statements. I insert all notes into "Apps." I also review a copy of the police report if any, contact independent witnesses if any, photographs if the driver(s) and/or property owner took pictures at the scene of the accident, request video if the accident took place at a parking lot, and use online map tools to look at the location of the accident. Most of the time, I am told who is liable from either the insured driver or the other driver right away. If there are conflicting statements and no police report or independent witnesses exist, then I contact my supervisor and get a second opinion to determine liability. We are

    instructed to side with the insured unless the other claimant is adamant about not being at fault. In that case, the supervisor will make the final determination of liability. Fast track claims examiners similarly process third party claims. Ultimately, if the insured driver is at fault then Defendant will cover the damages of the third party. If the insured driver is not at fault then a denial letter is sent to the third party and the claim is returned to the home office for subrogation.

f. If the insured driver is at fault I contacted the independent appraiser again. The independent appraiser must then perform an evaluation of the damages for the third party's vehicle or property. The independent appraiser will send me an estimate for the costs of damage and repair. The independent appraiser sends me the estimate of repairs, invoice for the appraiser's work, photographs of the vehicle or property, and the results of the entire appraisal through Image Right or e-mail. Fast track claims examiners similarly contact and rely on independent appraisers to evaluate the damages and repairs. I have authority to approve payment of anything within $10,000. If the total payment for the insured in a first party claim, or the insured and third party claimant(s) in a third party claim, are within $10,000 I can approve payment. If the total payment is more than $10,000, I must get approval and authority from my supervisor. The supervisor will review the claim and instruct me on how to close the claim. The supervisor must give me authority to settle claims worth over $10,000 within Apps to raise my

reserve authority for that specific claim. Fast track claims examiners similarly approve anything within $10,0000 and must get authorization from their supervisors to approve anything beyond $10,000. If there is a conflict then the supervisor must determine how to resolve it.

g. Once payment is issued, the file is automatically closed.

5. If a claim involves a personal injury, the personal injury part of the claim is transferred to a senior examiner. I contact my supervisor right away who transfers the personal injury part of the claim to the senior examiner once I have completed the property damage part of the claim. I never handled any part of the personal injury claim. Fast track claims examiners similarly do not handle personal injury or complicated claims.

6. I prepared all worksheets, forms, documentation, and reporting duties on the computer system that is monitored by my supervisors. Throughout the entire process I was required to input notes electronically. Most of the work I did is formulaic and routine because of the standardized processes that I must follow and use in the computer system. Fast track claims examiners similarly input data, follow routine procedures, and process claims with the assistance of computer programs.

7. The supervisors have access to all of my electronic files and notes and periodically review all claims and send myself and other claims examiners e-mails with further instructions and comments. I regularly sought out my supervisors for anything out of the ordinary. Fast track claims examiners regularly seek out their

supervisors for any complexities involved in a claim. Supervisors regularly provide further instruction, commentary, and direction to fast track claims examiners for anything that does not fall into routine procedure.

8. As a fast track claims examiner, I did not determine damages or engage in any negotiations because all estimates are provided by an independent appraiser. If a claimant disputes the estimate then I must consult with my supervisor and follow his/her instructions. Sometimes the supervisor will take the entire claim and negotiate and finish the claim. Other times the supervisor will instruct us on how to handle the claim. I do not engage in any decisions over the amounts for which a disputed claim is settled. At all times, I obey the instructions of my supervisor. Fast track claims examiners regularly follow the instructions of their supervisors where any disputes on the damages or estimate arise. Fast track claims examiners similarly have no authority to handle disputes independently and must receive direction and authority from their supervisors to resolve any disputes.

9. The supervisors also provide us with further instruction during their review of our claims handling process. At all times, I obeyed their instructions. Fast track claims examiners similarly are under the close review of their supervisors and must follow all of their supervisors' instructions.

10. I have no independent authority to commit the Defendants to claims worth over $10,000. Fast track claims examiners are unable to handle anything over $10,000 on their own and must receive instructions from their supervisors.

11.  I did not assist in any aspect of litigation. Fast track claims examiners similarly are not involved in any part of litigation.

12.  I did not know that I might be entitled to overtime wage pay until consulting with an attorney. Based on my experiences and/or observations, other claims examiners do not know that their right to overtime pay is being violated. Based on my experiences and observations, these claims examiners would join the suit if they were informed of their rights.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 4/13/2012          Signature: *Michael Estrada*