# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ESTRADA, individually and on behalf of others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>MAGUIRE INSURANCE AGENCY, INC.,<br><br>       Defendant. | CIVIL ACTION NO. 12-604<br><br>FILED ELECTRONICALLY |

## DEFENDANT'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

PROSKAUER ROSE LLP

Elise M. Bloom, admitted *pro hac vice*
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
ebloom@proskauer.com

Joshua F. Alloy, admitted *pro hac vice*
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004
Tel: (202) 416-6800
jalloy@proskauer.com

Amanda D. Haverstick
Attorney ID 85069
One Newark Center
Newark, NJ 07102
Tel: (973) 274-3200
ahaverstick@proskauer.com

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

ARGUMENT ............................................................................................................1

    A.    Defendant's 30(b)(6) Witness Provided Comprehensive and Detailed Testimony Consistent with the Court's Discovery Order ......................................1

        1.  The Court's August 17, 2012 Discovery Order ...................................2

        2.  Mr. Benecke's Testimony Was Detailed, Comprehensive and Consistent with the Court's Discovery Order ....................................3

    B.    The Remainder of Plaintiff's Arguments are Misleading and Irrelevant ...............8

        1.  There is no Formal "Fast Track Auto" Department or Official "Fast Track Auto" Claims Examiners Position ..........................................9

        2.  Mr. Benecke Provided Detailed Information about "Fast Track Auto Claims Examiners" ..............................................................9

        3.  Mr. Benecke was Not Evasive or Unresponsive – He was Appropriately Precise ...................................................................10

    C.    Plaintiff's Motion to Compel is Untimely and in Disregard of this Court's Discovery Order, Policies and Procedures, Local Rule 26.1(f), and Fed. R. Civ. P. 37(a) ..............................................................................................12

CONCLUSION ......................................................................................................16

i

# TABLE OF AUTHORITIES

Page(s)

*CASES*

*Cannon v. Cherry Hill Toyota*,
    190 F.R.D. 147 (D.N.J. 1999)...................................................................................15

*Crown Cork & Seal Co., Inc. v. Chemed Corp.*,
    101 F.R.D. 105 (E.D. Pa. 1984)................................................................................15

*DiSantis v. Koolvent Aluminum Prods., Inc.*,
    No. 97-5434, 1998 U.S. Dist. LEXIS 12480 (E.D. Pa. Aug. 12, 1998) ...................15

*Flynn v. Health Advocate, Inc.*,
    No. 03-3764, 2005 U.S. Dist. LEXIS 1704 (E.D. Pa. Feb. 8, 2005) ......................15

*Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*,
    339 F.3d 180 (3rd Cir. 2003) ...................................................................................15

*Packman v. Chicago Tribune Co.*,
    267 F.3d 628 (7th Cir. 2001) ...................................................................................15

*Schmidt v. Mars, Inc.*, No. 09-3008 (PGS),
    2011 U.S. Dist. LEXIS 63961 (D.N.J. June 13, 2011) ...........................................15

## OTHER AUTHORITIES

Fed. R. Civ. P. 37(a) ...........................................................................................12, 15

Local Rule 26.1(f)................................................................................................12, 15

01/24/2013 5:09 pm

Plaintiff's motion to compel an additional 30(b)(6) deposition – made well after the close of discovery and concurrent with dispositive motions – is untimely and in direct contradiction of this Court's Individual Rules and the Local and federal Civil Rules of Procedure.  It is also, at its essence, a strategic attempt to circumvent the conditional certification process and this Court's August 17, 2012 Discovery Order.

Plaintiff purports to challenge the adequacy and completeness of Defendant's 30(b)(6) witness' testimony, including the fact that he would not testify about matters outside the scope of this Court's Discovery Order and could not recount with specific examples the minutiae – down to the claims number, date, and details – of how each and every employee reporting up the chain of command to him spent every minute of their days.  In fact, a fair reading of the testimony demonstrates that the witness provided detailed and comprehensive testimony on a wide range of topics, including, significantly, all relevant topics related to conditional certification and to his personal knowledge of Plaintiff's claims, as set forth in the Court's Discovery Order.  Accordingly, Plaintiff's motion to compel should be denied in its entirety.

