**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL ESTRADA, individually and on behalf of others similarly situated, | ) ) ) CIVIL ACTION NO. 12-604 ) |
| Plaintiff, | ) FILED ELECTRONICALLY ) |
| v. | ) ) |
| MAGUIRE INSURANCE AGENCY, INC., | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................ii

A. Plaintiff Meets The Second Prong Of The Administrative
   Exemption Because He Engaged in "Administrative" And Not
   "Production" Work ..........................................................................................................1

B. Plaintiff Meets The Third Prong Of The Administrative Exemption
   Because His Undisputed Duties *Included* The Exercise Of
   Discretion And Independent Judgment..................................................................................2

   1. Plaintiff's Own Testimony Establishes That His Duties
      *Included* The Exercise Of Discretion And Independent
      Judgment .........................................................................................................3

   2. Plaintiff's Attempts To Minimize The Documentary
      Evidence Are Unavailing ...............................................................................6

C. Plaintiff's Legal Arguments Are Misplaced ........................................................................7

D. Plaintiff Cannot Demonstrate That He Worked More Than 40
   Hours In Any Week ........................................................................................................10

CONCLUSION...............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

***CASES***

*Arnold v. Ben Kanowsky, Inc.*,
    361 U.S. 388 (1960) ..................................................................................................1

*Christopher v. SmithKline Beecham Corp.*,
    132 S. Ct. 2156 (2012) .............................................................................................1

*Cheatham v. Allstate Ins. Co.*,
    465 F.3d 578 (5th Cir. 2006) ............................................................................2, 8, 9

*Jastremski v. Safeco Ins. Co.*,
    243 F. Supp. 2d 743 (N.D. Ohio 2003) ....................................................................2

*Lederman v. Frontier Fire Protection, Inc.*,
    685 F.3d 1151 (2012) ...............................................................................................1

*McAllister v. Transamerica Occidental Life Ins. Co.*,
    325 F.3d 997 (8th Cir. 2003) ....................................................................................8

*Miller v. Farmers Ins. Exch. (In re Farmers Ins. Exch.)*,
    466 F.3d 853 (9th Cir. 2006), *as amended*, 481 F.3d 1119 (9th Cir. 2007) .........2, 8

*Palacio v. Progressive Ins. Co.*,
    244 F. Supp. 2d 1040 (C.D. Cal. 2002) ....................................................................2

*Renfro v. Ind. Mich. Power Co.*,
    497 F.3d 573 (6th Cir. 2007) ....................................................................................1

*Robinson-Smith v. Gov't Emps. Ins. Co.*,
    590 F.3d 886 (D.C. Cir. 2010) ..............................................................................2, 8

*Roe-Midgett v. CC Servs Inc.*,
    512 F.3d 865 (7th Cir. 2008) ............................................................................2, 8, 9

*Talbert v. Am. Risk Ins. Co.*,
    405 F. App'x 848 (5th Cir. 2010) .....................................................................2, 8, 9

*Withrow v. Sedgwick Claims Mgmt. Serv.*,
    841 F. Supp. 2d 972 (S.D. W. Va. 2012) ..................................................................2

*Yi v. Sterling Collision Centers, Inc.*,
    480 F.3d 505 (7th Cir. 2007) ....................................................................................1

In his opposition to Defendant Maguire Insurance Agency, Inc.'s motion for summary judgment, Plaintiff Michael Estrada misleadingly attempts to create a dispute of fact and avoid summary judgment by cherry picking a few out-of-context or truncated quotes from his testimony.  Plaintiff does not succeed.  He ignores the vast majority of his own testimony and virtually all of the relevant documentary record that establish, as a matter of law, that he was properly classified as exempt from overtime under the FLSA.[1]  Plaintiff also fails to distinguish six separate Court of Appeals decisions that are directly on point and uniformly reject the very arguments he now makes.  As a result, Defendant's motion for summary judgment should be granted and Plaintiff's Complaint dismissed with prejudice.[2]

### A. Plaintiff Meets The Second Prong Of The Administrative Exemption Because He Engaged In "Administrative" And Not "Production" Work

For the past 70 years, the U.S. Department of Labor has consistently taken the position that insurance claims examiners who process insurance claims are generally subject to the administrative exemption and perform work that is "administrative" in nature so as to meet the second prong of the exemption.  The relevant DOL regulations explicitly include claims examiners in their examples of administrative work.  And the courts have consistently and constantly followed this logical conclusion to hold that claims examiners perform administrative work related to general business operations.  *See* Doc. No. 44, pp. 10-14.

