IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ESTRADA, individually and on behalf of others similarly situated, | |
| PLAINTIFF, | CIVIL ACTION NO. 12-604 |
| v. | JURY TRIAL DEMANDED |
| MAGUIRE INSURANCE AGENCY, INC., | |
| DEFENDANT. | |

SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR CONDITIONAL CLASS CERTIFICATION AND JUDICIAL NOTICE

Robert J. Wiley
Texas Bar No. 24013750
*Board Certified in Labor and Employment Law
by the Texas Board of Legal Specialization*
Jessica Cohen
Texas Bar No. 24082838

ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone: (214) 528-6500
Facsimile: (214) 528-6511
jcohen@robwiley.com
ATTORNEYS FOR PLAINTIFFS

# I.
# SUMMARY

In response to the November 1, 2013 Order, Defendant produced all of the claim notes for the 19 Fast Track Auto Claim Examiners listed on the January 30, 2011 claim metrics report.

Defendant's production demonstrates that the class is narrowly defined and easily identifiable. The names of the prospective class members are listed as Fast Track Auto Claims Examiners on the claim metrics report created by Defendant throughout the relevant time period. Defendant, itself, has created and identified this class of Fast Track Auto Claims Examiners. Therefore, Defendant is not overly burdened by producing the related records for these prospective class members.

Further, the claim notes support that Fast Track claims were handled in the same way by all of the Fast Track Auto Claims Examiners. Claim notes show that Fast Track Auto Claims Examiners all: (1) processed fast track auto claims, (2) performed the same rudimentary coverage review, (3) followed the same checklist for allocating liability, (4) assigned appraisers to valuate damage, and (5) paid out claims based on the appraiser's estimate.

Given these facts and the lenient standard applied during the initial conditional class certification stage, conditional class certification is appropriate.

## II.
## THE PUTATIVE CLASS IS REASONBLY LIMITED IN SCOPE AND EASILY IDENTIFIABLE.  IN FACT, DEFENDANT HAS ALREADY IDENTIFIED A LARGE PORTION OF THE PUTATIVE CLASS AND WILL NOT BE BURDENED BY THE ADDITIONAL DISCOVERY

Defendant previously produced a redacted version of the claims metrics report.  This report, created by Defendant prior to litigation, contains a list of Fast Track Auto group members.  [Docket No. 43-1].  In response to this Court's order, Defendant has produced an un-redacted version of this document, identifying each of the putative class members working for Maguire on January 30, 2011. (Exh. 1) This report was created daily and maintained by Defendant. [Docket No. 36-1, 37:7-20].  Clearly, as Defendant has now produced the un-redacted version and the relevant documents pertaining to the listed examiners, the full list of putative members for the entire relevant time period could be easily generated without great, or even any, burden to Defendant.

Furthermore, the claims metrics report demonstrates that the class is narrowly tailored, consisting of only a small subsection of Defendant's population of claims examiners.  On January 30, 2011, there were 19 putative class members employed by the company.  According to the claim notes produced, all 19 of the examiners worked for Maguire for the entire three-year period produced.  Therefore, there must be a limited number of additional putative class members beyond those already identified.

Such a narrowly defined class directly contrasts with the cases in which courts have denied conditional class certification due to an overbroad proposed

class. *See e.g. Bramble v. Wal-Mart Stores, Inc.*, No. Civ. A. 09-4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) (seeking nationwide certification of Asset Protection Coordinators); *Gillen v. Marshall's of MA, Inc.*, 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012) (seeking nationwide certification across approximately 830 Marshall's stores); *Harriel v. Wal-Mart Stores, Inc.*, No. Civ A. 11-2510 (MLC), 2012 U.S. Dist. LEXIS 97527 (D.N.J. July 13, 2012) (seeking certification of class of approximately 1,625 employees).

### III.
### THE NEW CLAIM NOTES PRODUCED DEMONSTRATE WELL BEYOND A "MODEST FACTUAL SHOWING" THAT PLAINTIFF AND THE OTHER FAST TRACK AUTO CLAIMS EXAMINERS PERFORMED THEIR JOBS ACCORDING THE SAME PROCEDURE AND ARE SIMILARLY SITUATED

Fast Track claims were the most basic and simple claims handled by Maguire claims examiners:

> Q: When you say "Fast Track," what does that mean?
> A: Simple claims. Easy claims that, you know, insured backed into a parked vehicle. Nothing that – that involved a lot of investigation. Who ran a red light. Anything like that.

