IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ESTRADA, individually and on behalf of others similarly situated,<br><br>      PLAINTIFF,<br><br>   v.<br><br>MAGUIRE INSURANCE AGENCY, INC.,<br><br>      DEFENDANT. | CIVIL ACTION NO. 12-604<br><br>JURY TRIAL DEMANDED |

## SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Robert J. Wiley
Texas Bar No. 24013750
*Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization*
Jessica Cohen
Texas Bar No. 24082838

ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone: (214) 528-6500
Facsimile:  (214) 528-6511
jcohen@robwiley.com
ATTORNEYS FOR PLAINTIFFS

# I.
# SUMMARY

Summary Judgment should be granted for Plaintiff because the claim notes prove Fast Track Auto Claims Examiners did not have a primary job duty of administrative work. The claim notes are a running log of *everything* that the Fast Track Auto Claims Examiners actually did. This detailed and indisputable account forecloses any genuine issue of material fact; Defendant cannot "plainly and unmistakable" prove its affirmative defense that Plaintiff had a primary job duty of administrative work.

This Court compelled Defendant to produce all claim notes for 20 Fast Track Auto Claims Examiners; and then to identify any and all documents showing "case specific examples of how these employees exercise discretion in the course of their employment." [Docket No. 54, p. 1.] Defendant provided a whopping 652,303 claim notes. However, Defendant could only identify 340 case specific examples of claim notes in which it contends administratively exempt work was being done.[1]

Thus, only 0.000521 of the claim notes show administrative duties, according to Defendant's response.

What the claim notes do show is that Fast Track Auto Claims Examiners' work was limited to routine, simple, "fast tracked" fender benders with no bodily injury. Plaintiff engaged in no negotiation, and payments were not calculated by Plaintiff, but rather by appraisers. Defendant cannot "plainly and unmistakably"

---

[1] Plaintiff, of course, disputes that even these 340 tasks in fact show discretion.

prove its affirmative defense that Plaintiff's "primary job duty" is administrative work. Summary Judgment should be granted for Plaintiff.

## II.
## FAST TRACK AUTO CLAIMS EXAMINERS' PRIMARY JOB DUTY CANNOT BE ADMINISTRATIVELY EXEMPT WORK, BECAUSE DEFENDANT IDENTIFIES ONLY 0.000521 OF THE CLAIM NOTES AS SHOWING ADMINISTRATIVE WORK

Even assuming arguendo that Defendant has correctly identified 340 examples out of 652,303 notes, this is insufficient to show that Fast Track Auto Claims Examiners had a primary job duty of administrative work. Of the approximately 32,615 claim notes recorded on average by each Fast Track Auto Claims Examiner, Defendant has identified *an average of only 17 claim notes total for each examiner over three year period*. It is clear by the sheer volume of notes taken by these examiners that the notes accurately track practically every action the examiners took in the course of their job. Thus, how frequently an examiner engaged in any job duty is readily apparent by its frequency in the claim notes. Defendant has identified examples constituting 0.000521 of the total number of claim notes taken, clearly indicating Defendant's examples are outliers and not primary duties.

More specifically, the following chart demonstrates for each claims examiner, the number of examples of claim notes provided by Defendant as compared to the total number of claim notes taken by the examiner:

| Fast Track Examiner Name | Number of Claim Notes Defendant Alleges Are Exempt | Total Number of Claim Notes | Portion of Claim Notes Defendant Alleges Are Administrative |
|---|---|---|---|
| **Michael Estrada** | **37** | **25,320** | **0.001461** |
| Andrew Campbell | 14 | 28,190 | 0.000497 |
| William Coumbe | 18 | 20,591 | 0.000874 |
| Darren Cross | 24 | 44,556 | 0.000539 |
| Kathleen Cupchak | 16 | 28,142 | 0.000569 |
| Linda Deramo | 9 | 42,639 | 0.000211 |
| Brian Devenny | 26 | 25,959 | 0.001002 |
| Danielle Falcone | 17 | 37,251 | 0.000456 |
| Rita Granroth | 11 | 14,703 | 0.000748 |
| Timothy Griffin | 17 | 48,827 | 0.000348 |
| Noell Guillemin | 15 | 33,270 | 0.000451 |
| Shakelia Hayes | 17 | 29,601 | 0.000574 |
| Amanda Hernandez | 15 | 35,594 | 0.000421 |
| Shanna Hernandez | 17 | 52,134 | 0.000326 |
| Maliss Ippolito | 12 | 28,640 | 0.000419 |
| Vicki Manning | 12 | 30,092 | 0.000399 |
| Craig Ollek | 8 | 45,768 | 0.000175 |
| Karen Schramm | 18 | 38,076 | 0.000473 |
| Jeanme Shaskas | 18 | 21,486 | 0.000838 |
| John Smith | 19 | 21,464 | 0.000885 |
| TOTAL | 340 | 652,303 | |

