# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ESTRADA, individually and on behalf of others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) MAGUIRE INSURANCE AGENCY, ) INC., ) ) Defendant. ) ) | CIVIL ACTION NO. 12-604<br><br>FILED ELECTRONICALLY |

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION FOR CONDITIONAL CERTIFICATION</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ......................................................................................................................2

A.　　Plaintiff Must Meet A Heightened Standard of Review..........................................2

B.　　Defendant's "Case Specific Examples" Establish That There Was No Common Unlawful Policy of Misclassifying Claims Examiners ...........................3

C.　　Defendant's Case Specific Examples Establish That Claims Examiners Are Not "Similarly Situated" Because There Are Considerable Differences Between and Among Claims Examiners Handling Fast Track Auto Claims ..................................................................................................8

CONCLUSION.................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bond v. Nat'l City Bank of Pa.*,
  No. 05 CV 0681, 2006 WL 1744474 (W.D. Pa. June 22, 2006) ..............................................7

*Bramble v. Wal-Mart-Stores, Inc*,
  No. Civ. A 09-4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) ..........................................4

*Khan v. Airport Mgmt. Servs., LLC*,
  No. 10 Civ. 7735, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ...........................................4

*McAllister v. Transamerica Occidental Life Ins. Co.*,
  325 F.3d 997 (8th Cir. 2003) ....................................................................................................6

*Robinson-Smith v. Gov't Emps. Ins. Co.*,
  590 F.3d 886 (D.C. Cir. 2010) .................................................................................................6

*Talbert v. American Risk Ins. Co.*,
  405 F. App'x 848 (5th Cir. 2010) .............................................................................................6

**PRELIMINARY STATEMENT**

Like Plaintiff's previous submissions, his supplemental brief in support of conditional certification fails to advance any coherent argument as to how: (i) Defendant had a common unlawful policy of misclassifying Claims Examiners who worked on "Fast Track Auto" claims; or (ii) Plaintiff was "similarly situated" to these other Claims Examiners. After Defendant's production of 60 pages made up of 303 "case specific examples" of how 19 other Claims Examiners exercised discretion and independent judgment in carrying out their job duties, there can be no doubt that Defendant properly classified its Claims Examiners as exempt.

It is also clear that Plaintiff's self-serving description of his alleged duties and responsibilities, which he described as making him akin to an automaton, is at odds with the experiences of every other Claims Examiner. In addition, there are significant differences between and among each of the other 19 Claims Examiners handling "Fast Track Auto" claims. A careful examination of those 303 examples demonstrates that, although each Claims Examiner may have had the same ultimate goals – to process, investigate, analyze and ultimately resolve insurance claims – the manner in which they went about performing their job and exercising an inordinate amount of discretion and independent judgment varied significantly from day to day, from claim to claim, and from Claims Examiner to Claims Examiner. This makes it impossible for the Court to analyze any one particular Claims Examiner's exempt status without carefully reviewing all of his or her claims notes and making a fact intensive and individualized determination, an inquiry that is particularly unsuited for adjudication on a collective basis.

Plaintiff, amazingly, does not address these "case specific examples." He does not cite to them in his supplemental brief. He does not dispute their accuracy. He does not dispute that they reflect actual, contemporaneous examples of how each Claims Examiner exercised

discretion in myriad ways. And Plaintiff makes no attempt to argue that these examples demonstrate that he was "similarly situated" to the other Claims Examiners (doing so, of course, would necessarily concede that Plaintiff was also exercising discretion and therefore exempt).

Plaintiff ignores these case specific examples provided by Defendant – supposedly, the entire purpose behind Plaintiff's motion to compel and this Court's Order – and instead points to a very small number of unrelated claims notes that allegedly show certain superficial similarities between Plaintiff and the other Claims Examiners. This is like comparing a mouse and an elephant based solely on the fact that both have ears, walk on all fours, and eat food, while refusing to acknowledge the 1,000 other ways in which these animals differ significantly.

