## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL ESTRADA, individually and on behalf of others similarly situated, | ) ) ) ) | CIVIL ACTION NO. 12-604 |
| Plaintiff, | ) ) | FILED ELECTRONICALLY |
| v. | ) ) | |
| MAGUIRE INSURANCE AGENCY, INC., | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................................1

ARGUMENT ........................................................................................................................................2

    A.  Plaintiff Intentionally Misrepresented Defendant's Supplemental
        Production Of "Case Specific Examples" ............................................................................2

    B.  Even If Relevant, The Supplemental Claims Notes Provide
        Further Support That Defendant Classified Plaintiff As An
        Administratively Exempt Employee ....................................................................................4

CONCLUSION ...................................................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*McAllister v. Transamerica Occidental Life Ins. Co.,*
325 F.3d 997 (8th Cir. 2003) ...........................................................................................5

*Robinson-Smith v. Gov't Emps. Ins. Co,*
590 F.3d 886 (D.C. Cir. 2010) ..........................................................................................5

*Talbert v. American Risk Ins. Co.,*
   405 F. App'x 848 (5th Cir. 2010) ...................................................................................5

**OTHER AUTHORITIES**

Fair Labor Standards Act,
   29 C.F.R. § 541.200, et seq..........................................................................................1, 5

**PRELIMINARY STATEMENT**

Plaintiff Michael Estrada's supplemental summary judgment brief grossly
mischaracterizes the record and sets forth a series of irrelevant and/or specious arguments in an
attempt to avoid dismissal of his Complaint. Ultimately, Plaintiff cannot overcome the
overwhelming and undisputed evidence demonstrating that his primary duties, like the primary
duties of every other Claims Examiner handling "Fast Track Auto" claims, <u>included</u> the exercise
of discretion and independent judgment and therefore he was properly classified as exempt from
overtime under the Fair Labor Standards Act. [1]  As a result, this Court should grant Defendant
Maguire Insurance Agency, Inc.'s motion for summary judgment, deny Plaintiff's motion for
summary judgment, and dismiss Plaintiff's Complaint with prejudice.

As an initial matter, Plaintiff falsely claims that the Court ordered Defendant to <u>first</u>
produce all claims notes for other Claims Examiners handling "Fast Track Auto" claims and <u>then</u>
produce "any and all" case specific examples of how these employees exercised discretion in the
course of their employment.  Plaintiff goes on to argue, disingenuously, that Defendant was
"only" able to identify 340 examples (37 for Plaintiff and 303 related to other Claims Examiners)
showing that Claims Examiners exercised discretion and independent judgment, out of 652,303
total claims notes – i.e., that Claims Examiners exercised discretion only .0005% of the time.

In fact, this Court only ordered Defendant to provide an unspecified number of <u>examples</u>
of how other Claims Examiners exercised discretion, along with "any and all" supporting
documentation for those examples, but certainly did not order Defendant to provide every single

---

[1] Plaintiff wrongly asserts that Defendant must establish that the exemption applies "plainly and unmistakably," s*ee*
Doc. No. 58, p. 2, but the burden of proof is by a preponderance of the evidence.  *See* Doc. No. 49, p. 1 n. 1.

instance of discretion.[2]   *See* Doc. No. 54.  Defendant ended up providing over 60 pages of examples, based on only a cursory review of over 600,000 claims notes, and could easily have provided many more pages of additional examples had it been necessary.  Defendant then voluntarily produced <u>all</u> claims notes for those 19 Claims Examiners, and not just the ones that supported its "case specific examples," precisely to avoid this type of specious argument.

Further, Plaintiff fails to show how the claims notes – reflecting the duties that other Claims Examiners performed on a day-to-day basis – are relevant to the two pending summary judgment motions.  Both motions only relate to Plaintiff's exempt status, and turn primarily on Plaintiff's job duties and whether those duties "include" the exercise of discretion.  To the extent the claims notes examples relating to other Claims Examiners are probative, however, they support Defendant's motion for summary judgment.

Specifically, the duties documented in these supplemental claims notes demonstrate that other Claims Examiners regularly exercised significant discretion and independent judgment, and serve as another independent basis for contradicting Plaintiff's selective statement of facts, along with Plaintiff's claims notes, Plaintiff's deposition testimony, Defendant's job descriptions, Defendant's Claims Handling Guidelines, Plaintiff's resume, Plaintiff's job evaluations, and William Benecke's (Maguire's Executive Vice President of Claims) testimony.

