IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL ESTRADA, INDIVIDUALLY | : | CIVIL ACTION |
| AND ON BEHALF OF OTHERS | : | |
| SIMILARLY SITUATED | : | |
| | : | |
| v. | : | NO. 12-604 |
| | : | |
| MAGUIRE INSURANCE AGENCY, INC. | : | |

Goldberg, J. February 28, 2014

### MEMORANDUM OPINION

This case involves a dispute regarding the Fair Labor Standards Act's ("FLSA") administrative exemption and the defendant's refusal to pay the plaintiff for overtime based upon this exemption.

The plaintiff is an insurance claims examiner who is generally assigned relatively simple, low-cost automobile insurance claims. The plaintiff argues that his primary responsibilities did not directly relate to the management or general business operations of his defendant employer, and that he did not exercise sufficient discretion and independent judgment to qualify for the administrative exemption under the FLSA. Therefore, he argues that he was wrongfully categorized as exempt and has brought suit for unpaid overtime wages.

Presently before the Court are the parties' cross-motions for summary judgment and the plaintiff's motion for conditional certification. For the reasons that follow, the defendant's motion for summary judgment will be granted, and the plaintiff's motions will be denied.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff, Michael Estrada, worked as an insurance claims examiner for Defendant, Maguire Insurance Agency, Inc., from June of 2008 through December of 2011.  (Def.'s Stat. of Facts ¶¶ 3, 5.)  Defendant handles and processes property and casualty insurance claims under policies issued to businesses and individuals.  (Id. at ¶ 1.)

Plaintiff handled "fast track automobile claims" during the course of his employment, which primarily consisted of automobile accidents involving only one vehicle and/or relatively small amounts of damage.[2]  (Id. at ¶¶ 6, 9; Pl.'s Resp. to Stat. of Facts ¶ 9.)  The job description for Plaintiff's position lists a number of essential tasks for which claims examiners are responsible, including the following duties: (1) analyzing insurance claims; (2) "settl[ing] claims with first and third party claimants in accordance with policy provisions and applicable law"; (3) contacting insureds and insured's agents to investigate and resolve coverage questions; (4) evaluating claims in light of the facts; and (5) negotiating and settling claims.  (Def.'s Stat. of Facts ¶¶ 15-17.)

Plaintiff had the authority to settle claims for amounts up to $10,000 without supervisor involvement or approval, and he handled very few claims where the damages exceeded $10,000.  (Id. at ¶¶ 48-49.)  When more complicated issues would arise, such as comparative negligence, Plaintiff testified that he often sought guidance from his supervisor, Mona Born.  (Pl.'s Resp. to

---

[1] The facts recited herein are undisputed unless otherwise noted.

[2] There is some dispute as to whether claims examiners receiving fast track claims would ever be required to handle claims involving bodily injury.  (Compare Def.'s Stat. of Facts ¶ 9 with Pl.'s Resp. to Stat. of Facts ¶ 9.)  As we are required to assess the facts in the light most favorable to Plaintiff, we will assume that fast track claims examiners never handled claims involving bodily injury.

2

Stat. of Facts ¶¶ 36, 44, 48.)  He has also unequivocally acknowledged performing the following duties in the course of his employment: (1) maintaining detailed claims notes, listing the work performed on a given claim; (2) investigating claims by interviewing claimants, insureds, witnesses and law enforcement personnel; (3) altering reserve amounts on each claim; and (4) hiring appraisers to provide an estimate, where appropriate.  (Def.'s Stat. of Facts ¶¶ 22, 25, 33, 39, 54-55.)

At deposition, Plaintiff confirmed that his annual evaluations accurately reflected his work performance.  These evaluations state that Plaintiff needed a minimal amount of supervision to fulfill his responsibilities, that he had strong analytical skills, was able to incorporate his intuition and experience into decisionmaking, and "manage[d] to smoothly synthesize highly complex and diverse information."  Plaintiff was reported to "confidently make[ ] decisions in all areas of his job, [which were] generally accurate and sound.  He c[ould] usually support and explain the reasoning for his decisions."  Plaintiff was also given high praise for his innovation in designing and implementing a total loss worksheet form, which assisted all of Defendant's claims examiners when discussing total loss with insureds and claimants.  The worksheet created by Plaintiff contained all form letters necessary for handling a total loss; calculated tax amounts; and listed the salvage amount of the vehicle.  (Id. at ¶¶ 61-64; Alloy Decl., Exs. B2-B3.)[3]