## ARGUMENT

### A.    Defendant's 30(b)(6) Witness Provided Comprehensive and Detailed Testimony Consistent with the Court's Discovery Order

Plaintiff bases his motion to compel on the allegedly insufficient testimony of William Benecke, Defendant's Executive Vice President of Claims, who was designated as Defendant's corporate witness in response to Plaintiff's 30(b)(6) deposition notice. Even if Plaintiff had timely filed his motion to compel prior to the end of discovery and following good faith efforts to reach a resolution, neither of which he did (as discussed in greater detail below), the motion should still be denied because Defendant's 30(b)(6)

1

witness properly testified about the topics set forth in this Court's August 17, 2012

Discovery Order, as well as all other matters within his personal knowledge, and

Plaintiff's attempt to circumvent the Discovery Order and the conditional certification

process is improper.

      1.    *The Court's August 17, 2012 Discovery Order.*

This Court's Discovery Order, and the parties' briefing that led up to that order,

are quite clear.  Prior to conditional certification, Plaintiff attempted to obtain (i) the

names and addresses of other claims examiners handling fast track auto claims, and (ii)

individualized discovery beyond the named plaintiff.[1]  Both of these requests were

rejected by this Court in its August 17, 2012 Discovery Order.  *See* Doc. No. 28.  Instead,

this Court ordered focused discovery on the appropriateness of conditional certification

and set out five categories of information and documents that Plaintiff could seek in

connection with conditional certification discovery:

    (i)      Defendant's employment policies and practices related to "Fast Track Claims Examiners" (Examiners), including any handbooks; rules; policies; guidelines; standards; practices; training materials; the identity of individual who provided training; and general work schedule information, if any.

    (ii)     The job duties of Examiners, including their settlement authorization; the categories of claims handled; the computer software used; and standards set forth by Defendant regarding how Examiners perform their duties.

    (iii)    The process by which Defendant makes determinations related to the FLSA classification of Examiners, including written discovery and/or a deposition of the individual responsible for making such determinations for Defendant.

    (iv)    Any inquiries made by Defendant as to the exempt v. non-exempt status of Examiners under the FLSA, including research performed or inquiries made to the Department of Labor.

---

[1] Plaintiff and Defendant submitted letter briefs setting forth their positions on discovery on June 19, 2012 and July 9, 2012, respectively.

(v)       The Defendant's corporate hierarchy.

*Id*.

In his 30(b)(6) deposition notice, Plaintiff incorporated the Discovery Order's specific categories of information into his requests, and added additional requests arguably related to Plaintiff's individual claim.  Prior to Mr. Benecke's deposition, counsel for both parties had several substantive discussions concerning the scope and limits of the 30(b)(6) deposition, and Defendant's counsel raised its long-standing objection to any discovery into the names or identity of other claims examiners, or any individualized discovery into other claims examiners.  Defendant's counsel specifically offered to go back to the Court if Plaintiff wished to re-raise this issue.  And as discussed below, Defendant's counsel specifically offered, during the deposition, to have a telephone conference with the Court to address this issue again.  In both instances, Plaintiff's counsel chose not to raise the issue with the Court.

2.       *Mr. Benecke's Testimony Was Detailed, Comprehensive and Consistent with the Court's Discovery Order.*

Plaintiff's belated attempt, over one month after the deposition, and concurrent with motions for conditional certification and summary judgment, to challenge Mr. Benecke's testimony, should not be countenanced by this Court.  Despite Plaintiff's selective and misleading use of the deposition testimony, Mr. Benecke in fact testified at great length and in great detail about the job duties and responsibilities of claims examiners handling fast track auto claims, including Plaintiff, as well as Defendant's employment policies and practices related to claims examiners.  Moreover, Defendant's unwillingness to

3

conduct discovery beyond the Plaintiff's individual claim and issues related to

conditional certification, was entirely consistent with this Court's Discovery Order.

     Mr. Benecke gave extremely detailed and specific testimony on the various job

duties performed by claims examiners, including how claims are processed, how claims

are investigated, how coverage is determined, how damages are assessed or appraised,

how appraisers are hired, how reserves are set, how liability is determined, and how

negotiations and settlements are reached.  He compared and contrasted Mr. Estrada's

alleged job duties to the employment standards and expectations he sets for all claims

examiners, discussed differences in the ways that other claims examiners performed their

job duties, and testified to the differences between and among offices.  (*See*, *e.g.*,

Benecke Dep: 21:18 - 24:4; 44:14 - 49:10; 52:6 - 53:10; 126:4 – 129.17; 135:24 –

139:19; 139:22 – 141:21; 143:9 – 146:2; 150:21 – 153:12; 167:16 -167:23; 168:16 -

168:25; 171:18 - 171:20).[2]  This testimony was comprehensive and fully consistent with

the Court's Discovery Order.