---

[1] Plaintiff wrongly asserts that Maguire has the burden of establishing that the exemption applies "plainly and unmistakably." Doc No. 42, pp. 8 and 12-13.  In fact, the burden of proof is by a preponderance of the evidence.  The Supreme Court's reference in *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) to "plainly and unmistakably" refers to the legal standard for determining if an employer is a retail or service establishment (for purposes of a different exemption not applicable here), and not to the overall evidentiary burden for establishing the applicability of the administrative exemption. *See, e.g., Lederman v. Frontier Fire Protection, Inc.*, 685 F.3d 1151 (2012); *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505 (7th Cir. 2007) ; *Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007); *c.f. Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2172 n.21 (2012).

[2] Plaintiff largely repeats – at times verbatim – the same arguments he makes in his cross-motion for summary judgment.  To avoid similar wholesale repetition, where appropriate, Defendant incorporates the facts and arguments contained within its own opposition to Plaintiff's motion for summary judgment (Doc. No. 44), and refers to the relevant pages or sections of the brief, cited herein as Doc. No. 44, p. __.

Nevertheless, Plaintiff insists that he was performing non-exempt "production" work akin to working on a manufacturing line or selling a product in a retail or service establishment, based on the fact that one of Defendant's primary business functions is to administer and process insurance claims for its clients, and Plaintiff was responsible for carrying out this function. This argument has been rejected by every court to address it because, as the Fifth Circuit held, claims examiners do not work on a production line and "[a]n insurance company's products is its policies, and [insurance adjusters'] duties do not include writing and selling insurance." *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006) (*citing Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir. 1997); *Talbert v. Am. Risk Ins. Co.*, 405 F. App'x 848, 854-55 (5th Cir. 2010); *Miller v. Farmers Ins. Exch. (In re Farmers Ins. Exch.)*, 466 F.3d 853, 859-861 (9th Cir. 2006), *as amended*, 481 F.3d 1119, 1132 (9th Cir. 2007); *Roe-Midgett v. CC Servs Inc.*, 512 F.3d 865, 871-73 (7th Cir. 2008); *Robinson-Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 892 n. 7 (D.C. Cir. 2010); *Withrow v. Sedgwick Claims Mgmt. Serv.*, 841 F. Supp. 2d 972, 979-980 (S.D. W. Va. 2012); *Palacio v. Progressive Ins. Co.*, 244 F. Supp. 2d 1040, 1047 (C.D. Cal. 2002); *Jastremski v. Safeco Ins. Co.*, 243 F. Supp. 2d 743, 752 (N.D. Ohio 2003).

Plaintiff makes no effort to explain, or even address, why all of these decisions – and the DOL – are wrong, or how he is actually akin to a factory production line worker or retail salesman. He also fails to cite to any decisions actually holding that an insurance claims examiner does not meet the second prong of the exemption. This is plainly insufficient.

**B.    Plaintiff Meets The Third Prong Of The Administrative Exemption Because His Undisputed Duties *Included* The Exercise Of Discretion And Independent Judgment**

Plaintiff's complete testimony and other documentary evidence demonstrate that Plaintiff's job duties *included* the exercise of discretion and independent judgment, and moreover, that he performed virtually all of the traditionally exempt job duties of a claims

examiner under the relevant DOL regulations and federal jurisprudence. By ignoring this vast and detailed record and instead focusing on isolated – and oftentimes misleading or irrelevant – snippets of testimony, Plaintiff does not create disputes of material fact. Instead, he is simply arguing – which Defendant does not dispute for purposes of this motion – that in addition to the undisputed duties and responsibilities he performed, his job *also* involved non-exempt or non-discretionary duties. This does not defeat summary judgment.