[Docket No. 39-2, 36:3-8]. Further, the claims examiners assigned these claims all processed them according to the same procedure. Thus, Fast Track Auto Claims Examiners are similarly situated for conditional class certification.

**A.   The putative class members are all part of the Defendant's Fast Track Auto group and processed Fast Track Auto claims.**

In the claims metrics report, which has now been produced un-redacted, Defendant categorizes its claims examiners into examiner groups. (Exh. 1). In the report, "Fast Track Auto" is one of the groups delineated by Defendant:

6/12/2012
1 of 1

Philadelphia Insurance Companies
Claims Metrics Report
As of 1/30/2011

| ExaminerGroup | Examiner | PEND | RO | SUITS | RESERVES | OMTD | CMTD | MCR | OLM | CLM | LMCR | O12M | C12M | MCR12 | CWNP | CH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| American Specialty | | 206 | 62 | 1 | $13,580,028 | 9 | 14 | 156% | 9 | 30 | 333% | 170 | 327 | 192% | 1 | |
| Commercial Auto | | 2,766 | 923 | 665 | $166,766,535 | 594 | 650 | 109% | 536 | 714 | 133% | 8,048 | 8,449 | 105% | 131 | |
| Fast Track Auto | | 1,333 | 207 | 65 | $7,240,742 | 2,077 | 2,121 | 102% | 2,031 | 2,083 | 103% | 23,266 | 23,271 | 100% | 377 | |
| | AUSTIN,R | 1 | 0 | 2 | $16,877.74 | 5 | 6 | 120% | 6 | 7 | 117% | 544 | 543 | 100% | 0 | |
| | BALDWIN,S | 35 | 1 | 0 | $75,888.00 | 93 | 92 | 99% | 76 | 69 | 91% | 214 | 183 | 86% | 6 | |
| | BAUER,T | 16 | 36 | 32 | $753,718.71 | 2 | 7 | 350% | 1 | 9 | 900% | 71 | 114 | 161% | 1 | |
| | CAMPBELL, A. | 85 | 6 | 2 | $259,294.93 | 123 | 104 | 85% | 103 | 98 | 95% | 1,570 | 1,586 | 101% | 22 | |
| | COUMBE, W. | 88 | 17 | 5 | $598,134.27 | 127 | 138 | 109% | 151 | 178 | 118% | 1,690 | 1,703 | 101% | 37 | |
| | CROSS, D | 51 | 9 | 0 | $1,252,343.58 | 65 | 80 | 123% | 53 | 64 | 121% | 1,073 | 1,115 | 104% | 7 | |
| | CUPCHAK,K | 55 | 0 | 0 | $127,084.15 | 82 | 62 | 76% | 75 | 74 | 99% | 224 | 192 | 86% | 13 | |
| | DERAMO, J. | 55 | 0 | 0 | $46,158.00 | 268 | 241 | 90% | 174 | 181 | 104% | 3,357 | 3,349 | 100% | 28 | |
| | DEVENNY, B | 31 | 31 | 8 | $733,312.51 | 71 | 95 | 134% | 83 | 109 | 131% | 1,560 | 1,625 | 104% | 17 | |
| | ESTRADA,M | 88 | 19 | 1 | $621,134.08 | 85 | 90 | 106% | 95 | 90 | 95% | 961 | 965 | 100% | 14 | |
| | FALCONE,D | 65 | 5 | 1 | $131,302.75 | 99 | 145 | 146% | 141 | 164 | 116% | 1,271 | 1,295 | 102% | 28 | |
| | GRANROTH,R | 44 | 3 | 0 | $44,422.75 | 86 | 86 | 100% | 94 | 75 | 80% | 257 | 211 | 82% | 20 | |
| | GRIFFIN,T | 109 | 12 | 7 | $343,992.51 | 152 | 153 | 101% | 148 | 165 | 111% | 1,614 | 1,616 | 100% | 28 | |
| | GUILLEMIN,N | 63 | 4 | 0 | $148,153.46 | 127 | 135 | 106% | 150 | 156 | 104% | 1,135 | 1,137 | 100% | 25 | |
| | HAYES,S | 69 | 2 | 0 | $316,303.58 | 84 | 80 | 95% | 78 | 72 | 92% | 934 | 924 | 99% | 17 | |
| | HERNANDEZ,A | 35 | 9 | 0 | $43,698.67 | 100 | 97 | 97% | 69 | 51 | 74% | 90 | 58 | 64% | 10 | |
| | HERNANDEZ,S | 88 | 1 | 0 | $250,268.05 | 135 | 117 | 87% | 128 | 135 | 105% | 1,371 | 1,310 | 96% | 30 | |
| | IPPOLITO,M | 29 | 3 | 0 | $223,398.00 | 65 | 57 | 88% | 56 | 55 | 98% | 1,054 | 1,081 | 103% | 12 | |
| | MANNING,V | 85 | 2 | 0 | $331,637.27 | 74 | 78 | 105% | 65 | 40 | 62% | 719 | 696 | 97% | 10 | |
| | OLLEK,C | 82 | 3 | 1 | $441,553.77 | 83 | 98 | 118% | 93 | 68 | 73% | 895 | 867 | 97% | 27 | |
| | RUBBIN, J. | 3 | 10 | 2 | $144,047.48 | 0 | 3 | 300% | 0 | 5 | 500% | 130 | 172 | 132% | 2 | |
| | SCHRAMM, K. | 115 | 28 | 4 | $320,770.62 | 106 | 116 | 109% | 132 | 156 | 118% | 1,458 | 1,434 | 98% | 15 | |
| | SHASKAS,J | 0 | 0 | 0 | $0.00 | 0 | 0 | 0% | 1 | 1 | 100% | 26 | 30 | 115% | 0 | |
| | SMITH,J | 35 | 6 | 0 | $107,248.06 | 45 | 41 | 91% | 59 | 61 | 103% | 1,048 | 1,065 | 102% | 8 | |
| General Liability | | 9,634 | 1,516 | 3,560 | $554,704,627 | 1,561 | 1,487 | 95% | 1,516 | 1,707 | 113% | 21,964 | 21,256 | 97% | 813 | |
| Professional Liability | | 4,283 | 433 | 1,238 | $176,218,404 | 531 | 407 | 77% | 521 | 591 | 113% | 6,715 | 6,050 | 90% | 282 | |
| Property | | 2,921 | 171 | 78 | $194,072,177 | 1,187 | 1,000 | 84% | 1,122 | 1,404 | 125% | 15,456 | 15,501 | 100% | 187 | |
| Subro | | 0 | 4 | 1 | $26,354 | 0 | 0 | 0% | 0 | 0 | 0% | 0 | 1 | 100% | 0 | |
| Unknown | | 150 | 1 | 0 | $14,350 | 396 | 57 | 29% | 61 | 78 | 128% | 1,038 | 1,464 | 141% | 54 | |
| | | 21,193 | 3,317 | 5,608 | $1,112,623,222 | 6,155 | 5,736 | 93% | 5,796 | 6,607 | 114% | 76,657 | 76,319 | 100% | 1,845 | |