In order for the administrative exemption to apply, performing exempt work must be the employee's primary job duty. 29 C.F.R. § 541.200(a). Work which constitutes such a miniscule proportion of the employee's time cannot be a primary duty. Job duties performed so rarely were not intended to be within the purview of the administrative exemption.

### III.
### FAST TRACK AUTO CLAIMS EXAMINERS' DUTIES MUST BE EVALUTED BY THE WORK THEY ACTUALLY DID. THE GENERAL JOB DESCRIPTION IS MISLEADING BECAUSE IT IS NOT TAILORED TO FAST TRACK AUTO CLAIMS EXAMINERS. THE CLAIM NOTES ARE THE MOST ACCURATE RECORD OF WORK PERFORMED, DEMONSTRATING THAT FAST TRACK CLAIMS EXAMINERS DO NOT MEET THE DOL'S STANDARD FOR EXEMPTION.

Fast Track Auto Claims Examiners only handled the most basic claims and are not the same as ordinary claims examiners. For this reason, a general job

description is misleading, and whether Fast Track Auto Claims Examiners are exempt must be determined based on the actual work they did. The claims notes demonstrate that exempt work was not their primary duty.

A.  <u>Defendant has a single job description for all claims examiners regardless of the type of claim. Such a general, non-specific, non-tailored job description cannot be competent summary judgment evidence of what Fast Track Auto Claims Examiners actually did.</u>

Defendant has produced only a general job description, which is designed to encompass all of the lower level claims examiners who work for Defendant. (Exh. 1). This includes American Specialty, Commercial Auto, General Liability, Professional Liability, Property, Subro, and Unknown claims groups. (Exh. 2). To pass off such a generalized job description as specifically applicable to Fast Track Auto Claims Examiners is misleading and disingenuous.

There is no competent summary judgment evidence that the generalized, untailored job description accurately reflects Plaintiff's actual job duties. This is particularly true because the generalized job description is belied by contemporaneous claim notes showing Plaintiff's actual work.

B.  <u>Fast Track Auto Claims Examiners recorded nearly every detail of their job in their claim notes. These claim notes demonstrate that Fast Track Auto Claims Examiners' primary duty was not exempt work as defined by the administrative exemption.</u>

The DOL has defined what types of responsibilities are exempt under the FLSA's administrative exemption. 29 C.F.R. § 541.203(a). Plaintiff did not perform any of these tasks, other than communicating with insureds and witnesses: [*See* Docket No. 39, 8-9; Docket No. 39-3, 146:3-11]. The claim notes produced by

Defendant, including the examples Defendant has identified, further prove that Fast Track Claims Examiners were not performing exempt work.

### 1. Fast Track Claims Examiners' primary duty was not to negotiate settlements

The fundamental reason why claims adjustors would be administratively exempt is because they negotiate claims; however, Fast Track Claims Examiners did not participate in negotiation. Rather, Fast Track Examiners received damage valuations from appraisers and simply paid the appraiser's estimate:

> Q: What do you mean by "negotiations"?
> A: We really didn't negotiate price of what we're going to pay for damages. I mean, there was no negotiations in that.

[Docket No. 39-2, 110:20-22].

> Q: And when you say that you didn't negotiate, what specifically do you mean?
> A: Whenever I get back an estimate, that's what I pay on the claim.

[Docket No. 39-2, 111:9-12]. Any instances deviating from this procedure are outliers that are too insignificant to be considered a primary duty. Indeed, the claim notes for all examiners are almost completely devoid of back-and-forth offers and counteroffers.

The compelled claim notes further demonstrate that claims examiners received an estimate from the appraiser and simply issued payment in that amount:

- "The IA [Independent Appraiser] est. [estimate] $14,612.48 less rec. dep of $1,134.33 Less insd $2,500 deduct = net $10,978.15Insd is in agreement with the ia est." (Exh. 3, PHCO11020527305, Granworth).