Here, the 300+ case specific examples are the elephant in the room that Plaintiff cannot close his eyes and ignore. These examples demonstrate that, contrary to Plaintiff's claims, other Claims Examiners working on "Fast Track Auto" claims routinely exercised discretion in carrying out their job duties and did so in very different ways both from each other and from Plaintiff. Therefore, there is no amount of evidence capable of establishing that Plaintiff was "similarly situated" to these other Claims Examiners with respect to a common unlawful policy, and Plaintiff cannot carry his burden of proof so as to warrant conditional certification.

## ARGUMENT

### A.   Plaintiff Must Meet A Heightened Standard of Review

This is essentially Plaintiff's third attempt to conditionally certify a nationwide class. Plaintiff first filed a motion for conditional certification early in the litigation before any discovery had occurred. At that point, Plaintiff's burden was minimal, and he needed to make only a "modest factual showing" that he was similarly situated to other Claims Examiners

working on Fast Track Auto claims. Nevertheless, Plaintiff's first motion had no evidentiary support beyond pure speculation and was denied by the Court.

Subsequently, the parties completed all discovery concerning both Plaintiff's individual claim and class-wide issues. This included interrogatories, requests for admission, extensive document production, and depositions. In January 2013, Plaintiff again moved for conditional certification, and again attempted to rely on the low burden that is typically associated with motions filed when only minimal discovery has taken place and there is little record beyond the allegations in the complaint and affidavits. At the same time, Plaintiff filed a motion to compel, which this Court granted in part, seeking additional class-wide discovery into the particular duties of each of the other Claims Examiners who worked on Fast Track Auto claims.

Defendant has now produced an additional 100,000 pages worth of evidence, made up of approximately 650,000 claims notes detailing the day to day activities of 19 other Claims Examiners between 2010 and 2012. Defendant has also provided 303 "case specific examples" – taken from those claims notes – which demonstrate that the 19 other Claims Examiners were exercising discretion and independent judgment (*See* Exhibit A). This case is therefore particularly unsuitable for a preliminary stage review where Plaintiff's burden is low, and instead this Court should apply a heightened standard of review which takes into account all of the relevant evidence in the record, and not just the evidence that Plaintiff has selectively submitted. Such an approach is entirely consistent with how other district courts have analyzed conditional certification motions following extensive discovery. (*See, e.g.,* Doc. No. 43, p. 10-11.)

**B.     Defendant's "Case Specific Examples" Establish That There Was No Common Unlawful Policy of Misclassifying Claims Examiners**

Plaintiff cannot point to a single, common, unlawful policy applicable to all Claims Examiners that supports his claim that they were misclassified. Not only do Defendant's job

descriptions demonstrate that Claims Examiners were expected to perform duties consistent with the administrative exemption, including the Department of Labor's extensive guidance on insurance claims examiners and the six Courts of Appeals decisions holding that claims examiners are exempt as a matter of law, but the recently produced claims notes for all of the Claims Examiners on the list who Plaintiff claims are similarly situated also confirm that they all are properly classified. (Copies of the job descriptions are attached as Exhibit B; *see also* Exhibit A). Other common evidence also supports the exempt status of Claims Examiners, including Defendant's Claim Handling Guidelines and the testimony of William Benecke, Defendant's Executive Vice President of Claims.

Faced with mountains of common evidence which fail to support his claim, Plaintiff posits that conditional certification is appropriate because everyone shared the same (or similar) job title and were all identified in a particular internal report as having worked on "Fast Track Auto" claims. However, it is well-established that Plaintiff must do more than simply rely on the fact that there was a similar job title or that all were classified as exempt. Plaintiff must introduce actual evidence that other Claims Examiners are "similarly situated" to him because they performed the same duties, in the same manner, and that they were actually misclassified. *See, e.g., Bramble v. Wal-Mart-Stores, Inc*, No. Civ. A 09-4932, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011). This is especially important where a plaintiff does not attack the company's formal policies (which might otherwise provide "common" evidence), but instead asserts that he and others were not given duties in compliance with those policies. *See, e.g., Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735, 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011).