## <u>ARGUMENT</u>

### A.   **Plaintiff Intentionally Misrepresented Defendant's Supplemental Production Of "Case Specific Examples"**

On November 1, 2013, this Court issued an Order instructing Defendant to provide Plaintiff with certain "additional limited discovery [concerning 19 other Claims Examiners who

---

[2] During oral argument on October 31, 2013, the Court suggested that 10-20 total examples of discretion and independent judgment for all Claims Examiners might be reasonable, and expressly noted that only "very limited" discovery would be allowed.  *See* Exhibit A, 20:6-16, 40:11-41:12.  Defendant ended up providing more than 300 claims notes entries precisely because it was so difficult to choose from among all of the many possible examples.

worked on "Fast Track Auto Claims"] on or before December 2, 2013." *See* Doc. No. 54.  As part of this supplemental discovery, the Court ordered that:

> "Defendant shall also provide Plaintiff with a brief job description for these [19] employees, including their duties and day to day activities, as well as case specific <u>examples</u> of how these employees exercise discretion in the course of their employment. Defendant shall also produce any and all documents that support these specific <u>examples</u> of discretion."

*Id.* at p. 1. (emphasis added).

On December 2, 2013, in accordance with the Court's Order, Defendant sent a letter to Plaintiff enclosing the additional limited discovery.  *See* Exhibit B.  As noted in the letter, and consistent with the Court's Order that Defendant produce "case specific examples," Defendant provided a 60-page document consisting of 303 "case specific <u>examples</u>, taken [verbatim] from claims notes entries for each of the 19 Claims Examiners, demonstrating how they exercised discretion and independent judgment in the course of their employment as Claims Examiners…" *Id.* at p. 2 (emphasis added); *see also* Exhibit C.[3]  Further, going beyond the Court's Order that Defendant produce "support [only for] these specific examples of discretion," Defendant produced "a CD containing the [entire] 2010-2012 claims note entries for the relevant 19 employees."  *See* Exhibit B, p. 2.

The claims notes examples that Defendant provided to Plaintiff were just that – examples. They did not encompass nor could they possibly be interpreted as encompassing anywhere close to the universe of claims notes entries showing all instances of discretion and independent judgment.  While 60 pages worth of examples is a significant amount of evidence, it is merely representative of the larger pool of over 600,000 claims notes.[4]

---

[3] Exhibit C is a redacted version (with personally identifying information such as phone numbers and vehicle identification numbers removed) of the 60-page document that Defendant sent to Plaintiff on December 2, 2013.

[4] Defendant can provide the Court with additional examples and/or copies of all of the 600,000+ claims notes.

3

Plaintiff's attempt to "spin" the numbers and his suggestion that by providing over 300 examples of discretion and independent judgment Defendant was somehow conceding that this is the entire universe and that only .0005% of the over 600,000 claims notes include discretion and independent judgment is untrue and must be disregarded.  Plaintiff's assertion, based on the same flawed logic, that Defendant could "only" provide 37 examples of how Plaintiff exercised discretion is similarly off base.

**B.      Even If Relevant, The Supplemental Claims Notes Provide Further Support That Defendant Properly Classified Plaintiff As An Administratively Exempt Employee**

As an initial matter, it is not clear how claims notes describing the day-to-day duties of 19 Claims Examiners are relevant to the issues before the Court on summary judgment, which relate <u>solely</u> to Plaintiff's duties/responsibilities and Plaintiff's exempt classification.  *See*, *generally*, Doc. Nos. 38, 42, 49, 39, 44, and 46.  To the extent these additional claims notes are relevant, however, they represent additional evidence that all Claims Examiners handling "Fast Track Auto" claims exercised discretion and independent judgment and performed the types of duties that the Department of Labor and the five Circuit Courts of Appeals have held satisfy the administrative exemption.  As discussed in further detail below, *inter alia*, the supplemental claims notes show that Claims Examiners regularly: (i) determined coverage; (ii) investigated claims, including reviewing and analyzing documentary evidence, photographs, and reports; (iii) interviewed witnesses and determined credibility; (iv) made liability determinations and recommendations, including assigning and apportioning fault; (v) analyzed and applied state law; (vi) established and amended reserves; (vii) interacted with attorneys and participated in litigation; and (viii) negotiated and settled claims.  *See* Exhibit D. [5]

---

[5] For ease of reference, attached as Exhibit D are "case specific examples" from Exhibit C organized into each of the eight categories described above.