---

[3] Plaintiff's current resume describes his primary functions while working for Defendant as follows: "comparing data on claim application with policy file and other company records to ascertain the likelihood that anticipated exposures from an occurrence may be covered for benefits under an insurance contract and the investigation, evaluation and negotiation of complex claims employing discretion and independent judgment."  (Alloy Decl., Ex. B7.)  However, Plaintiff argues that this description was taken from Defendant's website or the description of

Plaintiff, as well as all other fast track claims examiners employed by Defendant, were paid on a salary basis, and thus, did not receive overtime when working in excess of forty hours per week. (Pl.'s Resp. to Stat. of Facts ¶¶ 99-100.) The parties disagree as to whether Plaintiff worked overtime over the course of his employment.

Plaintiff claims that he was incorrectly classified as falling under the administrative exemption from general overtime requirements, and therefore is due overtime payments in accordance with the FLSA, 29 U.S.C. §§ 201, et seq. The parties have conducted discovery on Plaintiff's individual claim, as well as limited discovery on the appropriateness of conditionally certifying a collective action in this case. Currently pending before the Court are Defendant's motion for summary judgment, Plaintiff's motion for summary judgment and Plaintiff's motion for conditional certification. These motions are now fully briefed and ready for disposition.

## II.     CROSS-MOTIONS FOR SUMMARY JUDGMENT

### 1. Standard of Review

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that judgment is appropriate as a matter of law. FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). The non-moving party cannot

---

other jobs on his resume, and do not necessarily accurately reflect the work he performed for Defendant. (Pl.'s Resp. to Stat. of Facts ¶ 66.)

avert summary judgment with conclusory, self-serving statements, but rather must cite to specific facts in the record. Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009); FED. R. CIV. P. 56(c).

On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 256. Courts may not make credibility determinations at the summary judgment stage. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993) cert. denied, 510 U.S. 994 (1993)). The same burdens and standards apply with regard to cross-motions for summary judgment. Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987).

**2. Discussion**

Under the FLSA, subject to various exemptions, employers must pay their employees "at a rate not less than one and one-half times the regular rate at which he is employed" for hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). An employer need not pay overtime, however, to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

The FLSA must be construed liberally in favor of employees, and any exemptions thereto should be narrowly construed against the employer. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008). "[A]n employer seeking to apply an exemption to the FLSA must prove that the employee and/or employer comes 'plainly and unmistakably' within the exemption's

terms." Id. (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)) (emphasis omitted).[4]

The administrative exemption to FLSA's overtime provisions applies to any employee:

(1) [c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . . ;
(2) [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
(3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

The regulations explain that:

Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a).

---

[4] Defendant disputes the standard articulated by Plaintiff—that an employer must demonstrate that an employee falls "plainly and unmistakably" within the exemption—and instead, argues that the Court should apply a preponderance standard. In support, Defendant cites to cases from other circuits, such as Lederman v. Frontier Fire Protection, Inc., 685 F.3d 1151 (10th Cir. 2012). Lederman, however, does not support Defendant's position. While the Lederman court held that fact-finders should determine whether an exemption to the FLSA applies by a preponderance of the evidence, the court also noted that the plainly and unmistakably standard properly applied where a court determined "whether undisputed facts were legally sufficient to make out an FLSA exemption." Id. at 1157 (emphasis in original). That is precisely the question presently before the Court. To the extent that other courts have applied a lesser standard than that articulated by the Supreme Court in Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960), we respectfully disagree with that application.

Plaintiff concedes that he meets the first prong of the administrative exemption. However, he contends that Defendant has failed to establish that his primary duty is the performance of office work directly related to management or general business operations, or that his primary duty includes the exercise of discretion and independent judgment. In fact, Plaintiff argues that the evidence of record overwhelmingly demonstrates that he does not meet these requirements such that summary judgment should be granted in his favor.