     Mr. Benecke did not, however, testify about the minutiae of day-to-day activities of

claims examiners - or provide specific examples of particular instances in which

individual claims examiners performed or failed to perform specific tasks on specific

claims on specific days for specific accounts.  He similarly could not provide such details

for Mr. Estrada.  This is hardly surprising.  Neither Mr. Benecke, nor any other human,

could possibly be expected to be able to memorize and then testify as to what each and

every individual claims examiner did or did not do on each and every day, with explicit

reference to claim number, insured name, date of loss, and other details.  This, of course,

is information that can only really be gleaned from (i) the claims examiners themselves,

---

[2] Transcript pages cited herein from Mr. Benecke's deposition are attached hereto as Exhibit 1.

or (ii) documentary evidence, such as electronic claims notes and claims files reflecting contemporaneous summaries of particular tasks and actions.

The examples that Plaintiff has set forth in his motion to compel are misleading. Mr. Benecke specifically and repeatedly testified as to whether or not claims examiners, including Mr. Estrada handled certain types of claims, had certain responsibilities, or were responsible for performing certain types of duties or tasks, oftentimes going into great detail in his answers. And, when faced with hypothetical situations and/or requests to provide "evidence" that Mr. Estrada or another claims examiner did <u>not</u> do something that they were normally expected to do, Mr. Benecke gave exhaustive and detailed testimony. Thus, for example:

- While Mr. Benecke did not identify specific individuals who handled both "fast track" auto claims and claims outside of the fast track process, he testified explicitly and repeatedly that employees do not "only" handle fast track claims. He then testified in great detail about employees who handle fast track claims but who also handle "large" accounts and receive claims outside of the fast track process, and later about examiners who also handle "Grundy" claims (for classic vehicles). (Benecke Dep. 15:19 - 20:11; 115:3-123:24)

- Mr. Benecke explained in great detail why it would be expected, and common, for a claims examiner, including Mr. Estrada, who handles thousands of claims, to have handled a multiple vehicle accident - which are quite common in the industry. However, he could not identify a specific instance when Mr. Estrada handled such a multi-vehicle claim. (Benecke Dep. 57:18 - 59:2)

- While Mr. Benecke testified that he believed there were instances in which claims examiners conducted a face to face investigation with an insured or witness, he could not provide specific details of when it happened and/or how often it happened (Benecke Dep. 59:4 - 61:3)

- Mr. Benecke could not identify a specific example of a time when Mr. Estrada did not adopt the findings of a police report, but testified at length why it would be "very surprising" and "devastating" to discover that Mr. Estrada always followed police reports, despite the fact that doing so would have significantly deviated from Mr. Estrada's training, protocol, and

responsibilities.  He also explained how claims examiners analyze and use police reports, as well as the internal training and communications concerning police reports.  (Benecke Dep. 61:18 - 68:15)

- Similarly, although Mr. Benecke could not prove the negative and cite a specific example of a time when Mr. Estrada failed to follow protocol and simply made a liability determination based on which party showed up with the greater number of witnesses, he provided detailed testimony as to why this would be "absolutely crazy" and a convincing explanation of why he does not believe such an instance ever occurred (as head of the claims department, he would have received a complaint about Mr. Estrada doing so, which he does not recall ever receiving).  (Benecke Dep. 68:20 - 73:18)

- In response to another similar hypothetical situation posed by Plaintiff's counsel (assuming a situation where Mr. Estrada had no police report and each side had the same number of witnesses), Mr. Benecke was asked whether he had "any evidence" that in such situations Mr. Estrada "did not always side with Maguire's insured."  While Mr. Benecke, understandably, could not identify a particular instance, he testified at length why he believed such a hypothetical situation never occurred.  (Benecke Dep. 77:23 - 80:19)