      1.      <u>Plaintiff's Own Testimony Establishes That His Duties *Included* The Exercise Of Discretion And Independent Judgment</u>

Plaintiff testified numerous times that his job involved evaluating and determining coverage; conducting investigations; interviewing the insured and other witnesses; making determinations as to liability; reviewing damages estimates; assessing and apportioning fault; evaluating and changing reserves; and settling and resolving claims – for which he had independent authority up to $10,000. Pl. Tr. 37:22 – 39:19, 90:25 – 91:6, and 92:6 – 93:6[3]; *see also*, *generally*, Doc. No. 38-2, ¶¶ 20-60. Moreover, as summarized briefly below, Plaintiff repeatedly testified to all of the ways in which he exercised discretion and judgment, either by making decisions and determinations on his own, or by making meaningful recommendations.

As part of his initial investigation into every claim, Plaintiff testified that he would speak to the insured, the claimant, and other witnesses in order to get their sides of the story and ultimately use his own judgment to make credibility determinations and judgment calls. Other claims examiners would also seek out Plaintiff's opinion on liability and credibility issues. Pl. Tr. 69:6-24; 61:4 – 20; 64:17-65:15; 67:4-18; 71:25 – 72:10; 93:14 – 94:22.

---

[3] Although the vast majority of the transcript pages cited in Defendant's Reply are already in the record as exhibits to Maguire's motion for summary judgment and/or opposition to Plaintiff's motion for summary judgment, for the Court's convenience, Defendant has attached all transcript pages specifically cited in its Reply at Exhibit A.

In states that provided for "comparative negligence," Plaintiff's job was to apportion fault between the parties to the accident. Pl. Tr. 38:12 – 39:19 and 57:21-24. Plaintiff testified that this required him to reach a conclusion about what actually happened and the degree to which each party was at fault, and either make a final determination himself or recommend a resolution to his supervisor.

> Q: Okay. Now, what if they both had some degree of fault; what did you do then?
> A: I would usually ask Mona, see what she thought. See if she wanted comparative negligence on that.
> Q: You said you usually asked Mona. What information would you bring to Mona?
> A: The estimate amounts; how the accident happened; you know, what I believe to be how the accident happened. I would ask her what she thought.
> Q: So you would go to Mona and say, this is what I believe happened, and would you tell her who you thought was at fault and how much and why?
> A: Yes.
> Q: So you'd make a recommendation to her?
> A: Correct.

Pl. Tr. 67:19 – 68:12; *see also* Pl. Tr. 160:24 – 161:8 (it was up to Plaintiff to apportion fault).

While Plaintiff suggests now that he simply accepted whatever damages estimates were submitted to him, he testified that he would question damage claims and, where appropriate, he would conduct an investigation, review pictures of the damages, and either deny the damages or present his findings to his supervisor and make a recommendation how to proceed.

> Q: And in looking at the pictures, would you – why would you be looking at the pictures?
> A: To see where the damages are. See what damages were caused.
>     .     .     .
> Q: And would you want to compare that with what you were being told by your insured?
> A: Correct.
> Q: Why?
> A: Just to make sure that it fit – fit the statement of what happened.
> Q: Okay. So to make sure that – that you thought you agreed with what your insured was telling you about how the accident happened; correct?
> A: Yes.

Pl. Tr. 91:12 – 92:5.

4

> Q: And did you always agree with what the insured's appraisal said?
> A: Yeah. Pretty much. Unless there was some obvious, um – you know, if – if, um, the damages are claimed on the left side and then there's something on the right side that the estimate is willing to repair, then I would call the body shop and ask then, "How does that fit with the impact over here?"
> Q: The impact on the other side?
> A: Correct.
> Q: And then you might decide to pay a lesser amount?
> A: Yeah.
> Q: And you'd make that decision?
> A: No. No. I would usually ask Mona what she thought, because I'm really not that great with estimates.
> Q: So you would go to Mona and you'd say, "I've investigated. This is what I found out. This is [what] I think we should do. What do you think?"
> A. Yes.
> Q: Okay. So you'd make a recommendation?
> A: Yes.