(*Id*.) Each of the putative class members would be part of this designation and, therefore, would be a Fast Track Auto Examiner, handling Fast Track Auto claims.

**B.    The putative class members all performed a rudimentary "coverage review."**

All Fast Track Auto Claims Examiners conducted a policy check in the same way, which was considered the "coverage review." This merely entailed checking if the damaged vehicle's VIN number was contained in the policy and the policy coverage dates. [Docket No. 36-3, ¶4(c)]. Further, the new claim notes demonstrate the same policy check was generally used by the other examiners:

- coverage confirmed for a 2003 Ford, VIN [####][1], vehicle # 3 on policy, 1k deductible on collision. (Exh. 2, PHNP11010521373, Devenny).[2]

- coverage confirmed for a 2010 Ford econoline, VIN [####], vehicle # 18 on policy, 1k deductible on collision (Exh. 2, PHFP11010519341, Devenny)

- Connecticut policy and loss.  confirmed coverage for 2006 ford with vin [#####] at $1,000,000 and $1000 coll ded.called insured and left message for minnie bland that i am the adjuster on this and have a report of iv hitting parked car owned by anohter staff member.  asked for callback guidance. (Exh. 2, PHME10010440878, Coumbe) (original in all caps).

- IV cov confirmed. 11 Ford vin...[#####] $1k col ded (Exh. 2, PHNP10120518897, Griffin).