- Reviewed new recovery assignment. Note previous comments and our IA's 12/14/09 email to John Gartling. It does not look like this claim will be very

large. However, we do not have a reserve recommendation from our IA yet. I called John to see if he received a response to the email he sent to the IA today but John said he has not. He will let me know when he hears something. Subro investigation / pursuit will depend on the size of the loss. (Exh. 3, PINP09120436822, Smith) (emphasis added)

- "Recvd IV appr [appraisal] in the amnt of $1,827.19. Less $1K coll deduct, payment is $827.19. Paid." (Exh. 3, PHME09120438867, Campbell)

- "recd iv [insured vehicle] appr total $3462.11 less $1k ded and $260.15 tax = $2201.96 pd [paid] INS [insured] emailed report pd appr $120.50" (Exh. 3, PHNP11050553413, Falcone)

- "IV appr est for $ 1,307.15 - $1000 coll deduct = net $307.15 request payment authority" (Exh. 3, PHNP10120514932, Granroth)

- "OV [other vehicle] est [estimate] for $729.29 request payment authority" (Exh. 3, PHNP10120514678, Granroth)

Defendant alleges several claim notes relate to "settlement." However, this is just so much grasping at straws. Often the examiner is using the term "settled" instead of the term "paid." But there is no back-and-forth negotiation, the examiner "settled" the claim by simply paying the appraiser's estimate.

- "settled file for 8k, forwarded release to attorney for signing" (Exh. 3, PHVS10030454475, Devenny)

- "spoke to attorney advised of 100% settlement acv is $2921.36 less $150 salv if he retains, =$2,771.36" (Exh. 3, PHNP11060561005, Falcone)

- "Called and insured and discussed settlement. E mailed ccc with instructions where to send title. Issued partial pymt" (Exh. 3, PHFP11050550794, Schramm)

### 2. Valuation was determined by appraisers and not Fast Track Auto Claims Examiners

Fast Track Auto Claims Examiners do not valuate the cost of damage to vehicles, rather valuations were handled by an appraiser:

> Q: And part of what you had to determine is how much the damage was: correct?
> A: No. The appraiser would do that.
> Q: Well, in every situation, were you supposed to get an appraiser?
> A: Absolutely.

[Docket No. 39-2, 60:6-16]. In fact, the Fast Track examiners never even personally viewed the vehicles. [Docket No. 39-3, 104:8-11]. Rather, an assigned appraiser would provide the damage valuation. Then, the examiner would issue payment in the amount of the appraisal. [Docket No. 39-2, 71:11-19; 110:17-25; 111:9-18]. The regular use of appraisers is further demonstrated by the compelled claim notes:

- "rec'd ack. From IA: appraiser assigned." (Exh. 4, PHNP11060559583, Deramo).

- "ia assigned; reliable auto damage appraisals" (Exh. 4, PHCV12040626172, Deramo) (Original in all caps).

- "we will need to send an appraiser to investigate the loss." (Exh. 4, PHBA11020526441, Ollek)

Further, appraisers, and not the examiners, would make total loss determinations [Docket No. 39-2, 77:10-77:13] (Q: And did you have to make a determination as to whether or not the car had actually been totaled? A: The appraiser usually does that."):

- "Rec'd IV appr [appraisal]: 02' Dodge Caravan, VIN[######], $6861.75 – TOTAL LOSS There will be additional damage found during repair. NADA is $6775. Will run ACV on vehicle, called and spoke to Rad to advise that IV is a total loss." (Exh. 4, PHFP110101521737, Cupchak).

- "Matt [Independent appraiser] said that the destruction was pretty much 'total' and there is really nothing left but the concrete pilings." (Exh. 4, PHCA10060474693, Smith)

### 3. Fast Track Auto Claims Examiners followed a rote procedure to allocate liability

Fast Track Auto Claims Examiners did not have to use critical thinking or discretion to make liability determinations. [Docket No. 39-2, 61:4-65:5]. An established checklist was provided and the claims examiners followed the list in allocating liability. *Id.* In the rare event that liability was in disputed, Fast Track Auto Claims Examiner followed a three-step process:

**Step 1: Obtain the police report and follow the police's liability determination.**

> Q: Did you have ever have situations where the insured said it wasn't their fault?
> A: Yes.
> *********
> Q: And what happened; what were you supposed to do then?
> A: I'd talk to the claimant and see their side of the story. A lot of times there's a police report, which we would go by that, the police report.