Here, Plaintiff claims that he personally was misclassified because he performed routine, clerical tasks with little or no discretion, and did not actually perform any of the duties or

responsibilities outlined in the job description and expected of him by senior management. Plaintiff argues that every single other claims examiner who worked on Fast Track Auto claims were similarly situated because they also performed similar (non-exempt) work, contrary to their job descriptions and management's expectations. This argument fails for several reasons.

First, as set forth in great detail in Defendant's summary judgment motion and opposition to Plaintiff's summary judgment motion, the record evidence establishes that, contrary to his own self-serving testimony and affidavit, Plaintiff was performing exempt work. *See*, *e.g.*, Doc. No. 38-1, pp. 14-22 and Doc. No. 38-2, ¶¶15-66. While Plaintiff makes much of the fact that *some* of his work also involved routine tasks and non-exempt duties, the administrative exemption only requires that an employee's primary duties *include* the exercise of discretion and independent judgment. Remarkably, Plaintiff has never attempted to dispute or distinguish any of this "other" evidence showing how he exercised discretion and independent judgment.

Second, as demonstrated in its submission of "case specific examples" (Exhibit A), each of the other 19 Claims Examiners who worked on Fast Track Auto claims were also routinely exercising discretion and independent judgment and performing exempt work consistent with Defendant's job description and expectations, and DOL guidance and federal case law governing the exempt status of insurance Claims Examiners. Thus, for example, they routinely: (i) determined coverage; (ii) investigated claims, including reviewing and analyzing documentary evidence, photographs and reports; (iii) interviewed witnesses and determined credibility; (iv) made liability determinations and recommendations, including assigning and apportioning fault;

(v) analyzed and applied state law; (vi) established and amended reserves; (vii) interacted with attorneys and participated in litigation; and (viii) negotiated and settled claims.  *See* Exhibit C.[1]

Incredibly, Plaintiff ignores this evidence entirely.  Regardless, the case specific examples establish, conclusively, that the other 19 Claims Examiners who handled Fast Track Auto claims performed their work in ways which <u>included</u> the exercise of discretion and independent judgment.  This makes them both exempt as a matter of law, and arguably different than Plaintiff, who claims he never exercised discretion and independent judgment, and never performed exempt duties.[2]

The remainder of Plaintiff's supplemental brief is merely a red herring.  Plaintiff provides a small number of examples in which other Claims Examiners: (i) performed "rudimentary" coverage review; (ii) used appraisers to valuate damage and make total loss determinations: and (iii) paid out claims based on an appraiser's estimate.[3]  But Defendant has never disputed that Claims Examiners perform coverage reviews or use appraisers to evaluate damage and assist in making total loss determinations.  This is simply irrelevant to the question of whether they *also* perform other duties and responsibilities that include the exercise of discretion and independent judgment.  *See, e.g., Talbert v. American Risk Ins. Co.*, 405 F. App'x 848, 854 (5th Cir. 2010) (holding that an assistant claims adjuster was exempt where *part* of his job involved exercising discretion); *Robinson-Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 894 (D.C. Cir. 2010)

---

[1] For ease of reference, attached as Exhibit C are "case specific examples" from Exhibit A organized into each of the eight categories described above.

[2] As set forth in Defendant's summary judgment papers, the record establishes that Plaintiff was also exercising discretion and performing exempt duties. *See*, *e.g.*, Doc. No. 38-1, pp. 14-22 and Doc. No. 38-2, ¶¶15-66.

[3] Plaintiff also asserts that "the putative class members all followed a checklist for allocating liability."  While Plaintiff provides five examples of claims notes that refer to a police report, or where the insured admitted fault, this does not establish that there was a "checklist" for allocating liability, particularly where none of the examples actually mentions a "checklist." In any event, Mr. Benecke's testimony made clear that there is no such checklist or routine, *see*, *e.g.*, Doc. No. 44, pp. 16-21, and the 303 claims notes in Exhibit A also demonstrate that each claims examiner determined liability based on their own knowledge, experience, and discretion, and not on a "checklist."