Notably, Plaintiff's supplemental brief largely avoids addressing the duties identified above or any of the 303 case specific examples of discretion and independent judgment that Defendant produced.  Instead, Plaintiff cites 30 examples of his own which purportedly show that the 19 other Claims Examiners did not negotiate settlements, did not render valuation determinations, followed a rote procedure to allocate liability, determined coverage by simply checking VIN numbers, and did not make legal decisions.  Doc. No. 58, pp. 5-10.

However, a comparison of Plaintiff's 30 examples with the 303 examples that Defendant produced demonstrates that Plaintiff's argument is both factually inaccurate and legally flawed. Plaintiff's position is legally flawed because it relies on the apparent belief that as long as he can show that he performed <u>some</u> non-exempt duties, then the legal inquiry ends there, regardless of the exempt duties that he (and every other Claims Examiner) performed.  Thus, Plaintiff barely even addresses the overwhelming evidence that Defendant has already provided showing that Plaintiff (and every other Claims Examiner) regularly exercised discretion and independent judgment.  *See, e.g.*, Doc. No. 38-1, pp. 14-22 and Doc. No. 38-2, ¶¶15-66.

Contrary to Plaintiff's misguided interpretation of the law, the applicable inquiry for this Court is whether Plaintiff's "primary duty <u>includes</u> the exercise of discretion and independent judgment with respect to matters of significance" and does not depend on an analysis of how much time is spent performing non-exempt duties.  *See* 29 C.F.R. §541.200(a)(3) (emphasis added); *see also Talbert v. American Risk Ins. Co.*, 405 F. App'x 848, 854 (5th Cir. 2010) (holding that an assistant claims adjuster was exempt where *part* of his job involved exercising discretion); *Robinson-Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 894 (D.C. Cir. 2010) (holding that an auto damage adjuster is exempt where their primary duty "includes" discretion, even if "the vast majority" of their work does not); *McAllister v. Transamerica Occidental Life*

5

*Ins. Co.*, 325 F.3d 997, 1002 (8th Cir. 2003) (holding that an insurance claims coordinator was exempt where their duties "include" work requiring the exercise of discretion and refusing to determine the percentage of time spent on discretionary activities).

Like virtually all legally exempt employees, it is undisputed that Plaintiff performed non-exempt duties at times.  Thus, for example, for the purposes of the pending summary judgment motions, Defendant does not dispute that valuation damages and total loss determinations were generally determined by appraisers or that initial coverage determinations included checking the VIN number to verify whether the vehicle was covered by the policy.[6]

In addition to these non-exempt duties, however, Defendant asserts and has provided undisputed evidence demonstrating that Plaintiff's primary duties included the exercise of discretion and independent judgment in numerous significant other ways.  *See, e.g.*, Doc. No. 38-1, pp. 14-22 and Doc. No. 38-2, ¶¶15-66; *see also, e.g.*, Exhibit C.  For the most part, Plaintiff makes little or no attempt to contest Defendant's ample evidence, including the supplemental claims notes that reinforce that Claims Examiners were performing exempt work.[7]  And, even where Plaintiff does finally directly address some of Defendant's evidence, Plaintiff either fails to provide any evidentiary support or mischaracterizes the claims notes.  As set forth below and more exhaustively in the attached Exhibits C and D, the only fair reading of the supplemental claims notes shows that Claims Examiners frequently negotiated settlements and engaged in back-and-forth offers and counter-offers, settled claims for amounts below and above damage

---

[6] As explained in Defendant's opposition to Plaintiff's motion for summary judgment, "coverage" determinations involve two separate steps.  First, whether the vehicle involved in the accident is covered by the particular policy and, second, whether the accident itself is covered by the policy.  The second type of coverage determination requires a factual investigation and interpretation of the policy.  *See* Doc. No. 44, pp. 14-16.

[7] It bears repeating that Plaintiff has also altogether failed to distinguish the decisions from five Courts of Appeals that are directly on point and that have all found that claims adjusters/examiners like Plaintiff are administratively exempt as a matter of law.  *See, e.g.*, Doc. No. 38-1, pp. 5-13, Doc. No. 49, pp. 1-9, and Doc. No. 44, pp. 4-30.

estimates (particularly in jurisdictions with comparative negligence), had no "rote" procedure for

making liability determinations, and often played an active role in legal proceedings:

(a)  Coverage determinations;

| Claims No. | Claims Note |
|---|---|
| PHHC12040624616 | Coverage is denied for the employee - findings show that she was not in her course and scope of her employment thus not acting as an agent for the insrd. Insrd would be provided coverage if need be drafting cov denial - driver was not an employee at time off loss lv/m w agent (no name on voicemail) Homecare? [REDACTED]/w insrd Matt Boyd [REDACTED] discussed denial and that we are denying cov to the employee since she was not acting as an employee at the TOL. Made him aware that we would still defend his co if a legal situation arises.   SENDING FILE TO ATTNY BILL BILLUPS TO DRAFT DENIAL |
| PHCV09120439279 | Based upon fact that Grundy would not have continued policy for underage driver, based upon purpose of use, upon review/approval from Bob Austin, denying IV COLL claim. |

(b)  Investigating claims, including reviewing and analyzing documentary evidence, photographs, and reports;

| Claims No. | Claims Note |
|---|---|
| PHME11050554220 | Recvd call from clmnt William he said that he wants his claim settled, I told him that I am still investigating since our driver has a different version and I need to look at our veh.     He said there is a camera at the bank where this happened and the accident is on tape. I asked him to please provide this to me and he said that our driver should get it since she is the one making stories up about him and she backed into him.     He then said that he will get a lawyer and sue us for more    call was disconnected |
| PHFP12040624781 | After careful review of file- evaluated damages, statements and photos- find that evidence presented is not favorable to IVD.    &gt;clmt expressed that when seeing IVD he slammed on his breaks - collision occurred. with clmt slamming on breaks the theory of last clear chance can not be defended strongly  &gt;with stmnt from IVD and stating that she just went across street after tractor waived through- does not appear that she used extreme caution when going across lanes to other side of the road.   &gt;Main factor to incident is that IVD had stop sign 5th ave did not..  &gt;find that any negotiation for percentage of liability will only result in further litigation. - will be issuing payment for clmt's damages in full. |

(c)  Interviewing witnesses and determining credibility;

| Claims No. | Claims Note |
|---|---|
| PHCV10040463155 | Contacted IV I/A-Judy Tanner [REDACTED], advised that P/H seemed credible &amp; genuinely upset about loss of IV. Confirmed financial distress not apparent. Confirmed that route from P/H residence to ocean is credible but not known why P/H went to beach himself.   -I/A confirmed that would follow up w/ P/H in reference to taking IV by himself to beach on Tuesday 04/13/2010. |
| PHNP10040463720 | John,  You can close your file.  Based on the photos of damage to iv and cv, clmt's version is more credible. |

 (d)  Making liability determinations and recommendations, including assigning and    apportioning fault;

| Claims No. | Claims Note |
|---|---|
| PHNP09100423679 | Smoke to Scarlett, representing Angela  Wolcott and SF. SF looking for another 10%. I explained I reviewed this file and feel we are not 20% at fault and we will not be paying the extra 10%. She is calling SF to confirm this and see if theya re going to go after the other carrier for the 10%, |
| PHNP11050551783 | after review of all stmnts, pr and photos of vehicles- find that damage could have gone either way. Damage to clmt's vehicle shows that clmt's  mother could have very well opened her door into our insured vehicle. no buckling of hinge, just damage in corner of door. will be offering clmt 50% for damages. caled clmt spoke w kay does not accept offer- stated that it was our driver's fault and that is it. will be disputing the damagesadvised clmt that she could go through her own insurance carrier, stated that i will be hearing from her bc she will prob go through her own, bc she's not accepting our offer- felt that our driver was not credible, and just reiterated i opened the door for my mother and she wouldn't just swing it open& |

 (e)  Analyzing and applying state laws;

| Claims No. | Claims Note |
|---|---|
| PHCV11090585911 | I've reviewed the policy, statute and case law to determine whether Philadelphia has a duty to pay for the damages sustained to the insured's vehicle while it was being repaired at a garage for routine maintenance. Under the Michigan No-Fault Act, Philadelphia does have a duty to pay the garage keeper's bill.  Specifically, MCL 500.3121 provides as follows: Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arisin |
| PHRT09070404496 | Recv'd denial from OVC - Re: pursuant to the Hawaii Revised Statutes HRS 431:10C-303.5 - we are the primary insurer for PIP and obligated by Hawaii State law to provide personal injury benefits for their renters and/or passengers up to the State min of $10K.  Emailed our HI subro atty to |

| Claims No. | Claims Note |
|---|---|
| | clairify. |

(f)  Establishing and adjusting reserves;

| Claims No. | Claims Note |
|---|---|
| PHMI11040542982 | Insrd contact is Janice Adanski [REDACTED].  Per loss notice, OV swerved into IV and caused damage.  Called and LVM to advise of my info and appr assignment.  Iv was brought to Greentree AB as per acord but we have no phn # or address.  Searched online and found the address and phn #.  I will assign National on a rush.  This was submitted by Sue Rim directly who asked that we rush this.  IV damage photos in file show significant damage.  I will adjust reserves to $7,500.00. |
| PHBA11020526345 | CORRECTED RESERVES,  IV COLLISION, FENCE BLEW OPEN, INS DID NOT REALIZE IT WHEN THEY BEGAN BACKING AND HIT THE FENCE. |