    A.    <u>Administrative Work Directly Related to the Management or General Business Operations of the Employer or the Employer's Customers</u>

"To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201. Therefore, Defendant must establish that there are no genuine issues of material fact that Plaintiff's primary duties consisted of "work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." <u>Id.</u> Defendant argues that it is well-established through federal regulations and precedent that claims examiners, like Plaintiff, perform administrative work directly related to general business operations. Plaintiff asserts, however, that the primary service provided by Defendant is to place customers back in the position that they were in prior to a loss, and that because he facilitates and/or sells that service, he is a production employee.

We first note that pertinent regulations support Defendant's contention that claims examiners generally perform administrative duties as opposed to working in a manufacturing or production capacity. <u>See</u> 29 C.F.R. § 541.203 ("Insurance claims adjusters generally meet the

7

duties requirement for the administrative exemption"). Additionally, every circuit court that has considered this argument has determined that claims examiners perform tasks that satisfy the second prong of the administrative exemption. See, e.g., Roe-Midgett v. CC Servs., Inc., 512 F.3d 865, 872-73 (7th Cir. 2008); In re Farmers Ins. Exch., 481 F.3d 1119, 1132 (9th Cir. 2007).

Moreover, it is undisputed that Plaintiff did not work on a manufacturing production line or in sales. Rather, he acted as Defendant's representative in speaking with claimants and insureds, obtaining damages estimates, and making liability determinations. This work directly related to the management or general business operations of the employer, as claims examiners carry out one of the most essential tasks of an insurance company—processing claims. See Cheatham v. Allstate Ins. Co., 465 F.3d 578, 585 (5th Cir. 2006) (citing Reich v. John Alden Life Ins. Co., 126 F.3d 1, 9 (1st Cir. 1997)) (finding a claims examiner was not a production employee because "[a]n insurance company's product is its policies, and [the plaintiff's] duties did not include writing and selling insurance."). Even where an insurance company does not underwrite or sell insurance, but primarily processes claims, courts have found that claims examiners are not production employees because "[t]he administrative exemption turns on how employees spend their day, not who signs their pay check." Roe-Midgett, 512 F.3d at 872.

Plaintiff argues that he did not advise management, which is an important consideration in determining whether an employee's primary duties are "directly related" to management. See Bratt v. Cnty. of Los Angeles, 912 F.2d 1066, 1070 (9th Cir. 1990). However, the undisputed facts do not support Plaintiff's assertion. Plaintiff acknowledged a number of times at deposition that he provided recommendations to his supervisor on complicated issues, such as apportioning liability in comparative negligence jurisdictions and addressing situations where an estimate

8

includes damage that did not fit with the claimant's description of an accident. (See Pl.'s Dep., Alloy Decl., Ex. A., pp. 68, 73-74.) Plaintiff also worked alongside his supervisor to create a total loss worksheet that could be used by other claims examiners, and that streamlined the process of discussing total losses with claimants. (Id. at pp. 123-25.) These tasks clearly demonstrate collaboration between Plaintiff and management that further supports a finding that Plaintiff's duties were directly related to management.

In light of Plaintiff's undisputed duties as a fast track claims examiner, and Plaintiff's significant collaborative interactions with management, we find that there is no genuine dispute of material fact that Plaintiff's primary duty was the performance of office or non-manual work directly related to the management or general business operations. Therefore, we hold that Defendant has satisfied the second prong of the administrative exemption.

### B. The Exercise of Discretion and Independent Judgment

Defendant also asserts that the undisputed facts demonstrate that Plaintiff, and all other claims examiners in its employ, exercise significant discretion and independent judgment to satisfy the third prong of the administrative exemption. Plaintiff disagrees and characterizes his job as nothing more than clerical work, urging that his determinations of coverage, liability and loss were made using a strict step-by-step process that left no room for discretion and independent judgment.

"To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). The regulations define the exercise of discretion and judgment as

9

involving "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." Id.

Circuit courts that have considered this question—whether claims examiners exercise sufficient discretion and independent judgment to qualify as administrative employees—have unanimously held that the exemption applies. See, e.g., Smith v. Gov't Emp. Ins. Co., 590 F.3d 886, 897 (D.C. Cir. 2010); Roe-Midgett, 512 F.3d at 875; In re Farmers Ins. Exch., 481 F.3d at 1129; Cheatham, 465 F.3d at 584; McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997, 998 (8th Cir. 2003). Each of these cases, however, involved slightly different job descriptions and responsibilities. Therefore, a fact-specific analysis must be undertaken to determine whether Plaintiff's duties included the exercise of discretion and independent judgment. See 29 C.F.R. § 541.202(b).