- Plaintiff's final hypothetical situation asked Mr. Benecke to assume an imaginary world where claims examiners followed a three-step process for making liability determinations, and then asked whether he was aware of any sort of audit or internal investigation that would confirm or deny whether or not Mr. Estrada was following that process.  Despite the absurd nature of the question, Mr. Benecke nevertheless testified with specificity why he was not aware of any such instance, and further, why he believed it never happened.  (Benecke Dep. 82:9 - 86:4)

- When asked whether he was aware of Mr. Estrada ever having challenged or not followed an independent appraisers damage estimate, Mr. Benecke explained why he would have been expected to do so (it was part of his job responsibilities, which he then explained in detail) but that he did not have "proof that he did not normally do what he was supposed to do."  (Benecke Dep. 106:9 - 109:11)

- While Mr. Benecke could not identify a specific instance in which Mr. Estrada had hired a private investigator, he explained when such a circumstance would be warranted, and provided details about why and instances in which other claims examiners hired private investigators. (Benecke Dep. 113:22 - 117:2)

- When asked to identify a specific instance in which Mr. Estrada or another claims examiner hired an "independent adjuster" Mr. Benecke testified in

6

great detail when and why an independent adjuster would be hired, the frequency with which they are engaged, as well as specific examples of situations where they are hired.  (Benecke Dep. 124:16 - 127:13)

- Mr. Benecke was asked to identify a specific example of when Mr. Estrada engaged in "negotiation" - something that was part and parcel of his day to day job duties and responsibilities and expected of all claims examiners. While Mr. Benecke did not have a specific recollection of the name, claim number and details of a particular instance of negotiation, this was because negotiation was something that Mr. Estrada "does in almost every one of his claims."  Mr. Benecke went on to testify about various ways in which Mr. Estrada would have negotiated as part of the claims settlement process, as well as specific examples of ways in which he would have negotiated with body shops.  (Benecke Dep. 132:3 - 133:13; 136:3 - 139:19)

- Mr. Benecke testified about "total loss" claims and the process by which a vehicle is determined to be a total loss, as well as the fact that Mr. Estrada, along with all other claims examiners, would be familiar with and were in fact involved in the total loss process, which was routine. He could not provide a specific claim number and insured name of a circumstance where Mr. Estrada made such a determination.  (Benecke Dep. 139:22 - 142:8)

- Mr. Benecke testified at length about comparative negligence determinations and why Mr. Estrada would have had to routinely make such determinations (including the fact that Mr. Estrada was responsible for a number of states that had comparative negligence laws), but could not provide the name, rank and serial number of a particular instance.  (Benecke Dep. 150:21 - 153:12)

- When asked at the end of the deposition to testify to the differences between claims examiners, or the ways in which Mr. Estrada had different job duties than other claims examiners, Mr. Benecke attempted to respond but was quickly cut off by Plaintiff's counsel, who was only interested in the names or initials of specific employees.   (Benecke Dep. 167:16 - 172:7)  In fact, Mr. Benecke had previously testified about the differences between Mr. Estrada and other employees (Benecke Dep. 21:18 - 24:4, and throughout the deposition), and had submitted a detailed Declaration outlining additional differences.  Plaintiff's counsel, notably, did not question Mr. Benecke about his declaration.

The above examples and complete testimony all make clear that Mr. Benecke was

not being evasive or unprepared to testify about the job duties and responsibilities of

claims examiners, including Plaintiff, but was doing his best to answer ambiguous or

hypothetical questions and to provide detailed explanations to back up his answers.  He provided Plaintiff with more than enough testimony and information concerning issues surrounding conditional certification (particularly in combination with Mr. Estrada's own testimony and the documentary evidence), and Plaintiff's counsel certainly could have posed follow-up questions or followed different lines of questioning had he so desired.

In fact, Plaintiff's claim notes - which have been produced in full - contain detailed information about specific instances in which Plaintiff did or did not perform particular tasks, duties or responsibilities, and provide a complete picture of how he went about performing his job.  (*See, e.g.,* Doc No. 38-2 at ¶¶ 25-26, 29, 38, 43, 44, 46, 53, 55, 57, and 60; *see also* Doc. No. 38-5 at ¶ 5).