Pl. Tr. 73:9 – 74:8; *see also* Pl. Tr. 65:16 – 66: 12 (making credibility determinations where the damage did not support the story).

Plaintiff also testified that he exercised discretion in adjusting the reserves for each claim.

> Q: And then as you investigate the claim, you're supposed to re-evaluate whether the reserve is sufficient or not?
> A: Correct.
>     .   .   .
> Q: And did you always increase it the same amount?
> A: Sometimes. Really, it's based on previous claims that I might have had that were similar. You kind of get an idea of about what the amount is going to be as far as damages. You know, a parking lot accident isn't going to go over a couple of thousand.
>     .   .   .
> Q: So your experience let's you – gives you the judgment to know how much to assign to it; is that right?
> A: Yeah.

Pl. Tr. 159:3 – 160:15.

Finally, while Plaintiff alleges that he followed a three-step process for determining liability, it is undisputed that he was ultimately responsible for making a decision as to liability on each and every claim that he handled. *See*, *e.g.*, Doc. No. 38-2, ¶¶ 30-38. As his testimony

5

cited above makes clear, even within the confines of his alleged three-step process, he was able to make credibility determinations and question damage claims and estimates, and make recommendations to his supervisor when there were complex disputes. And, as Defendant's Executive Vice President of Claims testified and explained, by following such an alleged process, Plaintiff would have been operating completely outside of the policies, expectations, and requirements of his position and therefore exercising an incredible amount of incredibly bad judgment. *See* Doc. No. 44, pp. 25-26.

        2.    <u>Plaintiff's Attempts To Minimize The Documentary Evidence Are Unavailing</u>

First, Plaintiff effectively concedes, as he must, that the claim notes Defendant submitted as representative examples of his job duties reflect the exercise of discretion and judgment. While Plaintiff suggests that these "singled out" notes do not reflect Plaintiff's "real" duties, he has not pointed to any counter examples (of the roughly 5,000 pages of claims notes produced) nor attempted to question their validity.[4] And, while Plaintiff argues that the claim notes did not include "every" potential fact, they surely include enough to show that Plaintiff's primary duty of processing claims *included* the exercise of discretion and independent judgment.

Second, Plaintiff makes no real attempt to explain his accurate performance reviews. Instead, he suggests that they do not "prove" he exercised discretion because some of the "goals" listed in the first part of the performance review arguably involve non-exempt tasks. But this misses the point. The performance reviews are intended to reflect Plaintiff's overall performance – including a review of how he performed all of his job duties, whether routine, clerical, or complex. These general duties and expectations are outlined in Plaintiff's job description and

---

[4] Defendant is more than willing to provide the Court with copies of all of the roughly 5,000 pages of claims notes upon request, as they simply provide even more evidence that Plaintiff was not simply an automaton.

the Claims Handling Guidelines.[5] The evaluations provide contemporaneous evidence that Plaintiff exercised and was recognized by management for his initiative, judgment, creativity, and discretion. It is not credible that Plaintiff would have received such laudatory reviews if he had not actually been performing the (exempt) job expected of him and in the manner described.

Third, Plaintiff claims that his resume does not demonstrate that he exercised discretion and independent judgment because the language in his resume is "simply not reflective of the type of tasks" he performed. However, in his deposition, Plaintiff acknowledged that he drafted the resume himself and that it was accurate. *See* Doc. No. 38-2, ¶ 66. In addition, it is undisputed that while Plaintiff took certain portions of the resume from Maguire's job description, he himself added that his job involved "investigation, evaluation and negotiation of complex claims employing discretion and independent judgment" and noted that he voluntarily and independently created a total loss worksheet to help him and other claims examiners. Doc. No. 38-13; Doc. No. 44, pp. 27-28; Pl. Tr. 180:25 - 181:6 and 183:2 - 184:5. Given that the resume was drafted before he had a reason to downplay his job, it is much more credible to believe that Plaintiff accurately described his job at the time than to conclude that he knowingly drafted and submitted a false resume to future employers.