- Confirm coverage for 2010 Toyota Prius VIN...[####]. $500 comprehensive deductible. Rental reimbursement. (Exh. 2, PHRL11010519431, Guillemin).

- I called Jeff back and let him know that Donna was fron the Atty office.  I let him know that she said that the vehicle thatRowan was driving was a Lexus 300.  He said that there is a Lexus on the policy it was added 11/17/2011 and then removed on 12/15/2011.  Date of loss was 12/06/2011 so there was coverage. (Exh. 2, PHHC12010608088, Manning).

- coverage confirmed for 2010 honda vin [####] (Exh. 2, PHNP10040463649, A. Hernandez).

C.  **The putative class members all followed a checklist for allocating liability.**

Liability allocation of Fast Track claims was reduced to a checklist.  All Fast Track Auto Claims Examiners followed this checklist in order to assign liability, without the use of discretion and independent judgment. [Docket No. 39-2, 61:4-65:5]. In the rare event that liability was disputed, Fast Track Auto Claims Examiners followed a routine, established procedure for assigning liability:

---

[1] Subject to the confidentiality agreement between the parties, limited personal information has been redacted.
[2] All notes are in original form unless otherwise stated.

1. Obtain the police report and follow the liability determination in the police report [Docket No. 39-2, 61:12-25; 63:20-64:5].

2. If the police report does not determine liability, contact witnesses. Find in favor of side with the most witnesses. [Docket No. 39-2, 64:13-65:4].

3. If there is no police report and neither side has supporting witnesses, find in favor of the insured. [Docket No. 39-2, 62:6-21].

The new claim notes provided by Defendant confirm this procedure:

- spoke to ins, kennel mgr was in accident. driving circle, iv was not able to stop when ov was coming around. she stated this was thier fault, does not want to pursue, for iv. no injuries (Exh. 3, PHNP11050552842, Falcone) (Insured admits fault) (Original in all caps).

- called ins, (ivd) Larry he is director. [###-###-####] 2 was stop he pulled out and saw ov coming, ov tried to swerve, ov did not have a stop sign. he stated his fault (Exh. 3, PHME11060556417, Falcone) (Insured admits fault)(Original in all caps).

- Recvd fax copy of a witness's statement from Myra Lewis at PC which states that IV [insured vehicle] ran the stop sign and hit the side of OV [other vehicle] which did not have a stop sign. I faxed the clmnt's attorney a copy of PR [police report] which shows OV being cited and OVD [other vehicle driver] admitting that they had a stop sign. Further more, IV damage is middle ds. I asked that they drop their claim as this witness is entirely wrong. (Exh. 3, PHNP10120515963, Campbell).

- PR has no contrib factors for either party (Exh. 3, PHME11010520897, S. Hernandez).

- I had statementized a very credible IV operator and that his version—in tandem with Police Officer Omar Smith—would stand up m [claim note cut off]. (Exh. 3, PHNP10070481914, Coumbe)

D. **The putative class members all used appraisers to valuate damage.**

Fast Track Auto Claims Examiners never personally examined the damage to vehicles. [Docket No. 39-3, 104:8-11]. Rather, the examiners would assign an

appraiser and receive damage valuations from the appraisers. [Docket No. 39-2, 71:11-19; 110:17-25; 111:9-18; 115:13-23].

Based on Defendant's production of the additional claim notes, appraisers were regularly assigned by the examiners:

- rec'd ack. From IA: appraiser assigned. (Exh. 4, PHNP11060559583, Deramo).

- ia assigned; reliable auto damage appraisals (Exh. 4, PHCV12040626172, Deramo)(Original in all caps).

- we will need to send an appraiser to investigate the loss. (Exh. 4, PHBA11020526441, Ollek)

- Reviewed new recovery assignment. Note previous comments and our IA's 12/14/09 email to John [last name]. It does not look like this claim will be very large. However, we do not have a reserve recommendation from our IA yet. I called John to see if he received a response to the email he sent to the IA today but John said he has not. He will let me know when he hears something. Subro investigation / pursuit will depend on the size of the loss. (Exh. 4, PINP09120436822, Smith) (emphasis added) (awaiting appraisal estimate to valuate claim)

- Recvd IV appr [appraisal] in the amnt of $1,827.19. Less $1K coll deduct, payment is $827.19. Paid. (Exh. 4, PHME09120438867, Campbell)