[Docket No. 39-2, 61:12-22].

**Step 2: If there is no police report, contact witnesses. The side with the most witnesses is not liable.**

> Q: So who decides in that situation if the – once you talked to the independent witness, what do you do then?
> A: Whichever they corroborate whose story, that's who I go with. If the witness says the insured backed into the claimant's car, then – and the claimant is saying that the insured backed into his car, you got two people saying the same thing, then that's who you go with.

[Docket No. 39-2, 64:24-65:4].

**Step 3: If there are no witnesses or an equal number of witnesses, find in favor of the insured.**

> Q: And what would you do if there was a disagreement between two parties about what happened?
> A: Conflicting statements and there's no independent witnesses, then we would side with our insured.

[Docket No. 39-2, 62:6-21].

The claim notes produced by Defendant further display this liability formula:

- spoke to ins, kennel mgr was in accident. driving circle, iv was not able to stop when ov was coming around. she stated this was thier fault, does not want to pursue, for iv. no injuries (Exh. 5, PHNP11050552842, Falcone) (Insured admits fault) (Original in all caps).

- called ins, (ivd) Larry he is director. [###-###-####] 2 was stop he pulled out and saw ov coming, ov tried to swerve, ov did not have a stop sign. he stated his fault (Exh. 5, PHME11060556417, Falcone) (Insured admits fault) (Original in all caps).

- "PR has no contrib. factors for either party," (Exh. 5, PHME11010520897, S. Hernandez).

- "I had statementized a very credible IV operator and that his version—in tandem with Police Officer Omar Smith—would stand up m [claim note cut off]. (Exh. 5, PHNP10070481914, Coumbe)

**4. Coverage was determined by a simple check of VIN numbers**

When Fast Track Examiners were first assigned a claim, they completed the most simplified version of a "coverage review." This entailed checking if the damaged vehicle's VIN number was contained in the policy. [Docket No. 36-1, ¶4(c)]. The claim notes produced by Defendant confirm this basic check:

- "coverage confirmed for a 2003 Ford, VIN [####], vehicle # 3 on policy, 1k deductible on collision." (Exh. 6, PHNP11010521373, Devenny).

- coverage confirmed for a 2010 Ford econoline, VIN [####], vehicle # 18 on policy, 1k deductible on collision (Exh. 6, PHFP11010519341, Devenny)

- Connecticut policy and loss. confirmed coverage for 2006 ford with vin [#####] at $1,000,000 and $1000 coll ded. (Exh. 6, PHME10010440878, Coumbe) (Original in all caps).

### 5. Fast Track Claims Examiners did not make legal decisions

Fast Track Claims Examiners did not make litigation decisions. [*See* Docket No. 39-3, 54:25-55:8]. Their interactions with attorneys were limited to being kept informed of the progress in litigation. Claim notes regarding legal issues, including comparative negligence or state law, are merely restatements from conversations with attorneys:

- "spoke to DC [defense counsel] hold up in filing discovery is due to defendant switching attorneys, discovery date set to begin on 1/31/10, DC advises his will send status in late Feb early March." (Exh. 7, PHVS10110511697, Devenny).

- Contacted defense counsel Brent [last name] ([###-###-####]), advised that DJ action likely best outcome and defense counsel has not been contacted from P/H or P/H attorney to date. (Exh. 7, PHCV11040544961, Cross).

## V.
## CONCLUSION

Common sense should prevail: Fast Track Auto Claims Examiners were a discreet division devoted to straightforward claims that could be quickly and easily processed without discretion. Defendant has the burden to "plainly and unmistakably" prove that administrative work was Plaintiff's "primary job duty." Given that Defendant has failed to identify more than 0.000521 of claim notes showing administrative work, summary judgment for Plaintiff must be granted.

Respectfully submitted,


*/s/ Jessica Cohen*
Robert J. Wiley
Texas Bar No. 24013750
*Board Certified in Labor and Employment Law*
*by the Texas Board of Legal Specialization*
Jessica Cohen
Texas Bar No. 24082838

ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone: (214) 528-6500
Facsimile: (214) 528-6511
jcohen@robwiley.com
ATTORNEYS FOR PLAINTIFFS


CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2013, I served a copy of this Supplemental Brief of Plaintiff's Motion for Summary Judgment on counsel for Defendant via the Court's CM/ECF system.

*/s/ Jessica Cohen*