(holding that an auto damage adjuster is exempt where their primary duty "includes" discretion, even if "the vast majority" of their work does not); *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1002 (8th Cir. 2003) (holding that an insurance claims coordinator was exempt where their duties "include" work requiring the exercise of discretion and refusing to determine the percentage of time spent on discretionary activities).

Similarly, there is no dispute that, on occasion, a Claims Examiner will pay out a claim based on an appraiser's estimate. There is also no dispute that a Claims Examiner will often have to negotiate the value of a claim, and that the amount paid out may be less than the original estimate or more, depending on a variety of factors, including the Claims Examiner's ability to effectively negotiate and reach a settlement. Defendant provided over 80 examples of Claims Examiners actively engaging in negotiations with individual claimants, other insurance companies, and even lawyers representing third parties. *See* Exhibit C, pp. 36-54. Plaintiff, of course, simply ignores all of this evidence and asks the Court to do the same.

Taken together, Plaintiff cannot possibly demonstrate that Defendant had a common unlawful policy of misclassifying its Claims Examiners. Moreover, to determine whether any one particular Claims Examiner was exempt or misclassified the Court would have to engage in a fact-intensive analysis of that particular Claims Examiner's duties and responsibilities, including their claims notes. This type of individualized analysis makes Plaintiff's conditional certification motion wholly inappropriate, and federal courts have routinely denied conditional certification in similar circumstances. *See, e.g., Bond v. Nat'l City Bank of Pa.*, No. 05 CV 0681, 2006 WL 1744474, at *4 (W.D. Pa. June 22, 2006); Doc. 43 at p. 17-19.

7

C.     **Defendant's Case Specific Examples Establish That Claims Examiners Are Not "Similarly Situated" Because There Are Considerable Differences Between and Among Claims Examiners Handling Fast Track Auto Claims**

Consistent with Mr. Benecke's testimony and the Benecke and Terry Declarations submitted in opposition to Plaintiff's first motion for conditional certification, the case specific examples submitted by Defendant are further evidence that there are considerable differences between and among Claims Examiners handling Fast Track Auto claims (and that Defendant's Claims Examiners are properly classified as exempt).  This also undermines Plaintiff's assertion that he is "similarly situated" to all other Claims Examiners.  Thus, for example:

- Several Claims Examiners handle claims outside of the "Fast Track Auto" process, including claims related to home property damage.  (*See* Exhibit A – Falcone, Granworth, Smith).  Plaintiff testified that he exclusively handled claims assigned to him through the Fast Track Auto process.  (Doc. No. 39-4: Estrada Decl. ¶ 2)

- Most Claims Examiners handle claims involving bodily injury, which Plaintiff testified he never handled.  (*See* Exhibit A – Campbell, Coumbe, Cross, Cupchak, Devenny, Falcone, Griffin, Guillemin, Hayes, A. Hernandez, Ippolito, Schramm; Doc. No. 39-4: Estrada Decl. ¶ 4(a), Doc. No. 38-6: Estrada Tr. 43:16-21, 55:5-15)

- Several Claims Examiners handle claims involving classic or luxury vehicles, called "Grundy" claims, which Plaintiff testified he had never even heard of.  (*See* Exhibit A – Cross, Devenny, Griffin, Ippolito, Shaskas; Doc. No. 38-6: Estrada Tr. 42:3-9)

- Claims Examiners have very different levels of independent settlement authority, with many routinely settling claims above $10,000, and at least one routinely settling claims in excess of $100,000.  (*See* Exhibit A – Campbell, Cross, Cupchak, Devenny, Granworth, Hayes, Ippolito, Manning, Schramm, Smith).  Plaintiff testified that his settlement authority was always $10,000 and that very few were claims were ever worth more than $10,000.  (Doc. No. 39-4: Estrada Decl. ¶ 10; Doc. No. 38-6: Estrada Tr. 69:2-5)