(g)  Interacting with attorneys and assisting in litigation; and

| Claims No. | Claims Note |
|---|---|
| PHPV09030384487 | Received call from defense counsel who went ahead and explained that we have a finding of Probable Cause, and shared some ideas on how to move forward.  I listened, and explained that we are generally more inclined to move forward with settlement (in 2012) than we would to force suit (and go to court in 2014).  Told him that we would take an in-depth look at the file contents and get back to him within the next 7 days to provide him guidance on how to move forward.  Notifying management that we need to execute a file transfer. |
| PHCO09080415995 | This case was mediated today, but did not settle. Steve Payne attended in person and I was available by phone. We came in at 100% and the defendant made a ridiculous opening offer of 5%, which is @ $19K. Rather than letting the defendant "nickle and dime" us all day, I told Steve to "cut to the chase" and make a demand of 65% of our claim, which I was hoping would show them we were serious about trying to settle the case today, if possible. However, the defendant then came back with a 10% offer (@ $38K).  Steve asked for authority to make a "take it or leave it" demand of 50%, which is our bottom line.  I gave Steve authority to do so, but told him to make it clear that 50% is our bottom line, and that there would be no more negotiating. I also told him to stress to |

(h)  Negotiating and settling claims.

9

| Claims No. | Claims Note |
|---|---|
| PHME12110677437 | Called insured, he wanted us to meet him at 4750.00 - I advised after reviewing his research, I will be willing to offer $4500 - he then stated that he already told him boss that we settled at $4750 - I asked him why was he under that impression, his time is too valuable to be arguing over this little $$$ - he wants the 4750.00 - I advised I will review the paperwork for the new paint job, etc that he put into the vehicle - since I still havent' rec'd any of it yet, he then said oh they must have sent it over to the wrong fax, I told him that I rec'd the 1st research that he submitted showing $4900 - he then said that he doesn't have time for this, I said listen I will settle this at $4600 - without the paperwork, will take his word, he then stated that its fine, $4600 is fine |
| PHVS10060476150 | Rec'd Summons from cc atty Monte Weiss. Called atty office spoke to Monte offered 50%. Both parties cited. No damages to IV. SF looking for 100% atty Monte calling SF on offer.  SF will settle for 60%. Settled claim for  60%. $1082.56. Atty Monte will be sending over dismissal of suit. |

Defendant agrees with Plaintiff that the claims notes are "indisputable" and the "most accurate record of work performed" by the Claims Examiners.  *See* Doc. No. 58, pp. 1 and 3. The above excerpts and additional examples identified in Exhibits C and D clearly demonstrate that the duties of all Claims Examiners, including Plaintiff, included the exercise of discretion and independent judgment.  This conclusion is consistent with the wealth of evidence that Defendant has already presented – in the form of Plaintiff's claims notes, Plaintiff's deposition testimony, Defendant's job descriptions, Defendant's Claims Handling Guidelines, Plaintiff's resume, Plaintiff's job evaluations, and Mr. Benecke's deposition testimony – showing that Plaintiff exercised discretion and independent judgment when performing his primary duties. *See* Exhibits C and D; *see also*, e.g., Doc. No. 38-1, pp. 14-22 and Doc. No. 38-2, ¶¶15-66.

## CONCLUSION

For the foregoing reasons, Defendant respectfully submits that this Court should grant its motion for summary judgment, deny Plaintiff's motion for summary judgment, and dismiss Plaintiff's Complaint with prejudice.

Dated: New York, New York

PROSKAUER ROSE LLP

December 23, 2013

/s/ Joshua F. Alloy

Elise M. Bloom (*pro hac vice*)
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
ebloom@proskauer.com

Joshua F. Alloy (*pro hac vice*)
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, D.C. 20004
(202) 416-5876
jalloy@proskauer.com

*Attorneys for Defendant*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have caused a true and correct copy of the foregoing to be served on all counsel of record this 23rd day of December, 2013, by operation of the Court's CM/ECF electronic filing system.

By:   <u>    /s/ Joshua F. Alloy          </u>