Plaintiff characterizes his ability to make independent decisions to be fairly limited and more akin to the rote application of a formula as opposed to the exercise of discretion and judgment. For instance, when determining whether coverage existed for a given accident, Plaintiff argues that he simply ensured that the VIN number was present on the policy. If a coverage determination was more complicated, Plaintiff claims to have sought direction from his supervisor, Mona Born. Regarding liability, Plaintiff asserts that he followed a strict step-by-step process: (1) he would contact the insured and see if the insured admits fault; (2) if fault is disputed, he would follow the determination of liability in the police report; (3) if there was no police report, he would contact independent witnesses, and allocate liability based on the witnesses' recollections; and (4) if there is no police report or independent witnesses, then he would side with the insured. If a liability determination became any more complicated than

following this step-by-step approach, Plaintiff maintains that he would seek guidance from his supervisor.  (Pl.'s Resp. to Stat. of Facts ¶ 20.)  Due to the formulaic manner in which he claims to have reached conclusions, Plaintiff asserts that he is similar to the claims adjusters described in two opinion letters issued by the Department of Labor ("DOL").

One of these DOL opinion letters addressed junior-level claims adjusters whose primary duties consisted of conducting telephone interviews from a list of prepared questions and filling out preprinted forms.  These junior-level claims adjusters were often required to seek supervisor approval, did not review policies to make coverage determinations, did not have authority to independently negotiate or settle disputed claims, and had a settlement limit of only $1,500.  The DOL opined that these junior-level claims adjusters did not exercise sufficient discretion and independent judgment to satisfy the administrative exemption.  Opinion Letter, Fair Labor Standards Act, 2005 WL 330610 (Dep't of Labor Jan. 7, 2005).  Similarly, the DOL also opined that claims examiners who did not tend to be assigned complex or difficult claims involving litigation, who did not make coverage determinations, whose settlement authority was only $5,000, and who were consistently required to obtain supervisor approval on most tasks did not exercise sufficient discretion and independent judgment to meet the administrative exemption. Opinion Letter, Fair Labor Standards Act, 2005 WL 3308596 (Dep't of Labor Aug. 26, 2005).

    i. *Plaintiff's Duties*

Plaintiff's testimony does not support his assertion that he is akin to the claims adjusters described in these DOL Opinion Letters.  When asked specific questions about his responsibilities in working for Defendant, Plaintiff revealed that he was often required to exercise a significant amount of discretion and independent judgment, unlike the junior-level

claims adjusters described above.  In fact, Plaintiff's testimony establishes that he regularly performed a number of the duties identified in the regulations as indicative of discretion and independent judgment, such as evaluating and making recommendations regarding coverage; inspecting property damage; interviewing witnesses and insureds; and determining liability and the value of claims.  See 29 C.F.R. § 541.203.

Despite stating that he would only determine whether a VIN number was present on a policy in assessing coverage, when asked what would happen if the damage to the vehicle did not support the statement provided by an insured, Plaintiff testified as follows:

> A: . . . I had an insured that was parked and she said somebody backed into her car, but then she's claiming damages to the front of the vehicle.  The other side is like, well, I mean, you can tell where the car was backed into, but you're claiming these damages.  It just – it doesn't make sense.
> Q: So in that situation you made a determination that the insured wasn't telling the truth?
> A: Correct.
> Q: Okay.  And you would deny coverage based on that?
> A: No.  I wouldn't deny coverage.  I wouldn't pay for the damages that didn't support—
> Q: Okay.  So then you'd have to decide which damages, if any, actually supported the claim?
> A: Yeah. . . .

(Pl.'s Dep., pp. 65-66.)  Plaintiff also acknowledged comparing pictures of damage to the insured's statement to make these determinations.  (Id. at p. 91.)

Further, despite Plaintiff's general assertion that he always followed the amounts listed in an estimate, Plaintiff acknowledged that he failed to follow estimates if "the damages are on the left side and then there's something on the right side that the estimate is willing to repair[; he] would call the body shop and ask them, 'How does that fit with the impact over here?'" (Id. at p. 73.)  These decisions cannot be made through the strict application of a formula or step-by-step

procedure. Rather, Plaintiff was called on to use knowledge and experience to distinguish genuine claims from fraudulent claims involving preexisting damage, and to deny coverage accordingly where fraud was suspected.