For the calendar year 2011, Mr. Estrada entered a total of 8,076 claims notes covering hundreds of different claims, and totaling approximately 2,400 pages long if printed out.  No one, not even Mr. Estrada, could provide the specific examples that Plaintiff's counsel apparently believes Mr. Benecke should have memorized and testified about.  Expanding such an impossible task beyond Mr. Estrada to all other claims examiners, is simply absurd.  Moreover, the particular details of individual claims examiners other than Mr. Estrada are neither relevant nor appropriate for discovery when there has not yet been a decision on conditional certification and no one has opted into the collective action.

**B.      The Remainder of Plaintiff's Arguments are Misleading and Irrelevant**

Plaintiff's remaining arguments that Mr. Benecke was evasive and incomplete in his testimony are also a misrepresentation of the testimony.

8

    1.     *There is no Formal "Fast Track Auto" Department or Official "Fast Track Auto" Claims Examiners Position.*

Plaintiff focuses on the fact that Mr. Benecke would not agree that there was a formal "Fast Track Auto" department, or an official "fast track auto claims examiner" position. *See* Doc. No. 37 at p. 9-10. Mr. Benecke's testimony, as well as his prior declaration, have consistently made clear that there is no formal Fast Track Auto Department. "Fast Track" refers to a <u>process</u> by which certain types of automobile claims are "fast tracked" to designated claims examiners to handle. These claims examiners reside in different locations and offices, report to different supervisors, and do not "exclusively" handle fast track auto claims (though they may primarily handle fast track auto claims). (Benecke Dep. 7:21 - 15:23)

Plaintiff points to what he apparently believes is a "smoking gun" - a daily metrics report, designed by and prepared for Mr. Benecke to review, that groups claims examiners into several broad categories of types of claims. *See* Doc. No. 37 at p. 10-12. For purposes of the metrics report, one of those groupings consists of claims examiners who receive "fast track auto" claims. However, as Mr. Benecke reiterated at the deposition, this did not represent a formal title, department, or group within the Company. Rather, it is a tool that allows him to track certain information and metrics across broad categories of claims. (*Id.*)

    2.     *Mr. Benecke Provided Detailed Information about "Fast Track Auto Claims Examiners."*

Plaintiff asserts, without support, that Mr. Benecke would not discuss the number of so-called "Fast Track Claims Examiners" employed by Defendant. *See* Doc. No. 37 at p. 12. First, the testimony quoted by Plaintiff in his motion to compel concerns questions

9

about the percentage of claims handled by Maguire that go through the fast track process. *Id.* While Mr. Benecke was not able to provide a precise percentage (and Plaintiff's counsel did not ask him for an estimate of the percentage, or for an estimate of the total number), he made clear that he could run a report. Plaintiff's counsel never followed up with a request for such a report. (Benecke Dep. 9:21 – 10:19)

Second, and more importantly, Mr. Benecke in fact testified in great detail about the number of claims examiners employed by Maguire who handled fast track auto claims, including a breakdown by office. (Benecke Dep. 27:7 - 41:13)

3. *Mr. Benecke was not Evasive or Unresponsive - He was Appropriately Precise.*

Finally, Plaintiff takes issue with the fact that Mr. Benecke - appropriately - asked for clarification and/or was particularly precise when answering vague or ambiguous questions. *See* Doc. No. 37 at p. 14-15. Thus, when Plaintiff's counsel asked whether he was "familiar" with Mr. Estrada, he asked for clarification of precisely what was meant by "familiar." Indeed, one could interpret the question to mean any number of things, including: (i) had Mr. Benecke heard of Mr. Estrada or know his name; (ii) had Mr. Benecke ever met with or spoken to Mr. Estrada; or (iii) did Mr. Benecke have more than a passing knowledge of Mr. Estrada, to the point of familiarity or friendliness.

While Plaintiff has selectively quoted a portion of the questioning, the continuation of the transcript makes clear that Plaintiff's counsel clarified his questioning and that Mr. Benecke answered accordingly:

> Q     All right. Having said that, are you familiar with Michael Estrada?
>
> A     I'm not sure I would know what you mean by the word "familiar."

10

Q       Okay.  Have you ever heard his name before?

A       Yes.

Q       What is your understanding of his relationship in this proceeding today?

A       He is the plaintiff in a lawsuit that's been filed.

.       .       .

Q       Okay.  Do you know what Mr. Estrada did when he was working for Maguire Insurance Agency?

A       Yes.

Q       What did he do?

A       He was a claims examiner in the claims department.