C.   **Plaintiff's Legal Arguments Are Misplaced**

Plaintiff fails to distinguish the six directly applicable Court of Appeals decisions that each hold, as a matter of law, that insurance claims examiners are properly classified as exempt.[6]

---

[5] The fact that these job requirements and expectations applied to all claims examiners and were not specifically tailored to each individual claims examiner does not help Plaintiff. Rather, they simply establish the minimum baseline that each and every claims examiner was expected to meet.

[6] While Plaintiff is correct that Defendant has not relied on any Third Circuit decisions, that is because no court in the Third Circuit has addressed the exempt status of insurance claims examiners and the law governing claims examiners is well-established and extensive. Plaintiff's bald assertion that the Western District of Pennsylvania might conclude that claims examiners are non-exempt is nonsensical, and the cases he cites do not even remotely support this proposition. *See* Doc. No. 44, pp. 29-30.

*See Cheatham*, 465 F.3d at 585; *Talbert*, 405 F. App'x at 854-55; *Robinson-Smith*, 590 F.3d at 888; *Roe-Midgett*, 512 F.3d at 875; *In re Farmers Ins. Exch.*, 466 F.3d at 859-861; *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1001 (8th Cir. 2003).  While Plaintiff now tries to downplay his job, it is undisputed that, at a minimum, he was responsible for making coverage determinations, conducting investigations, interviewing insureds and witnesses, assessing credibility, making liability determinations, adjusting reserves, apportioning percentages of fault, and settling claims.  *See*, *e.g.*, Doc. No. 38-2, ¶¶ 20, 28-38, and 47-55.  Plaintiff cannot close his eyes and ignore all of the ways in which his testimony, claims notes, performance reviews, and resume confirm these duties, or the fact that courts have universally ruled that performing *some* of these duties satisfies the administrative exemption.  *See* Doc. No. 38-1, p. 11-18 and 20-27.

      Plaintiff's primary argument that each of the six Courts of Appeals decisions is inapplicable is that he did not perform every one of the same duties found in those cases.  However, the law is clear that an employee need only perform *some* of the typically exempt duties in order to qualify for the exemption.  *See, e.g., Robinson-Smith*, 590 F.3d at 894; *In re Farmers Ins. Exch.*, 481 F.3d at 1129.  Significantly, Plaintiff focuses on the fact that he did not conduct field investigations, appraise damaged vehicles, draft damage estimates, or perform other appraisal-related duties.[7]  These duties, however, are typically associated with *non-exempt* appraisal work, not exempt claims examiner work.  Indeed, the courts have held that claims examiners were exempt employees *despite* performing these duties, and only because they, like Plaintiff, conducted factual investigations and determined or made recommendations regarding coverage, liability, and/or the settlement of claims.  *See*, *e.g.*, *Robinson-Smith*, 590 F.3d at 894-

---

[7] Plaintiff's failure to handle bodily injury claims is irrelevant, and while he argues that he never "negotiated" anything, his claim notes prove otherwise.  Doc. No. 38-2, ¶ 53; Pl. Tr. 140:14-144:21.  Plaintiff also inspected property damage by reviewing photos.  Doc. No. 38-2, ¶ 38 and 42.

8

95 (holding that auto damage adjusters exercised discretion because, even assuming the majority of their work involved assessing vehicle damage, they still had authority to settle claims up to their $10,000 to $15,000 limit); *Roe-Midgett*, 512 F.3d at 875 (ruling that plaintiffs were exempt employees because they investigated claims – they were "not mere appraisers").