- recd iv [insured vehicle] appr total $3462.11 less $1k ded and $260.15 tax = $2201.96 pd [paid] INS [insured] emailed report pd appr $120.50 (Exh. 4, PHNP11050553413, Falcone)

- "IV appr est for $ 1,307.15 - $1000 coll deduct = net $307.15 request payment authority" (Exh. 4, PHNP10120514932, Granroth)

- OV [other vehicle] est [estimate] for $729.29 request payment authority (Exh. 4, PHNP10120514678, Granroth)

Similarly, the appraisers were the ones to make total loss determinations, not the Fast Track Auto Examiners [Docket No. 39-2, 77:13-78:14]:

- Rec'd IV appr [appraisal]: 02' Dodge Caravan, VIN[######], $6861.75 – TOTAL LOSS   There will be additional damage found during repair. NADA is $6775.  Will run ACV on vehicle, called and spoke to Rad to advise that IV is a total loss. (Exh. 4, PHFP110101521737, Cupchak).

- Matt [Independent appraiser] said that the destruction was pretty much 'total' and there is really nothing left but the concrete pilings. (Exh. 4, PHCA10060474693, Smith)

-  The IA [Independent Appraiser] est. [estimate] $14,612.48 less rec. dep of $1,134.33 Less insd $2,500 deduct = net $10,978.15Insd is in agreement with the ia est. (Exh. 4, PHCO11020527305, Granroth).

E. **The putative class members all paid out claims based on the appraiser's estimate.**

Further, the Fast Track Auto Claims Examiners did not negotiate the claims, but rather issued payment based on the appraiser's estimate.  These claims were handled in the same manner by all examiners processing Fast Track claims:

-  The IA [Independent Appraiser] est. [estimate] $14,612.48 less rec. dep of $1,134.33 Less insd $2,500 deduct = net $10,978.15Insd is in agreement with the ia est. (Exh. 5, PHCO11020527305, Granroth).

- Recvd IV appr [appraisal] in the amnt of $1,827.19.  Less $1K coll deduct, payment is $827.19.  Paid. (Exh. 5, PHME09120438867, Campbell)

- recd iv [insured vehicle] appr total $3462.11 less $1k ded and $260.15 tax = $2201.96 pd [paid] INS [insured] emailed report  pd appr $120.50 (Exh. 5, PHNP11050553413, Falcone)

- IV appr est for $ 1,307.15 - $1000 coll deduct = net $307.15  request payment authority (Exh. 5, PHNP10120514932, Granroth)

- OV [other vehicle] est [estimate] for $729.29 request payment authority (Exh. 5, PHNP10120514678, Granroth).

- Rec'd app for iv in the amt of $1,950.41 less $1000 ded = $950.41.  Issued coll pymt.  Insured driver stated that he already paid to have cv repaired.  The vehicle is being picked up today.  He will e mail invoice to me (Exh. 5, PHFP11120604282, Schramm).

- Rec'd appraisal from Advance Appraisal for IV. Already paid insured based off of appraisal from Greene Company. (Exh. 5, PHDY11120603941, Schramm).

- *received supplement from the claimant/appraisal company...scanned to file 299.09 issuing payment to the claimant...per invoice appears the claimant paid for supplement out of pocket (Exh. 5, PHFP09110430159, Hayes).

## IV.
## CONCLUSION

Defendant, prior to litigation, defined a narrow class of Fast Track Claims Examiners. These putative class members are delineated in Defendant's claim metrics report. Therefore, Defendant is not overly burdened by producing the related records for these prospective class members.

Further, the claim notes demonstrate that the Fast Track Claims Examiners processed the Fast Track claims according to the same procedure described by Plaintiff. Given these facts and the lenient standard applied during the initial conditional class certification stage, conditional class certification is appropriate.

Respectfully submitted,

*/s/ Jessica Cohen*
ROBERT J. WILEY
Texas Bar No. 24013750
Board Certified in Labor & Employment
Law, Texas Board of Legal Specialization
Jessica Cohen
Texas Bar Number 24082838

Law Office of Rob Wiley, P.C.
1825 Market Center Blvd., Ste. 385
Dallas, TX 75207
Telephone: (214) 528-6500
Facsimile: (214) 528-6511
jcohen@robwiley.com
www.robwiley.com
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I certify that on December 12, 2013, I served a copy of the foregoing on opposing counsel via the Courts' CM/ECF system.

*/s/ Jessica Cohen*