- Most Claims Examiners routinely interacted with attorneys – with both Defendant's in-house and outside counsel, and with attorneys representing claimants and other adverse parties.  (*See* Exhibit A – Campbell, Coumbe, Cross, Cupchak, Devenny, Falcone, Granworth, Griffin, Guillemin, Hayes, A. Hernandez, S. Hernandez, Ippolito, Schramm, Shaskas, Smith).  Plaintiff testified that he only interacted with attorneys when he needed permission to see their client's vehicle.  (Doc. No. 38-6: Estrada Tr. 82:18-24)

- Several Claims Examiners actively participated in litigation and/or mediation.  (*See* Exhibit A – Coumbe, Cross, Cupchak, Devenny, Falcone, Griffin, S. Hernandez,

8

Shaskas, Smith). Plaintiff testified that he did not participate in litigation. (Doc. No. 39-4: Estrada Decl. ¶ 11)

- Claims Examiners work in different offices, reporting to different supervisors, and are often responsible for very different geographic areas of the country. This means that Claims Examiners are responsible for analyzing and applying very different state laws, including those states that have "comparative negligence" laws which require them to make determinations of liability and apportion fault to each driver. (*See* Exhibit A – Campbell, Coumbe, Cross, Cupchak, Devenny, Guillemin, Hayes, A. Hernandez, S. Hernandez, Ippolito, Manning, Schramm, Shaskas).

Finally, it is clear from the claims notes that every claim presents a unique set of facts and circumstances, and that each Claims Examiner approaches claims in very different ways, and document their daily interactions with varying levels of detail and specificity. Some include their own personal opinions and comments (about the facts, witnesses, credibility, strategy, etc), while others stick primarily to the facts. This is apparent from the many varying claims notes describing of how each Claims Examiner values a claim and then negotiates a settlement with their insured clients, third party claimants, other insurance companies, and attorneys. Some ran recommendations by their supervisor, while most made all settlement decisions on their own; many attempted to reach settlements below the claim's reserve, often playing hardball with opposing counsel or claimants, while others were less successful negotiators and often paid at, or even above, the reserve price or estimate.[4] (*See* Exhibit C pp. 36-54)

Although Plaintiff tries to lump all "Fast Track Auto" Claims Examiner into the same bucket, he does not even attempt to address any of the differences outlined above. These differences offer further evidence that Plaintiff is not "similarly situated" to other Claims Examiners, and demonstrate why this Court may not rely on Plaintiff's self-serving statement in

---

[4] Plaintiff testified that he did not engage in any negotiations (which is contradicted by his actual claims notes, performance reviews, and resume). (Doc. No. 39-4: Estrada Decl. ¶ 8; Doc. No. 39-2: Estrada Tr. 110:17 – 111:12)

9

his Declaration that "[b]ased on my experiences and/or observations, the job duties of all fast track Claims Examiners were nearly identical." (Doc. No. 36-3, ¶ 2)

## **CONCLUSION**

For all of the foregoing reasons, and as set forth in Defendant's Opposition to Plaintiff's Motion for Conditional Certification and Judicial Notice, Defendant respectfully submits that the Court should deny Plaintiff's second motion for conditional certification.

Dated: New York, New York                                    PROSKAUER ROSE LLP

December 23, 2013

/s/ Joshua F. Alloy

Elise M. Bloom (*pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
ebloom@proskauer.com

Joshua F. Alloy (*pro hac vice*)
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, D.C. 20004
(202) 416-5876
jalloy@proskauer.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have caused a true and correct copy of the foregoing to be served on all counsel of record this 23rd day of December, 2013, by operation of the Court's CM/ECF electronic filing system.

By: /s/ Joshua F. Alloy