Despite this clear discretion, Plaintiff asserts that because he did not personally inspect the vehicles, which is listed as a duty typical of exempt claims examiners found in 29 C.F.R. § 541.203, he does not fit within the administrative exemption. While he did not personally inspect the vehicle, as perhaps was envisioned in the list of duties present in § 541.203, Plaintiff was able to review pictures of the damaged vehicles in making his decisions, and testified to doing just that. (Pl.'s Dep., p. 91.) Whether it be in person or through the use of technology, Plaintiff was able to, and according to his job description, was expected to, use his experience as a claims examiner to compare actual damage to the statements of an insured and draw a conclusion as to whether the claim was fraudulent. These judgment calls involved matters of significance, as Plaintiff's determinations would financially bind his employer. See Roe-Midgett, 512 F.3d at 874 (finding verification of claimed damage to be "judgment calls with respect to matters of significance"); Smith, 590 F.3d at 895 ("employees exercise discretion with respect to matters of significance if they 'exercise authority within a wide range to commit their employer in substantial respects financially or otherwise'") (quoting 29 C.F.R. § 541.207(d)(2)).

Plaintiff also acknowledged that his responsibilities involved apportioning fault among various drivers involved in an accident, testifying as follows:

> Q: And were you responsible for determining percentages in comparative negligence jurisdictions?
> A: Um, if I had some.
> . . .
> Q: But you're aware that some of them were?
> A: Yes.

13

> Q: Okay. And as to the ones that were part of your duties and responsibilities, were one [of your responsibilities] to determine that it was a comparative negligence jurisdiction[?]
> A: Yes.
> Q: And then once you determined that it was a comparative jurisdiction, then you would have to apportion percentages of fault; correct?
> A: Yes.
> Q: And that would impact how much ultimately would get paid; correct?
> A: Yes.

(Pl.'s Dep., pp. 38-39.) This testimony demonstrates that Plaintiff was required to investigate a claim and apply the facts he had learned through his investigation to apportion fault amongst the various drivers. These decisions certainly impacted the amount Defendant would be required to pay on a particular claim, and required Plaintiff to determine the appropriate breakdown of liability. His testimony also demonstrates that he would settle the claim based upon his judgment.

Finally, Plaintiff's annual evaluations, which he acknowledged during deposition were accurate reflections of his work performance, overwhelmingly support Defendant's position that Plaintiff exercised discretion and independent judgment. For example, Plaintiff is described as (1) requiring a minimal amount of supervision to fulfill his responsibilities; (2) engaging in analysis that incorporates intuition and experience; (3) solving problems and developing several alternative solutions; (4) taking independent actions and appropriate, calculated risks; (5) confidently making decisions in all areas of his job that are accurate, sound and able to explain the reasons for making various decisions; and (6) completing a full and thorough investigation. (Alloy Decl., Ex. B-3.) These descriptions, affirmed by Plaintiff at deposition, clearly demonstrate that he compared and evaluated possible courses of conduct, and made decisions

only after considering various possibilities—in other words, he exercised discretion and judgment with respect to matters of significance.

While there are some duties listed in 29 C.F.R. § 541.203(a) in which Plaintiff consistently testified that he was not involved, such as interviewing physicians, preparing estimates and being involved in litigation, that does not prohibit a finding that the administrative exemption applies. As explained in Roe-Midgett, "section 541.203 identifies the *typical* duties of an exempt claims adjuster. As such, the regulation does not require the adjuster to perform each and every activity listed." Roe-Midgett, 512 F.3d at 874 (quotation marks and citations omitted) (emphasis in original).