(Benecke Dep. 6:20 - 7:17)

Similarly, while Mr. Benecke did not know precisely what Plaintiff's counsel meant when he asked if Mr. Benecke had "used" the claims metrics reports before (an ambiguous term), he readily testified to the fact that he helped design the report, had more than a passing familiarity with the report, and then went into great detail into what the report represented and why it was created.  (Benecke Dep. 20:12 - 27:6)

While Plaintiff's counsel takes issue with Mr. Benecke's testimony, in fact, Mr. Benecke carefully and precisely answered the questions and/or asked for clarification where appropriate.  It is not Mr. Benecke's fault that many of the questions were vague, ambiguous, or confusing, and it was not his responsibility to answer questions that were not actually put before him or to intuit Plaintiff's counsel's intentions or meaning.

Plaintiff now claims that he did not get all of the information he wanted or needed for his motion for conditional certification.  However, it is undisputed that the deposition

11

was not cut short and that Plaintiff's counsel could have continued to ask additional follow-up questions had he so desired.  He also could have requested another deposition prior to the end of discovery.  He chose not to do so.  As discussed below, Plaintiff's actions were deliberate and in disregard of the Court's Discovery Order, Policies and Procedures, Local Rule 26.1(f) and Fed. R. Civ. P. 37(a).

**C.   Plaintiff's Motion to Compel is Untimely and in Disregard of this Court's Discovery Order, Policies and Procedures, Local Rule 26.1(f), and Fed. R. Civ. P. 37(a)**

This Court's Policies and Procedures provide that motions to compel must be made in accordance with Local Rule 26.1(f) following good faith efforts at resolution. The Policies and Procedures "encourage the submission of routine discovery disputes through the scheduling of a telephone conference" and further provide that telephone conferences are permitted "to resolve disputes during depositions."  Plaintiff failed to comply with this Court's Policies and Procedures, and further failed to engage in good faith efforts to resolve any alleged dispute.

First, Plaintiff had the opportunity to raise issues with Mr. Benecke's testimony during the deposition itself on November 27, 2012, but chose not to do so.  During Mr. Benecke's deposition, Defendant's counsel raised several objections to attempts by Plaintiff's counsel to obtain the names or identities of other claims examiners, or to conduct individualized discovery concerning claims examiners other than Plaintiff.[3] Significantly, Defendant's counsel specifically offered to call this Court during the deposition so that the issue could be resolved immediately.  Plaintiff's counsel elected not to call this Court and instead proceeded with the deposition.

---

[3] As noted above, Defendant has consistently taken the position that such discovery - while appropriate if judicial notice is authorized and other individuals opt in to the collective action - is premature and beyond the scope of this Court's August 17, 2012 Discovery Order.

Q      Can you give me any of those names of Fast Track claims examiners?

MR. ALLOY:  First of all, I object to the question.  You've also mischaracterized his testimony.  And I think we're being clear that the identity of other individuals has already been specifically requested and ruled upon by the court.

MR. WILEY:  I'm sure the court can interpret its own rulings.

MR. ALLOY:  If you'd like to bring this issue before the court, we're happy to.  If you would like to call Judge Goldberg's chambers, because you would like to take another shot at getting the identity of people, we can do that.

MR. WILEY:  And I think that's one of the reasons I'm asking this question, is to be able to go [to] the judge and say, this is why we need it.

(Benecke Dep., 118:3-22)

Following the deposition, and for almost three weeks following receipt of the transcript (Defendant received the official transcript from the court reporter on December 3, 2012), Plaintiff made no effort or attempt to raise any issues concerning Mr. Benecke's testimony.

Instead, Plaintiff waited until December 20, 2012 to send out a short "demand" letter asserting that Mr. Benecke "was wholly unprepared to testify with any personal knowledge of the day-to-day activities of Fast Track Auto Claims Examiners" and was "unwilling and/or unable to testify concerning any Fast Track claims adjuster other than Mr. Estrada."  *See* Doc. No. 37-4.  The letter further threatened to file a motion to compel or seek sanctions if a response was not received within ten days.  *Id*.