Plaintiff also fails to address or explain the fact that many of the claims examiners at issue in these six decisions exercised substantially *less* discretion than Plaintiff. For example, while Plaintiff had the ultimate responsibility and independent authority to settle virtually all claims, the exempt "material damage appraisers" in *Roe-Midgett* did not have authority to settle disputed claims, and the exempt "assistant claims adjusters" in *Talbert* had no independent authority to settle any claims. Indeed, the exempt adjusters in *Talbert* "rarely" conducted interviews or interacted with policyholders. While Plaintiff was responsible for making coverage and liability determinations, the exempt "auto damage adjusters" in *Robinson-Smith* were specifically prohibited from making such determinations. And while Plaintiff was responsible for independently adjusting reserves on each claim based on his own judgment, the "automobile damage adjusters" in *In Re Farmers Ins. Exch.* could not change reserves themselves.

Finally, while Plaintiff makes much of the fact that he sought his supervisor's approval for certain decisions, the courts have repeatedly ruled that a claims examiner is still exempt if he uses his experience and knowledge of the facts to provide recommendations for action. *See, e.g., Cheatham*, 465 F.3d at 585-86; *Talbert*, 405 F. Appx. At 854-55. In his deposition, Plaintiff repeatedly acknowledged that where he did not make an ultimate decision on liability, damages, or apportioning fault, he would provide recommendations to his supervisor based on his own investigation, credibility determinations, and judgment. *See, e.g.,* Doc. No. 38-2, ¶ 36, 41.

**D.**     **Plaintiff Cannot Demonstrate That He Worked More Than 40 Hours In Any Week**

Trying to prove that he worked more than 40 hours in a week, Plaintiff relies on his own inconsistent and misleading testimony and distorts the existing time records. First, Plaintiff's testimony is not credible because he has consistently offered inconsistent and confusing statements regarding his alleged overtime, changing his story and conceding that his "guesses" were based on incorrect assumptions about calculating overtime. *See* Doc. No. 44, pp. 35-37.

Second, the existing time records all demonstrate that Plaintiff rarely even worked the 37.5 hours he was scheduled each week, and Plaintiff's chart "challenging" these records contains inaccurate and misleading figures. The chart conveniently ignores Plaintiff's one hour lunch break each day, falsely inflating his weekly total by five hours. *See* Doc. No. 38-2, ¶ 67. The chart also wrongly assumes that both the APPS and Image Right times are from the same time zone. In fact, the APPS records are in Central Time and the Image Right records are in Eastern Time (a fact that was told to Plaintiff's counsel, can be determined by looking at the actual times recorded in each of the records and comparing them to Plaintiff's scheduled hours, and explains why Plaintiff did not chart APPS and Image Right times for both log-ins and log-outs). *See* Exhibit B, Declaration of Joshua F. Alloy, ¶¶ 3-5.

By charting Plaintiff's log-in times in APPS but log-out times in Image Right, Plaintiff has improperly added an additional hour to each day. Thus, Plaintiff's chart overstates his actual hours worked by a total of 10 hours each week and is further evidence that he never worked 40 hours in a week. A corrected chart of the relevant time records is attached hereto as Exhibit C.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully submits that the Court should grant its motion for summary judgment and dismiss Plaintiff's Complaint with prejudice.

| | |
|---|---|
| Dated: New York, New York<br>February 15, 2013 | PROSKAUER ROSE LLP<br><br>/s/ Joshua F. Alloy<br><br>Elise M. Bloom (*pro hac vice*)<br>Eleven Times Square<br>New York, NY 10036-8299<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>ebloom@proskauer.com<br><br>Joshua F. Alloy (*pro hac vice*)<br>1001 Pennsylvania Avenue, NW<br>Suite 400 South<br>Washington, D.C. 20004<br>(202) 416-5876<br>jalloy@proskauer.com<br><br>*Attorneys for Defendant* |

11

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have caused a true and correct copy of the foregoing to be served on all counsel of record this 15th day of February, 2013, by operation of the Court's CM/ECF electronic filing system.


                                          By:    /s/ Joshua F. Alloy