### ii.     *Employer Expectations and Supervisor Oversight*

Plaintiff's testimony revealed that to the extent he followed a step-by-step procedure in determining coverage and apportioning liability, that was of his own choosing and not because he had been told or was expected to do so. For example, Plaintiff testified that he would always rely upon an appraiser's estimate when deciding on the amount to pay out on a claim.[5] When asked who told him to always follow the appraiser's recommendation, he did not fully respond to the question, stating instead that no one had ever told him not to follow the appraisal. (Pl.'s Dep., p. 71.) At no point did Plaintiff testify that any supervisor directed him to perform his tasks in the strict step-by-step manner he described. To the contrary, Defendant's Rule 30(b)(6) witness, William Benecke, adamantly stated that if Plaintiff was simply following a step-by-step procedure without any investigation or making any credibility determinations, he would not be

---

[5] Even this generalization was contradicted, as Plaintiff later elaborated that he would determine when an appraisal was and was not appropriate for a particular claim, and he would determine when the appraisal included damage not otherwise supported by the claim. (Pl.'s Dep., pp. 73, 138-39.)

performing his job properly. (See Benecke Dep., Alloy Decl., Ex. C., pp. 61-62, 69, 71-73.) Benecke's assertion is further supported by Plaintiff's job description. (Def.'s Stat. of Facts ¶¶ 15-17.)

Even assuming that Plaintiff applied his step-by-step procedure on a number of claims, and, despite the lack of evidence in the record, assuming that Defendant encouraged him to use this procedure, that does not foreclose a finding that he satisfies the third prong for the administrative exemption. The regulation requires that his primary duty include the exercise of discretion and independent judgment, although it does not specify with what frequency that discretion must be employed. Courts have found that even where much of a claims adjuster's duties consist of applying standards laid out by the employer, the adjuster still meets the administrative exemption where he engaged in discretionary tasks occasionally. Smith, 590 F.3d at 894. Plaintiff's testimony and claims notes demonstrate that his duties required the use of discretion and judgment with some regularity.[6]

Plaintiff also posits that he sought consistent guidance from his supervisor, which limited his ability to exercise discretion and independent judgment. This conclusory statement is refuted by Plaintiff's acknowledgment that he "had the authority to pay claims that were under $10,000" without seeking any supervisor approval. (Pl.'s Dep., pp. 90-91.) Plaintiff also acknowledged that the vast majority of the fast track claims that he handled involved less than $10,000 worth of damage. (Id. at p. 69.) Therefore, to the extent that Plaintiff sought Ms. Born's guidance, he did so of his own volition, as Plaintiff has not presented any evidence to suggest that he was required

---

[6] Plaintiff's claims notes frequently discuss how he explained coverage, or lack thereof, to insureds, interviewed insureds, claimants and witnesses, made determinations of liability based on investigation, decided to extend or deny coverage, and settled claims. (See Alloy Decl., Exs. E1-E9.)

to do so. Further, with regard to claims exceeding $10,000, in which Plaintiff was required to obtain supervisor approval, "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). Plaintiff also reported giving recommendations to his supervisor on a number of topics based on investigations he had performed. (Pl.'s Dep., pp. 73-74.) "[D]ecisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." Roe Midgett, 512 F.3d at 874. Therefore, we are not persuaded by Plaintiff's supervision argument.

In sum, the undisputed evidence, largely drawn from Plaintiff's own testimony, demonstrates that he interviewed insureds and witnesses, inspected property damage through pictures, reviewed factual information to ensure that estimates were reasonable, evaluated whether coverage would extend to a particular claim, provided recommendations regarding coverage to his supervisor, determined liability through the application of comparative negligence, adjusted reserve levels and settled claims without being required to seek supervisor oversight or intervention. No reasonable jury could find that these duties did not require the exercise of discretion and independent judgment with respect to matters of significance. See In re Farmers Ins. Exch., 481 F.3d at 1129 (finding similar duties to mirror section 541.203 and affirmatively satisfy the third prong of the administrative exemption test). Thus, we find that Plaintiff satisfies the third prong of the administrative exemption as a matter of law.[7]

---

[7] Because we find that Defendant has satisfied the administrative exemption as a matter of law, we need not address its alternative argument that Plaintiff has failed to demonstrate that he worked in excess of forty hours per week.

Accordingly, as the undisputed facts affirmatively establish that Plaintiff plainly and unmistakably meets all three prongs of the administrative exemption, summary judgment in favor of Defendant is appropriate.

### III.   CONCLUSION

Defendant has met its burden of demonstrating that Plaintiff was an exempt employee under the administrative exemption to the FLSA's overtime requirement. Summary judgment is granted in favor of Defendant, and accordingly, Plaintiff's motion for summary judgment is denied. Finally, Plaintiff's motion for conditional certification is denied as moot.

Our Order follows.