Plaintiff's letter was clearly intended to arrive after the close of discovery on December 21, and to deny Defendant any meaningful opportunity to respond or meet and confer.  Plaintiff sent the letter by regular mail and failed to also send an electronic copy

13

(which the parties had routinely done up until that point), and he sent the letter right before a weekend and the Christmas holidays on which there was no postal service.  Not surprisingly, Defendant's counsel did not receive the letter until December 26, 2012, and quickly responded on December 28, 2012 in a letter sent by e-mail so that it would be received immediately.  *See* Doc. No. 37-5.  Defendant offered to meet and confer at Plaintiff's counsel's convenience.

While the parties did speak very briefly on January 3, 2013, that conversation was prompted by Plaintiff's request for an extension to the page limits on his motion for conditional certification.  There was a limited discussion - initiated by Defendant's counsel's inquiry whether the December 28, 2012 letter had been received - about Defendant's long-standing objection and position that the names of other claims examiners, and individualized discovery beyond the Plaintiff, were beyond the scope of this Court's Discovery Order.  There was no substantive discussion, or attempt at a substantive discussion, concerning Mr. Benecke's allegedly insufficient testimony or inability to testify with specificity to the day-to-day minutiae of other claims examiners, and there was no discussion of a motion to compel.

Given that motions for conditional certification and summary judgment were due on January 7, 2013 (and with another intervening weekend and the New Years holiday), it is unclear how Plaintiff expected to engage in any meaningful discussions concerning Mr. Benecke's testimony, or what type of resolution could have been reached at this late stage of the proceedings.

In any event, Plaintiff has provided absolutely no explanation why he waited over three weeks to raise any alleged issues with Mr. Benecke's testimony, or why he failed to

raise any alleged dispute until after the close of discovery.  It is axiomatic that motions to compel - and in particular, motions to compel deposition - should be made prior to the end of discovery.  *See, e.g., Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001); *Flynn v. Health Advocate, Inc.*, No. 03-3764, 2005 U.S. Dist. LEXIS 1704, at *27 (E.D. Pa. Feb. 8, 2005) (denying plaintiffs' motion to compel deposition testimony and production of documents as untimely because it was filed after the close of discovery); *Schmidt v. Mars, Inc.*, No. 09-3008 (PGS), 2011 U.S. Dist. LEXIS 63961, at *8-9 (D.N.J. June 13, 2011) (holding that the Magistrate Judge did not abuse her discretion when she found that a motion to compel filed one day after the close of discovery was untimely).  Plaintiff's failure to do so was both deliberate and inexcusable.

Similarly, Plaintiff's failure to engage in any meaningful steps to resolve the alleged discovery dispute do not reflect the type of good faith efforts contemplated by Local Rule 26.1(f) and Fed. R. Civ. P. 37(a).  *See, e.g., Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 182 (3rd Cir. 2003); *DiSantis v. Koolvent Aluminum Prods., Inc.*, No. 97-5434, 1998 U.S. Dist. LEXIS 12480, at *2-4 (E.D. Pa. Aug. 12, 1998) (denying plaintiff's motion to compel for failure to comply with the requirements set forth in Local Rule 26.1(f)); *Crown Cork & Seal Co., Inc. v. Chemed Corp.*, 101 F.R.D. 105, 106-07 (E.D. Pa. 1984) (denying defendant's motion to compel because of its failure to comply with the Local Rule's meet-and-confer requirement, noting that "[t]his rule is not merely a formalistic requirement"); *Cannon v. Cherry Hill Toyota*, 190 F.R.D. 147, 153, 163 (D.N.J. 1999).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel an additional 30(b)(6) deposition and/or his alternative request for conditional certification, should be denied in their entirety, and all reasonable costs and fees associated with opposing the motion should be awarded to Defendant.

Respectfully submitted,

Dated: New York, New York
       January 24, 2013

PROSKAUER ROSE LLP

/s/ Joshua F. Alloy

Elise M. Bloom
admitted *pro hac vice*
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
ebloom@proskauer.com

Joshua F. Alloy
admitted *pro hac vice*
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004
Tel: (202) 416-6800
jalloy@proskauer.com

Amanda D. Haverstick
Attorney ID 85069
One Newark Center
Newark, NJ 07102
Tel: (973) 274-3200
ahaverstick@proskauer.com

*Attorneys for Defendant*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have caused a true and correct copy of the foregoing to be served on all counsel of record this 24th day of January, 2013, by operation of the Court's CM/ECF electronic filing system.

By:     /s/ Joshua F. Alloy

17